Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARIRAM SHANKAR, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZYMERGEN INC., JOSH HOFFMAN, ENAKSHI SINGH, STEVEN CHU, JAY T. FLATLEY, CHRISTINE M. GORJANC, TRAVIS MURDOCH, MATTHEW A. OCKO, SANDRA E. PETERSON, ZACH SERBER, ROHIT SHARMA, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC, COWEN AND COMPANY, LLC, BOFA SECURITIES, INC., UBS SECURITIES LLC, and LAZARD FRERES & CO. LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

CLASS ACTION COMPLAINT

Plaintiff Hariram Shankar ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Zymergen Inc. ("Zymergen" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Zymergen; and (c) review of other publicly available information concerning Zymergen.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Zymergen common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's April 2021 initial public offering ("IPO" or the "Offering"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act").

2. Zymergen uses a process it calls "biofacturing" to create products that purportedly combine the design and manufacturing efficiency of biological processes with technology's ability to rapidly iterate and control diverse functions. Its first product is called Hyaline, an optical film designed for electronic companies to use for display touch sensors, which will purportedly enable customers to make foldable touchscreens and high density flexible printed circuits. Hyaline was launched in December 2020 but has not generated revenue because it is still in its qualification process with customers.

3. On April 23, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 18,549,500 shares of common stock at a price of $31.00 per share. The Company received proceeds of approximately $530.1 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for working capital and other general corporate purposes, including the continued investment in commercializing its

existing products, launching products in its pipeline, and furthering the development of its biofacturing platform and technology.

4. On August 3, 2021, after the market closed, Zymergen issued a business update stating that it "recently became aware of issues with its commercial product pipeline that will impact the Company's delivery timeline and revenue projections." Specifically, "several key target customers encountered technical issues in implementing Hyaline into their manufacturing processes," and Zymergen also found that its total addressable market appears to be smaller than previously expected. As a result, Zymergen "no longer expects product revenue in 2021, and expects product revenue to be immaterial in 2022." The Company also announced that its CEO was stepping down, effective immediately.

5. On this news, the Company's stock price fell $26.58 per share, or 76%, to close at $8.25 per share on August 4, 2021, on unusually heavy trading volume.

6. By the commencement of this action, the Company's stock was trading as low as $8.25 per share, a nearly 73% decline from the $31 per share IPO price.

7. The Registration Statement was materially false and misleading and omitted to state: (1) that, during the qualification process for Hyaline, key customers had encountered technical issues, including product shrinkage and incompatibility with customers' processes; (2) that, though the qualification process was critical to achieving market acceptance for Hyaline and generating revenue, Zymergen lacked visibility into the qualification process; (3) that, as a result, the Company overestimated demand for its products; (4) that, as a result of the foregoing, the Company's product delivery timeline was reasonably likely to be delayed, which in turn would delay revenue generation; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 22 of the Securities Act (15 U.S.C. § 77v).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b).

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13. Plaintiff Hariram Shankar, as set forth in the accompanying certification, incorporated by reference herein, purchased Zymergen common stock pursuant or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Zymergen is incorporated under the laws of the Delaware with its principal executive offices located in Emeryville, California. Zymergen's shares trade on the NASDAQ exchange under the symbol "ZY."

15. Defendant Josh Hoffman ("Hoffman") was, at all relevant times, the Chief Executive Officer ("CEO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16. Defendant Enakshi Singh ("Singh") was, at all relevant times, the Chief Financial Officer ("CFO") of the Company, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17. Defendant Steven Chu ("Chu") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

CLASS ACTION COMPLAINT

3

18. Defendant Jay T. Flatley ("Flatley") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19. Defendant Christine M. Gorjanc ("Gorjanc") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20. Defendant Travis Murdoch ("Murdoch") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

21. Defendant Matthew A. Ocko ("Ocko") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22. Defendant Sandra E. Peterson ("Peterson") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23. Defendant Zach Serber ("Serber") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24. Defendant Rohit Sharma ("Sharma") was a director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25. Defendants Hoffman, Singh, Chu, Flatley, Gorjanc, Murdoch, Ocko, Peterson, Serber, and Sharma are collectively referred to hereinafter as the "Individual Defendants."

26. Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO. In the IPO, J.P. Morgan agreed to purchase 5,000,300 shares of the Company's common stock, exclusive of the over-allotment option.

27. Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO. In the IPO, Goldman Sachs agreed to purchase 5,000,300 shares of the Company's common stock, exclusive of the over-allotment option.

28. Defendant Cowen and Company, LLC ("Cowen") served as an underwriter for the Company's IPO. In the IPO, Cowen agreed to purchase 2,096,900 shares of the Company's common stock, exclusive of the over-allotment option.

29. Defendant BofA Securities, Inc. ("BofA") served as an underwriter for the Company's IPO. In the IPO, BofA agreed to purchase 1,774,300 shares of the Company's common stock, exclusive of the over-allotment option.

30.     Defendant UBS Securities LLC ("UBS") served as an underwriter for the Company's IPO. In the IPO, UBS agreed to purchase 1,774,300 shares of the Company's common stock, exclusive of the over-allotment option.

31.     Defendant Lazard Freres & Co. LLC ("Lazard") served as an underwriter for the Company's IPO. In the IPO, Lazard agreed to purchase 483,900 shares of the Company's common stock, exclusive of the over-allotment option.

32.     Defendants J.P. Morgan, Goldman Sachs, Cowen, BofA, UBS, and Lazard are collectively referred to hereinafter as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Zymergen common stock issued in connection with the Company's IPO.  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Zymergen's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Zymergen shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Zymergen or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

CLASS ACTION COMPLAINT

5

36. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Zymergen; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

38. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

39. Zymergen uses a process it calls "biofacturing" to create products that purportedly combine the design and manufacturing efficiency of biological processes with technology's ability to rapidly iterate and control diverse functions. Its first product is called Hyaline, an optical film designed for electronic companies to use for display touch sensors, which will purportedly enable customers to make foldable touchscreens and high density flexible printed circuits. Hyaline was launched in December 2020 but has not generated revenue because it is still in its qualification process with customers.

**The Company's False and/or Misleading**

**Registration Statement and Prospectus**

40. On March 23, 2021, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.

41. On April 21, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1MEF, which forms part of the Registration Statement. The Registration Statement was declared effective the same day.

42. On April 23, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 18,549,500 shares of common stock at a price of $31.00 per share. The Company received proceeds of approximately $530.1 million from the Offering, net of underwriting discounts and commissions. The proceeds from the IPO were purportedly to be used for working capital and other general corporate purposes, including the continued investment in commercializing its existing products, launching products in its pipeline, and furthering the development of its biofacturing platform and technology.

43. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

44. Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

45. The Registration Statement stated that the qualification process for Hyaline was expected to last between six to eighteen months, depending on the customer and end device requirements. Specifically, it stated:

> Following the launch of Hyaline, **our global direct sales force and a team of application sales engineers are now working with customers on the sale qualification process** in which customers are able to validate the product and qualify it as a standard component in their final electronic devices. During this time, we are providing customers with samples of our products to be tested for use

in their own products so they can determine whether to purchase our product. Based on our experience to date since the launch of Hyaline in December 2020, we expect the sale qualification process of our products (including Hyaline) to last 6-18 months, or longer, depending on the customer and end device requirements. ***We only generate revenue after customers have completed all aspects of the qualification process for that product and decided to place an order for our product, which is typically done on a purchase order basis rather than a long-term contractual commitment. In the case of Hyaline, we expect to begin generating revenue in the second half of 2021,*** which will be prior to the time we expect to convert the non-fermentation produced biomolecule to the fermentation-produced molecule, which we expect to occur in 2022.

(Emphases added.)

46. The Registration Statement touted a purported $1.2 trillion total market opportunity. Specifically, it stated:

The market opportunity addressable by our biofacturing platform is enormous and diverse. Our bottom-up, industry-by-industry, application-by-application, analysis suggests that our total market opportunity is at least $1.2 trillion across 20 separate industries for our potential products, all ripe for disruption, and that the market opportunity of the first three industries we will pursue, electronics, consumer care and agriculture, is approximately $150 billion. In particular, we estimate that the display market alone for Hyaline was over $1 billion in 2020 and according to Transparency Market Research, the global market for insect repellents is over $1.5 billion across sprays and other traditional formats.

47. Regarding product pipeline, the Registration Statement purported to warn of "many risks" that could "prevent or delay revenue growth." Specifically, it stated:

***It is difficult to predict the time and cost of development of our pipeline products, which are produced by or based on a relatively novel and complex technology and are subject to many risks, any of which could prevent or delay revenue growth and adversely impact our market acceptance, business and results of operations.***

We have concentrated our R&D efforts to date on a select number of pipeline products based on technical feasibility and market opportunity. We launched our first product Hyaline in December 2020, beginning the expected 6-18 month product qualification process with customers. We have not yet generated revenue from product sales (except for nominal revenue related to the sale of samples of Hyaline). We have 10 other products in development, consisting of three in electronics, four with consumer applications and three in agriculture.

*   *   *

If we experience problems or delays in developing our pipeline products, we may be subject to unanticipated costs, including the loss of customers. Additionally, even after the incurrence of significant costs to develop a product, we may not be able to solve development problems or develop a commercially viable product at all. If we do not achieve the required technical specifications or successfully manage our new product development processes, or if development work is not performed according to schedule, then our revenue growth from new pipeline

products may be prevented or delayed, and our business and operating results may be harmed.

48. The Registration Statement also stated that customers' qualification process was critical to generating revenue in the future:

> ***The success of our business relies heavily on the performance of our products and developing new products at lower costs and faster development timelines.***
>
> To date our revenue has primarily been derived from relationships with partners where we seek to test and validate the ability of our biofacturing platform to improve or optimize our clients' products through biofacturing. However, our future profitability will depend on our ability to successfully execute and maintain a sustainable business model and generate continuous streams of revenue through the sale of our products across industries. We launched our first product Hyaline in December 2020, beginning the expected 6-18 month product qualification process with customers. We have not yet generated revenue from product sales (except for nominal revenue related to the sale of samples of Hyaline). ***We are currently in the qualification process on Hyaline with multiple customers, including sampling and discussions on commercial terms with some of them. Given the importance of this qualification process in our current target markets, we anticipate that, even after we have launched a product, we will only generate revenue after customers have completed all aspects of the qualification process for that product and decided to place an order for our product.*** Our current business model is premised on innovating and producing new products rapidly and at lower costs than traditional methods and achieving results that may only be obtained through leveraging biology. While we may launch bio-based versions of existing products or existing molecules that are too expensive to utilize in products today, biofacturing of previously unavailable, superior molecules and materials is key to our long-term success. However, if we are unable to successfully transition into becoming a biofacturer of new products and create novel products at lower costs and on accelerated development timelines, our business and results of operations will be adversely affected.

49. The Registration Statement also warned that Zymergen's products "***could*** have defects or errors" that could delay production, especially because the Company's products are often components of customers' end products. Specifically, it stated:

> ***Our products, or the end products of which they are components, could have defects or errors, which may give rise to claims against us or delays in production and adversely affect our business, financial condition and results of operations.***
>
> Some applications of our technology or products are components of end products and therefore our success is tied to the success of such end products. We cannot assure you that material performance problems, defects, errors or delays will not arise in our products or the end products in which they are components, and as we commercialize our products, these risks may increase. We expect to provide warranties that our products will meet performance expectations and will be free from defects. The costs incurred in correcting any defects or errors may be substantial and could adversely affect our operating margins.

CLASS ACTION COMPLAINT

9

> In manufacturing our products, we depend upon third parties for the supply of our instruments and various components, many of which require a significant degree of technical expertise to produce. If our suppliers fail to produce our product components to specification or provide defective products to us and our quality control tests and procedures fail to detect such errors or defects, or if we or our suppliers use defective materials or workmanship in the manufacturing process, the reliability and performance of our products will be compromised.
>
> If our products or the end products of which they are components, contain defects or are delayed, we may experience:
>
> - a failure to achieve market acceptance for our products or expansion of our products sales;
>
> - the development of new technology rendering our products, or the end products of which they are components, obsolete;
>
> - loss of customer orders and delay in order fulfilment;
>
> - damage to our brand reputation;
>
> - increased warranty and customer service and support costs due to product repair or replacement;
>
> - product recalls or replacements;
>
> - inability to attract new customers and collaboration opportunities;
>
> - diversion of resources from our manufacturing and R&D departments into our service department; and
>
> - legal and regulatory claims against us, including product liability claims, which could be costly, time consuming to defend, result in substantial damages and result in reputational damage.

50. The Registration Statement was materially false and misleading and omitted to state: (1) that, during the qualification process for Hyaline, key customers had encountered technical issues, including product shrinkage and incompatibility with customers' processes; (2) that, though the qualification process was critical to achieving market acceptance for Hyaline and generating revenue, Zymergen lacked visibility into the qualification process; (3) that, as a result, the Company overestimated demand for its products; (4) that, as a result of the foregoing, the Company's product delivery timeline was reasonably likely to be delayed, which in turn would delay revenue generation; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects, were materially misleading and/or lacked a reasonable basis.

**The Subsequent Disclosures**

51. On August 3, 2021, after the market closed, Zymergen issued a business update stating that it "recently became aware of issues with its commercial product pipeline that will impact the Company's delivery timeline and revenue projections." Specifically, "several key target customers encountered technical issues in implementing Hyaline into their manufacturing processes," and Zymergen also found that its total addressable market appears to be smaller than previously expected. As a result, Zymergen "no longer expects product revenue in 2021, and expects product revenue to be immaterial in 2022." The Company also announced that its CEO was stepping down, effective immediately. Specifically, Zymergen issued a press release, stating:

> Zymergen recently became aware of issues with its commercial product pipeline that will impact the Company's delivery timeline and revenue projections. Accordingly, the Company no longer expects product revenue in 2021, and expects product revenue to be immaterial in 2022.
>
> ***During the quarter, several key target customers encountered technical issues in implementing Hyaline into their manufacturing processes typical of new product and process development learnings.*** The Company has made significant progress towards addressing these challenges and believes there are no intrinsic technical issues with Hyaline. However, this issue has resulted in a delay in the Company's commercial ramp. Zymergen is working to strengthen its commercial team to ensure the reliability and robustness of the sales pipeline qualification and forecast processes.
>
> ***The Company is also evaluating emerging data on the total addressable market for foldable display applications, which indicate a smaller near-term market opportunity that is growing less rapidly than anticipated, as well as its impact on Zymergen's sales forecast.*** The Company will conduct a full re-examination of Zymergen's target markets confirming our past views or altering them if the data indicate a shift in market focus is appropriate.

52. The same day, Zymergen held a conference call to discuss the business update with analysts and investors. During the call, Defendant Flatley further revealed that "the Company's commercial teams did not have significant insight into the customer qualification process and into their customers and users, which resulted in forecast that overestimated near-term demand. As a result, we're already making substantial changes in our commercial team."

53. During the same call, Defendant Flatley explained that the "technical issues" with Hyaline involved "some product shrinkage in one customer site" and "material compatibility" between the product and different customers' processes.

54. On this news, the Company's stock price fell $26.58 per share, or 76%, to close at $8.25 per share on August 4, 2021, on unusually heavy trading volume.

55. By the commencement of this action, the Company's stock was trading as low as $8.25 per share, a nearly 73% decline from the $31 per share IPO price.

## FIRST CLAIM

### Violation of Section 11 of the Securities Act

### (Against All Defendants)

56. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

57. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

58. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

59. Zymergen is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

60. As issuer of the shares, Zymergen is strictly liable to Plaintiff and the Class for the misstatements and omissions.

61. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement was true and without omissions of any material facts and were not misleading.

62. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

63. Plaintiff acquired Zymergen shares pursuant and/or traceable to the Registration Statement for the IPO.

64. Plaintiff and the Class have sustained damages. The value of Zymergen shares has declined substantially subsequent to and due to the Defendants' violations.

**SECOND CLAIM**

**Violation of Section 15 of the Securities Act**

**(Against the Individual Defendants)**

65. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

66. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

67. The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Zymergen within the meaning of Section 15 of the Securities Act. The Individual Defendants had the power and influence and exercised the same to cause Zymergen to engage in the acts described herein.

68. The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

69. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

| | |
|---|---|
| DATED: August 4, 2021 | GLANCY PRONGAY & MURRAY LLP |
| | By:    */s/ Pavithra Rajesh* |
| | Robert V. Prongay |
| | Charles H. Linehan |
| | Pavithra Rajesh |
| | 1925 Century Park East, Suite 2100 |
| | Los Angeles, California 90067 |
| | Telephone: (310) 201-9150 |
| | Facsimile: (310) 201-9160 |
| | Email: info@glancylaw.com |
| | *Counsel for Plaintiff* |

CLASS ACTION COMPLAINT

14

## SWORN CERTIFICATION OF PLAINTIFF

## ZYMERGEN INC. SECURITIES LITIGATION

I, Hariram Shankar, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Zymergen Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Zymergen Inc. securities during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

8/4/2021                                       *Hariram Shankar*
_____                    _____
     Date                                       Hariram Shankar

**Hariram Shankar's Transactions in Zymergen Inc. (ZY)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---:|---:|
| 4/29/2021 | Bought | 7.0000 | $48.7400 |
| 4/29/2021 | Bought | 1.0000 | $48.1200 |
| 5/7/2021 | Bought | 4.0000 | $41.8419 |
| 5/7/2021 | Bought | 1.0000 | $41.5000 |
| 5/11/2021 | Bought | 0.0568 | $33.2650 |
| 5/13/2021 | Bought | 13.0000 | $31.6998 |
| 5/13/2021 | Bought | 2.0000 | $31.6000 |
| 5/13/2021 | Bought | 0.7912 | $30.7650 |