1  SUSAN S. MUCK (SBN 126930)
   susan.muck@wilmerhale.com
2  KEVIN P. MUCK (SBN 120918)
   kevin.muck@wilmerhale.com
3  JESSICA L. LEWIS (SBN 302467)
   jessica.lewis@wilmerhale.com
4  JORDAN C. BRADFORD-SHIVERS (SBN 327461)
   jordan.bradford-shivers@wilmerhale.com
5  WILMER CUTLER PICKERING
      HALE AND DORR LLP
6  One Front Street, Suite 3500
   San Francisco, CA 94111
7  Telephone: (628) 235-1000
   Facsimile: (628) 235-1001
8
   *Attorneys for Defendants Zymergen Inc., Josh Hoffman,*
9  *Enakshi Singh, Steven Chu, Jay T. Flatley, Christine M. Gorjanc,*
   *Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson,*
10 *Zach Serber, Rohit Sharma, True Ventures IV, L.P.,*
   *True Ventures Select I, L.P., True Ventures Select II, L.P.,*
11 *True Ventures Select III, L.P. and True Ventures Select IV, L.P.*

12

13

14                    UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16
   HARIRAM SHANKAR, Individually and on      Case No. 3:21-cv-06028-VC
17 Behalf of All Others Similarly Situated,
                                             **ZYMERGEN DEFENDANTS' AND**
18                  Plaintiff,               **TRUE VENTURES' MOTION TO**
                                             **DISMISS AMENDED CLASS ACTION**
19        v.                                 **COMPLAINT; MEMORANDUM OF**
                                             **POINTS AND AUTHORITIES IN**
   ZYMERGEN INC., et al.,                    **SUPPORT OF MOTION TO DISMISS**
20
                    Defendants.
21                                           Date:      September 1, 2022
22                                           Time:      2:30 p.m.
                                             Place:     Courtroom 5, 17th Floor
23                                           Judge:     The Honorable Vince Chhabria

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 2

II.   STATEMENT OF FACTS .................................................................................... 3

    A.   Parties ........................................................................................................ 3

    B.   Relevant Factual Background .................................................................... 5

        1.   Zymergen and Its Business ............................................................ 5

        2.   Zymergen's IPO .............................................................................. 6

        3.   Post-IPO Developments ................................................................. 8

    C.   Procedural History and Plaintiffs' Claims ............................................... 9

III.   GOVERNING LEGAL STANDARDS ............................................................... 10

IV.   PLAINTIFFS FAIL TO PLEAD A SECTION 11 CLAIM ................................ 11

    A.   Plaintiffs Do Not Adequately Allege That Anything Said in the Registration Statement Regarding Zymergen's Biofacturing Platform Was Materially False or Misleading ................................................................ 11

    B.   Statements Regarding Product Development Do Not Support a Claim ............... 16

    C.   The Statements Regarding Zymergen's Revenue Forecasts and Potential Market Opportunities Do Not Support a Claim .................................................. 19

    D.   Plaintiffs Fail to Plead That the Risk Factors Are Actionable ............................ 21

V.   PLAINTIFFS DO NOT STATE A CONTROL PERSON CLAIM ................... 22

VI.   CONCLUSION .................................................................................................... 23

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**CASES**

4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................................ 10

5

*Bao v. Solarcity Corp.,*
  2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ............................................................................ 22

6

7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
  856 F.3d 605 (9th Cir. 2017)............................................................................................... 14

8

9

*Costanzo v. DXC Tech. Co.,*
  2021 WL 5908385 (N.D. Cal. Dec. 14, 2021) ............................................................. *passim*

10

*Fouad v. Isilon Sys., Inc.,*
  2008 WL 5412397 (W.D. Wash. Dec. 29, 2008)................................................................. 23

11

12

*Golub v. Gigamon Inc.,*
  372 F. Supp. 3d 1033 (N.D. Cal. 2019), *aff'd,* 994 F.3d 1102 (9th Cir. 2021)..................... 22

13

*Greenberg v. Sunrun Inc.,*
  233 F. Supp. 3d 764 (N.D. Cal. 2017) ..................................................................... 13, 16, 22

14

15

*In re Am. Apparel, Inc. S'holder Litig.,*
  2013 WL 10914316 (C.D. Cal. Aug. 8, 2013)..................................................................... 23

16

17

*In re Cloudera, Inc. Sec. Litig.,*
  2021 WL 2115303 (N.D. Cal. May 25, 2021) ............................................... 10, 18, 20, 22

18

*In re Dropbox Sec. Litig.,*
  2020 WL 6161502 (N.D. Cal. Oct. 21, 2020)................................................ 11, 14, 15, 21

19

20

*In re ECOtality, Inc. Sec. Litig.,*
  2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ............................................................. 19, 20

21

*In re Gupta Corp. Sec. Litig.,*
  900 F. Supp. 1217 (N.D. Cal. 1994) ................................................................................... 23

22

23

*In re Pivotal Sec. Litig.,*
  2020 WL 4193384 (N.D. Cal. July 21, 2020)............................................................. *passim*

24

*In re Resonant Inc. Sec. Litig.,*
  2016 WL 1737959 (C.D. Cal. Feb. 8, 2016)....................................................................... 17

25

26

*In re Restoration Robotics, Inc. Sec. Litig.,*
  417 F. Supp. 3d 1242 (N.D. Cal. 2019) ...................................................................... *passim*

27

28

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ...................................................................... 22

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ......................................... 22

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ...................................................................... 15

*In re TVIX Sec. Litig*,
  25 F. Supp. 3d 444 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v.
  Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014) ........................... 10, 13

*In re Violin Memory Sec. Litig*,
  2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) .................................. *passim*

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ...................................................................... 15

*LLDVF, L.P. v. Dinicola*,
  2010 WL 3210613 (D.N.J. Aug. 12, 2010) ............................................... 23

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .................................................................... 10

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ...................................................................... 10

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*,
  575 U.S. 175 (2015) ...................................................................... 10, 11, 14

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ...................................................................... 22

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .................................................................... 20

*Primo v. Pac. Biosciences of Cal.*,
  940 F. Supp. 2d 1106 (N.D. Cal. 2013) ..................................................... 18

*Rubke v. Cap. Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) .............................................................. 10, 11

*Terenzini v. GoodRx Holdings, Inc*,
  2022 WL 122944 (C.D. Cal. Jan. 6, 2022) ....................................... 12, 13, 14

*Wong v. Arlo Techs., Inc.*,
  2019 WL 7834762 (N.D. Cal. Dec. 19, 2019) .................................... 13, 17

# STATUTES AND RULES

Securities Act of 1933
    Section 11, 15 U.S.C. § 77k ................................................................................. *passim*
    Section 15, 15 U.S.C. § 77o ................................................................................. 1, 3, 10, 22

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 10

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 1, 2022, at 2:30 p.m. or as soon thereafter as the matter may be heard, in the Courtroom of The Honorable Vince Chhabria, 450 Golden Gate Avenue, San Francisco, California, defendants Zymergen Inc. ("Zymergen" or the "Company"), Josh Hoffman, Enakshi Singh, Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, Rohit Sharma (collectively, the "Zymergen Defendants"), and defendants True Ventures IV, L.P., True Ventures Select I, L.P., True Ventures Select II, L.P., True Ventures Select III, L.P. and True Ventures Select IV, L.P. (collectively, the "True Ventures Funds") will and hereby do move to dismiss the Amended Class Action Complaint ("Amended Complaint" [ECF No. 78]).

The Zymergen Defendants and the True Ventures Funds move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that it fails to plead facts sufficient to state a claim against them.  Defendants' motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the accompanying Request for Judicial Notice ("RJN") and Declaration of Susan S. Muck ("Muck Decl."), the motions to dismiss and supporting papers filed by the other defendants in this action, the pleadings and records in this action, the argument of counsel, and any other matters that may be presented to the Court.

# ISSUES TO BE DECIDED

1.  Whether Plaintiffs' claim under Section 11 of the Securities Act of 1933 ("1933 Act")[1] should be dismissed for failure to plead facts establishing that any statement in Zymergen's Initial Public Offering (IPO) Registration Statement was materially false or misleading when made.

2.  Whether Plaintiffs' control person claim under Section 15 should be dismissed in light of (i) the absence of an underlying violation of Section 11, and (ii) the failure to plead that the True Ventures Funds were control persons of Zymergen.

---

[1] Unless otherwise specified, all statutory references are to the 1933 Act.

1

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

**I.     INTRODUCTION**

3      The focus of a Section 11 claim is narrow: it stands or falls based on Plaintiffs' ability to

4  plead that the challenged Registration Statement was materially false or misleading *at the time it*

5  *became effective*.  It is not enough to point to subsequent events – even those arising a few

6  months later – and base a claim on the purported failure to disclose *what eventually happened*.

7  Yet that is precisely what Plaintiffs do here.

8      On April 21, 2021, Zymergen filed with the SEC a Registration Statement on Form S-1

9  ("Registration Statement") in connection with the Company's IPO of common stock.  The

10  Registration Statement furnished investors with a comprehensive discussion of Zymergen's

11  business, technology, product pipeline, strategies and goals as they existed at the time.  It also

12  provided candid and detailed discussions of the many risks facing Zymergen – including its

13  limited operations to date and history of operating losses, the fact that it had not yet successfully

14  commercialized any products, the uncertainties inherent in developing commercially viable

15  products using an innovative and highly complex technology (one involving the identification and

16  creation of novel biomolecules), the challenges associated with developing processes enabling

17  products to be manufactured economically, customer acceptance, and being able to accurately

18  identify, predict and capitalize on market opportunities.  Moreover, Zymergen made clear that it

19  had only launched its first product (Hyaline, a bio-based polymer film) a few months earlier, and

20  explained in detail the many risks and hurdles the Company faced in successfully completing the

21  qualification process for potential customers (principally, electronics companies) and ultimately

22  commercializing that specific product.

23      Some of those risks came to pass in the months following the IPO.  Among other things,

24  emerging data suggested that the market opportunity was not as robust as previously believed,

25  several key customers encountered technical difficulties implementing Hyaline into their

26  manufacturing processes, and the Company eventually concluded that its prior estimates of near-

27  term demand had been overly optimistic.  Zymergen promptly disclosed these issues (as well as

28  the replacement of its CEO) on August 3, 2021.  The Company's stock price fell the next day

1   (and, predictably, this suit was filed within hours).  Following further developments and a

2   rigorous analysis of all of its programs, Zymergen announced in November 2021 that it was

3   discontinuing Hyaline and certain other products in its pipeline.

4          Plaintiffs attempt to reverse-engineer a Section 11 claim from these post-IPO events,

5   alleging that portions of the Registration Statement – relating to Zymergen's proprietary platform,

6   its product development process, its expectations regarding market demand and future revenue

7   generation, and certain risk factors – were misleading for not disclosing what "the Company

8   disclosed on August 3, 2021 and November 3, 2021."  ¶ 93.[2]  But because Plaintiffs do not plead

9   that any facts *existing as of* April 21, 2021 contradicted the challenged statements or otherwise

10  rendered them materially misleading, the Section 11 claim fails.

11         In the absence of an underlying Section 11 claim, the control person claim under Section

12  15 must be dismissed as to all defendants.  In addition, the Section 15 claim against the True

13  Ventures Funds (which are merely minority investors in Zymergen) must be dismissed because

14  the Amended Complaint does not come close to alleging that they "controlled" the Company.

15  **II.    STATEMENT OF FACTS**

16         **A.    Parties**

17         Zymergen is a Delaware public benefit corporation with its headquarters in Emeryville,

18  California.  ¶ 50.  The Company's stock is publicly traded on Nasdaq.  *Id.*

19         The Individual Defendants include the eight current members of Zymergen's Board of

20  Directors (the "Board"): *Jay T. Flatley*, the Company's Chairman and Acting CEO, who is the

21  former CEO and Chairman of Illumina, Inc.; *Dr. Steven Chu*, a Nobel laureate, Professor of

22  Physics and Professor of Molecular & Cellular Physiology in the Medical School at Stanford

23  University, and former U.S. Secretary of Energy; *Christine M. Gorjanc*, former CFO of Arlo

24  Technologies, Inc. and NETGEAR, Inc.; *Dr. Travis Murdoch*, former investment Director at

25  Softbank Investment Advisers; *Matthew Ocko*, co-founder and Managing Partner of DCVC, a

26  venture capital firm; *Sandra E. Peterson*, an operating partner at Clayton, Dubilier & Rice, a

27  private investment firm, and former executive at Johnson & Johnson, Bayer CropScience AG,

28  [2] All paragraph references are to the Amended Complaint.

Bayer Medical Devices and Medco Health Solutions, Inc.; *Dr. Zach Serber*, co-founder of
Zymergen and Chief Science Officer; and *Dr. Rohit Sharma*, a partner at True Ventures, former
CEO of Syfto, Inc., former executive at Ciena, and founder of ONI Networks.  ¶¶ 53-60; *see also*
Ex. A at 134-37.[3]  The other two individual defendants are: *Joshua Hoffman*, Zymergen's co-
founder, who served as CEO and a director until August 2021; and *Enakshi Singh*, who has been
Zymergen's CFO since February 2021 and before that spent more than six years as its Vice
President of Finance.  ¶¶ 51-52; Ex. A at 134-35.

Plaintiffs have sued, under Section 11, the six underwriters for Zymergen's April 2021
IPO: J.P. Morgan Securities LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, BofA
Securities, Inc., UBS Securities LLC, and Lazard Frères & Co. LLC (collectively, the
"Underwriters").  ¶¶ 71-76.  Plaintiffs also name as defendants certain investment funds that held
Zymergen stock at the time of its IPO: entities affiliated with SVF Excalibur (Cayman) Limited
(the "SoftBank Funds"), which collectively had beneficial ownership of shares constituting about
32.4% of Zymergen's equity before the IPO and 27.1% after (¶ 62); entities affiliated with Data
Collective II, L.P. (the "DCVC Funds"), which collectively held beneficial ownership of about
9.0% pre-offering and 7.5% post-offering (¶ 63); and the True Ventures Funds, which collectively
held beneficial ownership of about 8.5% prior to the IPO and 7.1% immediately after (¶ 64).
Along with more than 70 other investors, the True Ventures Funds (along with the SoftBank
Funds and DCVC Funds) are parties to an investor rights agreement (the "Investors' Rights
Agreement") and a voting agreement (the "Voting Agreement") with Zymergen.  ¶ 65.[4]

Plaintiff Biao Wang, who purchased 3,420 shares of Zymergen stock in April 2021 and
sold all but 120 of those shares on August 3-4, 2021 (ECF No. 35-4), was appointed lead plaintiff
on December 20, 2021.  ¶ 48; ECF No. 69.  The Amended Complaint also purports to add a

---

[3] Ex. A is Zymergen's April 21, 2021 Prospectus (filed with the SEC on April 23, 2021), which was part of the final Registration Statement for the IPO.  ¶¶ 87, 89.  The documents referred to as "Ex. A" and "Ex. B" are attached to the Muck Decl. and, as discussed in the accompanying RJN, are subject to judicial notice and/or incorporated by reference in the Amended Complaint.

[4] *See also* DCVC Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss ("DCVC Mot."), filed concurrently, at Sec. II.  The Investors' Rights Agreement is attached as Exhibit A to the Declaration of Michael Kahn, filed in support of the DCVC Defendants' motion to dismiss.

1    second plaintiff, West Palm Beach Firefighters' Pension Fund (¶ 49), which was unsuccessful in

2    its competing effort to be appointed lead plaintiff.  ECF No. 42.

3        B.      **Relevant Factual Background**

4            1.      **Zymergen and Its Business**

5        Zymergen was founded in 2013 by Mr. Hoffman, Dr. Serber and Dr. Jed Dean.  ¶¶ 35, 51,

6    59.  It is a science and material innovation company focused on designing, developing and

7    commercializing bio-based products for use in a variety of industries.  ¶¶ 2-3, 78.

8        Zymergen's goal is to develop new products through biological processes – *e.g.*, the

9    creation of biomolecules through fermentation (a process the Company called "biofacturing")  –

10   and thereby provide a more efficient and sustainable alternative to processes used by traditional

11   chemical companies, which often involve the use of petrochemicals.  ¶ 96.  Since its founding,

12   Zymergen has developed a platform that treats the genome as a search space, utilizing proprietary

13   technology to identify genetic changes that improve the economics for bio-based products in such

14   industries as chemicals and materials, agriculture and pharmaceuticals.  ¶¶ 2, 78.  The platform is

15   also used to discover novel molecules that can be used to enable unique material properties.  *Id*.

16   Historically, Zymergen generated substantially all of its revenue from research and development

17   ("R&D") service contracts and collaboration arrangements that provided custom services for its

18   partners.  Ex. A at 3.  For example, R&D service contracts with the Defense Advanced Research

19   Project Agency and a multinational food processing company collectively generated more than

20   $45 million in revenue for Zymergen.  Ex. A at 70-71.

21       In December 2020, Zymergen launched its initial product: Hyaline, the first in a planned

22   franchise of optical films, designed for electronics companies to use for display touch sensors in

23   personal devices and other applications.  ¶¶ 10, 79, 99; Ex. A at 3, 69.  Hyaline used a

24   biomolecule identified through the Company's proprietary platform and was developed to address

25   (among other things) the anticipated market for robust foldable touchscreens and high density

26   flexible printed circuits.  ¶ 100; Ex. A at 3, 69.

27       Zymergen made clear that Hyaline was not expected to generate revenue from product

28   sales until after it had successfully completed the sale qualification process (in which customers

1   are able to validate the product and qualify it as a standard component in their final electronic

2   devices), which the Company estimated would begin to occur in the second half of 2021.  ¶¶ 11,

3   102; Ex. A at 4-5, 72.  By early 2021, Zymergen had ten other products in its development

4   pipeline: three in consumer electronics (including another high-performance optical film planned

5   for launch in 2023), four with consumer care applications (including a naturally derived non-

6   DEET insect repellent), and three in agriculture.  ¶¶ 98, 101; Ex. A at 3-5, 73-74.

7                    **2.**     **Zymergen's IPO**

8          Zymergen completed an IPO of common stock on April 22, 2021.  ¶ 4.  The Registration

9   Statement for that offering provided investors with detailed information regarding the Company's

10  technology, operating history, revenue model, growth strategy, long-term objectives, potential

11  markets for its products, business challenges, and risk factors.  Ex. A at 1-14, 17-60, 67-90, 93-

12  130.  Among other things, Zymergen explained: the nature of its platform; the process by which

13  the Company intended to develop new products, which (in the case of Hyaline and other

14  electronics products) would entail a customer qualification process that could last 6-18 months or

15  longer; that revenue would not be generated by such products until and unless the customer

16  qualification process was completed and a customer placed an order; that substantially all

17  revenues to date had been generated from R&D service contracts and collaboration arrangements

18  aimed at developing, testing and validating its platform; Zymergen's existing pipeline of

19  products, with anticipated launch dates for three of them; the anticipated timeline and costs

20  (roughly, five years and $50 million) to launch new products; that to expedite Hyaline's launch,

21  the Company had initially used a non-fermentation produced biomolecule and planned to convert

22  to a fermentation-based molecule in 2022, and anticipated employing a similar strategy with other

23  products (although doing so could result in higher costs of production); and the bases and

24  assumptions on which the Company estimated the total addressable market opportunities for

25  potential future products.  *Id.* at 1-12, 69-76, 93-128.

26         The Company also furnished audited financial statements for 2019 and 2020.  Ex. A at 17-

27  18, F-1-35.  Those results showed total revenues of $15.4 million in 2019 and $13.3 million in

28  2020, as well as net losses of $236.8 million and $262.2 million, respectively.  *Id.* at 17.

In addition, the Registration Statement provided a thorough discussion of risk factors facing the Company and the myriad uncertainties and challenges associated with its goal of using innovative and highly complex technology to develop and commercialize new products. Ex. A at 10-12, 19-56. For example, the Registration Statement made clear that the Company "would eventually need to transition from a company with a focus on deriving revenue from R&D service contracts . . . to a company capable of developing and commercializing its own products as well," and warned that the Company "may not be successful in such a transition." Ex. A at 20. The Registration Statement also cautioned that the Company had "a history of operating losses" and did "not expect to be profitable for the foreseeable future," and that its "limited operating history" might "make it difficult to evaluate the prospects for [its] future viability and predict [its] future performance." *Id*. at 12; *see also id*. at 19-20.

Further underscoring the challenges facing the Company, Zymergen made clear that, at the time of the IPO, it "d[id] not today have [any] revenue from product sales" and warned that it might "not be able to successfully commercialize [its] products." Ex. A at 12; *see also id*. at 19-23. The Company explained that "[d]ue to the significant lead time involved in launching a new product, [it] [was] required to make a number of assumptions and estimates regarding the commercial feasibility of a new product, including assumptions and estimates regarding the size of an emerging product category and demand for those products," among other assumptions. *Id*. at 23. The Company also emphasized that its limited operating history could make it difficult to accurately evaluate future prospects, and that its reliance on a novel and complex technology could adversely affect the ability to develop products, the time and costs associated with such development, or customer acceptance. *Id*. at 12, 22. It also discussed the risks of competition, customer acceptance, the potential difficulties of moving from reliance on non-fermentation-based biomolecules to fermentation-produced versions of products, and the Company's lack of its own commercial scale manufacturing capacity, and further stressed that it might not be able to manufacture products at sufficiently low cost or sufficiently high volume to be commercially successful. *Id*. at 12, 19-26, 29-30.

### 3.  Post-IPO Developments

A little more than one month after the IPO, on May 24, 2021, Zymergen announced preliminary results for the first quarter of 2021.  Ex. B.  Consistent with the disclosures in the Registration Statement, the Company reported that revenues for the first three months of the year ($3.7 million) all related to R&D agreements and collaboration revenue.  *Id*.  It also reported quarterly operating expenses of about $87.1 million, driven in large part by increased research and development activity to develop Hyaline production processes.  *Id*.

Over the next several months, a number of difficulties, including with respect to Hyaline, began to emerge.  On August 3, 2021, Zymergen announced that it had "*recently* [become] aware of issues with its commercial product pipeline" that would "impact [its] delivery timeline and revenue projections."  ¶ 114 (emphasis added).  As a result, the Company stated that it "no longer expect[ed] product revenue in 2021 and expect[ed] product revenue to be immaterial in 2022."  *Id*.  It explained that, during the recently completed quarter, several customers had "encountered technical issues in implementing Hyaline into their manufacturing processes," and while the Company had made "significant progress towards addressing" those concerns and believed there were no "intrinsic technical issues," the situation "resulted in a delay in [its] commercial ramp."  *Id*.  Zymergen also disclosed that it was "evaluating *emerging data* on the total addressable market for foldable display applications, which indicate a smaller near-term opportunity that is growing less rapidly than anticipated"  *Id*. (emphasis added).  At the same time, it announced that Mr. Hoffman had resigned as CEO and a member of the Board, and Mr. Flatley had agreed to serve as Acting CEO while the Company launched a search to find a permanent replacement.  *Id*.

Mr. Flatley emphasized these same points in a conference call later that day.  In the call, he reiterated that due to the "normal sort of cutting-your-teeth problems that happen in the implementation of these advanced types of technologies," the Company "recently became aware of issues with [the] commercial pipeline" and "execution challenges."  ¶¶ 115, 126.  Mr. Flatley explained that "over the last weeks," Zymergen had experienced "execution challenges in matching the products that come off that platform to the market."  ¶ 121.  He stressed that the "pipeline of products is as was represented during the IPO," but said that recent events indicated

1   that what was "thinner than we expected [was] the pipeline of customers for Hyaline specifically."

2   ¶¶ 121, 123.  In that regard, he noted that implementation issues "came up *post IPO*," new data

3   "indicated a shift in market timing," and customer input suggested demand for Hyaline was less

4   than previously estimated.  ¶¶ 126-127.  In light of this emerging information, the Board moved to

5   address these issues "[a]s soon as [it] learned of [them]," expenses were being reduced "to match

6   the newly expected revenue ramp," and the Company would continue to assess the new

7   information in the quarters ahead.  ¶¶ 115-116, 128; *see also* ¶¶ 121, 123, 126, 127.

8       Three months later, on November 3, 2021, Zymergen announced that it was discontinuing

9   Hyaline and several other electronics film programs (the exception being ZYM0101, which the

10   Company was developing in partnership with Sumitomo Chemical).  ¶¶ 159-160, 164.  Zymergen

11   stressed that the decision to discontinue Hyaline was "commercial" and based on an ongoing

12   review of relevant information in the preceding weeks and months.  ¶ 164.  Although Hyaline

13   "worked as designed," the Company concluded – based on recent evaluation and "emerging data

14   on the market segment" – that there was "a smaller near-term opportunity than we initially

15   expected."  ¶¶ 160, 164.  Zymergen also discontinued its consumer care programs (including

16   insect repellent), based on higher-than-expected production costs (¶¶ 160, 164), and made clear

17   that, as a result of a rigorous strategic review, its product development efforts would be focused

18   on a "smaller number of programs" that it believed would enable the Company to "capitalize on

19   its capabilities and provide clear commercial opportunities."  ¶ 160.  The Company also

20   confirmed that it did not expect to generate material revenue in 2021 or 2022.  ¶ 171.

21       **C.    Procedural History and Plaintiffs' Claims**

22       This action was filed just one day after Zymergen's August 3, 2021 announcement.

23   Multiple shareholders filed motions for appointment as lead plaintiff under the PSLRA and, on

24   December 20, 2021, Plaintiff Wang was appointed.  ECF No. 69.

25       The Amended Complaint was filed on February 24, 2022.  It asserts a claim under Section

26   11 of the 1933 Act against the Zymergen Defendants and the Underwriters, arguing that (based

27   principally on alleged omissions) the Registration Statement was materially misleading with

28   respect to the Company's biofacturing platform, its development process, expected market

opportunities and revenue, and the risks facing Zymergen.  ¶¶ 92-105, 108-111, 190-198.
Plaintiffs also assert a control person claim under Section 15 against the Individual Defendants,
the SoftBank Funds, the DCVC Funds and the True Ventures Funds.  ¶¶ 199-203.

## III.   GOVERNING LEGAL STANDARDS

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim."  *Navarro v. Block*, 250
F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual matter, accepted as
true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-
79 (2009) (citation omitted).  Although the Court must accept well-pleaded facts, it need not
accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action []
supported by mere conclusory statements."  *Id.* at 678-79.  In assessing whether plaintiff has
stated a claim, the Court may consider matters subject to judicial notice or incorporated by
reference in the complaint.  *See Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049,
1061 (9th Cir. 2008).

To state a Section 11 claim, plaintiff must allege that a registration statement contained a
misrepresentation of material fact or omitted a fact that rendered a specific statement materially
misleading.  15 U.S.C. § 77k(a); *Rubke v. Cap. Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir.
2009).  A fact is material only if "there is a substantial likelihood that a reasonable [investor]
would consider it important" in reading a challenged statement "fairly and in context."  *Omnicare,
Inc. v. Laborers Dist. Council Constr. Indus. Pens. Fund*, 575 U.S. 175, 194-96 (2015).

It is plaintiff's burden to "show that a purported misstatement in a registration statement
was misleading at the time the registration statement was issued."  *Costanzo v. DXC Tech. Co.*,
2021 WL 5908385, at *3 (N.D. Cal. Dec. 14, 2021) (citation and quotation marks omitted); *see
also Rubke*, 551 F.3d at 1164.  Section 11 claims cannot be based on hindsight.  *See In re
Cloudera, Inc. Sec. Litig.*, 2021 WL 2115303, at *22 (N.D. Cal. May 25, 2021); *see also In re
TVIX Sec. Litig*, 25 F. Supp. 3d 444, 450 (S.D.N.Y. 2014), *aff'd sub nom. Elite Aviation LLC v.
Credit Suisse AG*, 588 F. App'x 37 (2d Cir. 2014).  Thus, where a Section 11 claim is based on
alleged omissions, the complaint "must demonstrate that the omitted information existed at the
time the registration statement became effective."  *Costanzo*, 2021 WL 5908385, at *3 (quoting

*Rubke*, 551 F.3d at 1164).  Furthermore, "it is not enough that the Registration Statement omitted relevant or material facts …. [Rather], the omission must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists to be actionable."  *In re Dropbox Sec. Litig.,* 2020 WL 6161502, at *6 (N.D. Cal. Oct. 21, 2020) (citations and quotation marks omitted).  Alleging that existing omitted facts rendered a registration statement materially misleading "is no small task for an investor," and is *not* satisfied "merely by means of conclusory assertions."  *Omnicare*, 575 U.S. at 194; *see also Dropbox*, 2020 WL 6161502, at *5-6 (conclusory allegations and speculation are insufficient to state a claim under Section 11).

## IV.   PLAINTIFFS FAIL TO PLEAD A SECTION 11 CLAIM

Plaintiffs allege four distinct, though related, categories of alleged misstatements.  *First*, they challenge the Registration Statement's descriptions of Zymergen's proprietary biofacturing platform, including statements about its general design and the Company's aspiration to produce superior products faster and cheaper than its competitors.  ¶¶ 94, 96.  *Second*, Plaintiffs claim the discussion of Zymergen's product development process and pipeline was misleading.  ¶¶ 94, 97-104.  *Third*, they take issue with Zymergen's estimates concerning when its products would generate revenue and its assessment of potential market opportunities.  ¶¶ 95, 99, 101-104.  *Fourth*, Plaintiffs challenge certain risk factors.  ¶¶ 108-111.  According to the Amended Complaint, these statements were purportedly all misleading as a result of facts that Zymergen later "disclosed on August 3, 2021 and November 3, 2021."  ¶ 93.  Plaintiffs' conclusory and hindsight-based allegations are not sufficient to state a claim under Section 11.

### A.   Plaintiffs Do Not Adequately Allege That Anything Said in the Registration Statement Regarding Zymergen's Biofacturing Platform Was Materially False or Misleading

Plaintiffs allege that the Registration Statement misrepresented the "Company's biofacturing platform" (¶ 92) but fail to plead that any statement regarding the platform was materially false or misleading.  Notably, Plaintiffs do not contend that Zymergen misrepresented the science or technology underlying the platform or any of the products in development.  ¶ 94.  To the contrary, the Amended Complaint's only allegations in that regard reflect that the Company's technology was, and remains, innovative and sound.  *See, e.g.,* ¶ 182 (quoting Mr.

Flatley's statement that "the underlying technology works"); ¶ 164 (Mr. Flatley stating, "[t]o be clear and contrary to many published reports, the product worked as designed, the underlying technology and science are sound.").  The Amended Complaint does not plead facts suggesting that any of those statements were false.

Instead, Plaintiffs assail the following statements regarding the biofacturing platform: (i) Zymergen "expect[s] [biofacturing] will create better products faster, cheaper and more sustainably than traditional chemistry by engineering microbes to make novel biomolecules that are the key ingredients in those products" (¶ 94); (ii) the Company's "goal is to launch our products in about half the time and 1/10 the cost of what traditional chemicals and materials companies can deliver" (*id.*); and (iii) the "pioneering biofacturing process is designed to flexibly and cost effectively create products with unique characteristics that possess the diversity and power of Nature's own inventions" (¶ 96).  None of these statements can support a claim.

As an initial matter, the statements are not actionable as a matter of law.  Descriptions of the biofacturing process as designed to "flexibly and cost effectively create products with unique characteristics" and enable the Company to develop "better, faster and cheaper" products, or explaining that its "goal" was to "launch our products in about half the time and 1/10th the cost" of traditional methods (¶ 94), are aspirational and not capable of objective verification.  As a result, the statements cannot support a claim under Section 11.  *See, e.g., In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *7 (N.D. Cal. July 21, 2020) (statements describing software "as providing a 'cutting-edge,' 'leading,' and 'turnkey cloud-native platform' . . . [were] not actionable because they are vague assessments that 'represent the 'feel good' speak that characterizes 'non-actionable puffing'" (citation omitted)).  *See also Terenzini v. GoodRx Holdings, Inc*., 2022 WL 122944, at *4 (C.D. Cal. Jan. 6, 2022) (statement that company's competitive position was enhanced by its "proprietary technology platform" not actionable); *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255-56 (N.D. Cal. 2019) (no claim for statement that company's "goal is to expand the commercialization" of its product); *Greenberg v. Sunrun Inc*., 233 F. Supp. 3d 764, 774-75 (N.D. Cal. 2017) (dismissing Section 11 claim based on statements regarding "predictable" pricing and the ability to "lock-in long term savings," and noting that "[t]he

1    securities laws do not exist to combat sales puffery of this sort").

2    In any event, the Amended Complaint does not plead that the challenged statements

3    regarding the biofacturing platform were false or misleading when made.  Plaintiffs do not cite a

4    single fact – not one witness statement, internal document, or a contemporaneous fact from any

5    other source – to dispute that, at the time of the IPO, Zymergen's "*goal*" was to launch its

6    products faster and more efficiently, that it "expect[ed]" the process to ultimately achieve that

7    goal, or that the biofacturing process was "*designed to* flexibly and cost effectively create

8    products with unique characteristics."  ¶¶ 94, 96 (emphasis added).  Thus, falsity is lacking.  *See,*

9    *e.g.*, *Restoration Robotics,* 417 F. Supp. 3d at 1258-59 (registration statement's discussion of

10   marketing strategy was not false or misleading where plaintiff failed to plead that the company

11   was not employing the stated strategy at the time); *see also Terenzini*, 2022 WL 122944, at *4

12   (failure to allege falsity of statements regarding technology platform, competitive position, and

13   belief that company's model "facilitated the rapid growth and expansion").

14   Indeed, Plaintiffs' attempt to plead that the biofacturing statements were misleading (¶ 93)

15   relies improperly on hindsight.  *See TVIX*, 25 F. Supp. 3d at 450 ("Section 11 claims cannot be

16   based on a backward-looking assessment of the registration statement." (citation omitted)).  The

17   Amended Complaint cites Zymergen's August 3 and November 3 disclosures to allege that the

18   Company "was unable to produce products that could be sold at a profit," "several key target

19   customers had technical issues" with Hyaline, there was "no hit product yet in the foldable display

20   market," and the market for Hyaline and other products proved to be smaller and less profitable

21   than anticipated.  ¶ 93.  None of those allegations suffices to show that the challenged statements

22   were materially misleading *at the time* of the IPO.  *See, e.g.*, *Wong v. Arlo Techs., Inc.,* 2019 WL

23   7834762, at *7 (N.D. Cal. Dec. 19, 2019) (post-IPO "subsequent developments … do[] not mean

24   that a defendant committed a misrepresentation when the defendant initially made the public

25   filing") (citation and quotation marks omitted).  Put another way, it is not enough to show that the

26   statements were "later revealed to be overly optimistic."  *Terenzini*, 2022 WL 122944, at *4.

27   More fundamentally, the purportedly undisclosed facts cited in Paragraph 93 do not

28   contradict or otherwise render the challenged statements materially misleading.  While the August

3 and November 3 statements acknowledge implementation issues at customer sites, as well as a revised assessment of the "near-term market for Hyaline" and challenges associated with the economics of manufacturing certain products, they are not inconsistent with what the Registration Statement said regarding the description or design of the biofacturing platform, the underlying technology, or the Company's stated goals and ultimate expectations with respect to the platform. *See, e.g., Pivotal*, 2020 WL 4193384, at *6 (no claim where allegedly omitted facts did not contradict Registration Statement); *Dropbox*, 2020 WL 6161502, at *7 (same). And Plaintiffs' apparent suggestion that the platform was less effective than anticipated (¶ 93) cannot support a Section 11 claim. *See, e.g.*, *Restoration Robotics,* 417 F. Supp. 3d at 1258 (statement regarding training and marketing support to customers was not rendered misleading by allegations that the company's program was ineffective; "it is Plaintiff's burden to show falsity, not inadequacy").

Additionally, the statements concerning Zymergen's "expectations" and "goals" for its platform are expressions of opinion and, as such, are only actionable in limited circumstances. *See Pivotal*, 2020 WL 4193384, at *14 (citing *Omnicare*, 575 U.S. at 183, and *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017)).[5] *See also Costanzo*, 2021 WL 5908385, at *10-11; *Restoration Robotics*, 417 F. Supp. 3d at 1260-61; *Dropbox*, 2020 WL 6161502, at *7. To the extent that Plaintiffs claim the opinions regarding "goals" and "expectations" were "material misrepresentations," they must plead "both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *Costanzo*, 2021 WL 5908385, at *11 (citation omitted). The Amended Complaint does not even purport to make that showing here. And even if Plaintiffs were to characterize their claim as one based "on a theory of omission," they do not plead – as they must – that the allegedly omitted facts in Paragraph 93 "go[] to *the basis for the issuer's opinion*" and that nondisclosure of those facts "makes the opinion statement … misleading to a reasonable person reading [it] fairly and in context." *Costanzo*, 2021 WL 5908385, at *11 (citation omitted; emphasis added); *see also Dropbox*, 2020 WL 6161502, at *7 (same); *Pivotal*, 2020 WL 4193384, at *14 (no falsity where

---

[5] As the Supreme Court held in *Omnicare*, "a sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong." 575 U.S. at 186.

1    plaintiffs failed to plead defendants did not hold stated beliefs regarding financial projections).

2          The statements concerning Zymergen's "expectations" and "goals" are also forward-

3    looking statements protected by the "bespeaks caution" doctrine.  The Ninth Circuit has long

4    recognized that the doctrine "'provides a mechanism by which a court can rule as a matter of law

5    that defendants' forward-looking representations contained enough cautionary language or risk

6    disclosure to protect the defendant against claims of securities fraud'" and applied it to offering

7    materials such as Zymergen's Registration Statement.  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399,

8    1408-09 (9th Cir. 1996) (applying "bespeaks caution" doctrine and finding that "[a]nalyzing the

9    quoted statements in context leads to the inexorable conclusion that investors were specifically

10   and adequately cautioned about the relevant risks."); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d

11   1407, 1416 (9th Cir. 1994) (applying doctrine where the prospectus "clearly bespoke caution on

12   the serious risks [the company's] liquidity crisis posed to investors" and "Plaintiffs [we]re not

13   entitled to an inference that they were misled in the face of such disclosures.").[6]

14         Here, the Registration Statement expressly identified statements regarding Zymergen's

15   ability to develop, commercialize, produce and generate revenue from Hyaline and other new

16   products – as well as its ability to create products more quickly and inexpensively – as forward-

17   looking statements.  Ex. A at 57.  And, as discussed above, the Registration Statement contained

18   extensive and specific cautionary language going directly to the subject matter of the alleged

19   misstatements, including the challenges of "operati[ng] … our biofacturing platform" and relying

20   on "relatively novel and complex technology," the potential for "improvements or modifications

21   to our biofacturing platform," the risks of "build[ing] a pipeline of products through our

22   biofacturing platform and develop[ing] those pipeline products into commercially viable

23   products," the Company's limited operating history, potential difficulties in manufacturing and

24   achieving commercial scale, and a host of other factors that warned investors Zymergen "may not

25   be able to solve development problems or develop a commercially viable product at all."  *Id.* at

26   10-12, 19-25.  In light of "the Registration Statement's extensive and specific disclosures . . . no

27   ─────────────
     [6] Unlike the PSLRA's safe harbor, the bespeaks caution doctrine applies to forward-looking
28   statements made in connection with an IPO.  *See, e.g., In re Violin Memory Sec. Litig,* 2014 WL
     5525946, at *13 (N.D. Cal. Oct. 31, 2014).

1    reasonable investor would have considered any of Plaintiffs' alleged misstatements or omissions

2    material." *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *13 (N.D. Cal. Oct. 31, 2014)

3    (applying bespeaks caution doctrine); *see also Restoration Robotics,* 417 F. Supp. 3d at 1256-57

4    (statements regarding "Defendants' belief in increasing [product's] profitability and … intention

5    to develop the [product]" were not actionable in light of disclosures regarding, *inter alia*,

6    company's "limited commercial history," "significant losses" and "lack of commercial success").

7                **B.    Statements Regarding Product Development Do Not Support a Claim**

8            Plaintiffs also purport to challenge statements concerning the product development

9    process and overall status of the pipeline at the time of the IPO (¶¶ 97-98, 101, 103), as well as

10   statements relating specifically to Hyaline and its launch (¶¶ 99-100, 102).  Rather than alleging

11   that most of these statements were inaccurate, Plaintiffs instead argue that the statements were

12   purportedly misleading because they failed to disclose what transpired in the months following

13   the IPO. ¶ 93.  But Zymergen's failure to predict the future of its products' performance,

14   customer response or market dynamics does not give rise to a claim under Section 11.

15          Plaintiffs do not contend that Zymergen inaccurately described its product development

16   approach (¶ 97), nor do they dispute the accuracy of statements that it was "pursuing new markets

17   for future growth" (¶ 101) and "generally target[ing] products with a market opportunity that, if

18   successful, at scale, could support annual sales of greater than $150 million" (¶ 103).  Nothing in

19   the Amended Complaint suggests that these statements regarding Zymergen's approach to

20   product development and commercialization as it existed at the time of the IPO were not accurate.

21   *See, e.g., Greenberg*, 233 F. Supp. 3d at 772 (statement describing company's business model

22   was not alleged to be false).  Likewise, Plaintiffs do not allege that descriptions of Zymergen's

23   products and its relationship with potential customers were false in April 2021.  *See* ¶¶ 98, 101

24   (description of eleven products in pipeline); ¶ 100 (Hyaline and its product design); ¶¶ 99, 102

25   (Hyaline's launch in December 2020 and that the Company was beginning "product qualification

26   process" with "multiple customers," including "sampling and discussions on commercial terms").

27          Having failed to allege that Zymergen inaccurately described the state of its business as of

28   April 2021, Plaintiffs cannot plead falsity merely by noting that Zymergen *later* decided to

discontinue Hyaline and other products based on post-IPO commercial, production and distribution issues.  As discussed above, that resort to hindsight is insufficient as a matter of law. *See* Sec. IV.A, *supra*.  Indeed, courts have routinely held that it is not enough to allege – as Plaintiffs do here – that a Registration Statement is false or misleading because product development or customer relationships do not ultimately materialize as expected.  *See, e.g.*, *Wong,* 2019 WL 7834762, at *7 (fact that product launch was subsequently delayed did not give rise to a claim under Section 11 based on the statement that "two new products" would "join the growing [company] ecosystems later this year"); *In re Resonant Inc. Sec. Litig.*, 2016 WL 1737959, at *7-8 (C.D. Cal. Feb. 8, 2016) (fact that product did not ultimately meet customer specifications did not support Section 11 claim; plaintiffs failed to allege that "there was no way [product] could be produced up to [customer's] specifications" at the time challenged statements were made).  Nor can Plaintiffs plead falsity *as of April 2021* by relying on the supposed "temporal proximity" of the IPO to the later announcements.  *See, e.g., Wong*, 2019 WL 7834762, at *7 (allegation that "[D]efendants knew of [] problems [with product] at the time of the IPO" in part "because the IPO was only 54 days before the start of the fourth quarter [when products were revealed to be delayed]" was "insufficient [] to show, that at the time of the Registration Statement the Defendants knew that [the company] was having problems").

Plaintiffs' conclusory averment that Mr. Flatley admitted in August and November that "just about everything in the Registration Statement concerning the development, commercial opportunity and sale of the 11 products in the Company's pipeline was not true" (¶ 19) is a gross mischaracterization, and ineffective to salvage Plaintiffs' claim.  Nothing said in August or November suggested (let alone admitted) that the actual state of affairs in April 2021 contradicted what was said in the Registration Statement.  Mr. Flatley and Zymergen discussed the impact of various post-IPO developments, including execution challenges, obstacles encountered in the Hyaline customer qualification process, the assessment of new information, and adjustments to the product development process in light of those new challenges and emerging data.[7]  Indeed,

---

[7] *See, e.g.*, ¶ 114 ("During the quarter [ending June 30, 2021], several key target customers encountered technical issues in implementing Hyaline"); *id*. (The Company is also evaluating *emerging data* on the total addressable market for folding display applications" (emphasis

Mr. Flatley made clear that (among other things) "the pipeline of products is as was represented during the IPO" (¶ 123), technical issues concerning the implementation of Hyaline "came up *post IPO*" (¶ 126; emphasis added), and "we think the underlying *technology platform works*, and *works robustly*" (¶ 183; emphasis added).  There is nothing remotely akin to an admission that would establish falsity as of the IPO.  *See Cloudera*, 2021 WL 2115303, at *14 (dismissing claims under the 1933 Act and 1934 Act and explaining that for a later statement to establish falsity, it must be similar to saying "I knew it all along") (citations and quotation marks omitted).

Similarly, while Plaintiffs assert that Zymergen "failed to disclose that several key target customers had technical issues implementing Hyaline" (¶ 93), they do not plead that such issues existed in April 2021 – or, equally importantly, that the existence of any such "technical issues" was inconsistent with statements regarding product development or the pipeline.  *See Restoration Robotics,* 417 F. Supp. 3d at 1260-61 (alleged defects in product did not contradict statement about the product); *Primo v. Pac. Biosciences of Cal.*, 940 F. Supp. 2d 1106, 1121-22 (N.D. Cal. 2013) (alleged "bugs" in DNA sequencing program did not render statements about the release of that program materially misleading).  And Plaintiffs do not suggest (nor could they) that Zymergen's Registration Statement promised that the product development process would be marked by unchecked progress; to the contrary, the Company detailed the risks and challenges it faced in executing on its strategy and bringing products to market.  *See, e.g.*, Ex. A at 12, 19-30.

Equally unavailing are Plaintiffs' challenges to statements regarding expectations and plans for Hyaline[8] or future launches of other products.[9]  Such statements are expressions of

---

added)); ¶ 115 ("We *recently became aware* of issues with Zymergen's commercial product pipeline" and "*recently learned* of significant execution challenges within the organization" (emphasis added)); ¶ 121 ("What I think we've seen, as we *look back over the last weeks*, is a real challenge in execution"; emphasis added); *id.* ("[W]hat's happened on Hyaline has *caused us to relook at the entire pipeline* of products" (emphasis added)); ¶ 123 ("[T]he timing for the foldable display market is getting pushed out."); ¶ 127 (reassessment of the demand for Hyaline was driven in part by recent "customer contact"); ¶¶ 164, 170 (November announcement that certain programs were being discontinued was a result of recent analyses).

[8] *See* ¶ 100 (expectation that development of commercial scale fermentation process for Hyaline would "be complete in 2022"); ¶ 102 (expectation that sale qualification process for Hyaline would "last 6-18 months, or longer, depending on the customer and end device requirements").

[9] *See* ¶ 94 ("estimat[ing] the timelines and costs of launching our products to be roughly five years and $50 million"); ¶ 101 (describing launch plans for ZYM0107 and ZYM0101, two products in film pipeline, as well as ZYM0201, an insect repellent, and a fertilizer product); ¶ 102

opinion (*see* Sec. IV.A, *supra*), and Plaintiffs do not allege: (1) that the opinions were objectively or subjectively false at the time of the IPO; or (2) to the extent that Plaintiffs are relying on an omissions theory (¶ 93), that any of the purportedly omitted facts formed the "basis" for the stated opinions and that disclosure was necessary to prevent readers of the Registration Statement from being misled. *See Costanzo*, 2021 WL 5908385, at *10-12; *see also Pivotal*, 2020 WL 4193384, at *13-14. The statements are also forward-looking, identified as such (Ex. A at 57-58), and – in light of Zymergen's detailed warnings specifically addressing the many risks and challenges that could adversely affect the ability to successfully launch products and ultimately generate revenues (*see, e.g.*, *id.* at 10-12, 19-26, 32) – protected by the "bespeaks caution" doctrine. *See, e.g.*, *Violin Memory*, 2014 WL 5525946, at *13; *see also* Sec. IV.A., *supra*.[10]

### C.    The Statements Regarding Zymergen's Revenue Forecasts and Potential Market Opportunities Do Not Support a Claim

Plaintiffs fare no better with their challenge to Zymergen's assessment of general market demand and potential market opportunities for its products, and estimates concerning when its products, including Hyaline, might generate revenue. ¶¶ 95, 99, 101-104. Broad statements concerning potential demand for "innovative" products, and describing that opportunity as "large," "never been greater," and "enormous and diverse" (¶¶ 95, 104), are incapable of objective verification and not actionable. *See* Sec. IV.A., *supra*; *see also Pivotal*, 2020 WL 4193384, at *7 ("statements that the company has the 'ability to innovate and rapidly respond to customer needs'…and that its software addresses the 'rapidly growing market'" are non-

---

(expectation that Company would convert to "fermentation-produced molecule" for Hyaline "in 2022"); *id.* (expectation that ZYM0101 and ZYM0201 would "launch in 2023," electronics products would "follow a similar 6-18 month qualification process," but that would not be the case for "many of our consumer care and agricultural products"); ¶ 103 (describing plans to grow business by "launching additional products," "increas[ing] the market penetration," "add[ing] new products" to the pipeline, and "partner[ing] with industry leaders to enter" those markets); ¶ 104 ("[w]e anticipate deploying our innovation engine to create decades of disruptive breakthrough products" and plan to "us[e] a rigorous discipline to select new opportunities").

[10] Some of the opinion statements – *e.g.*, ¶ 103 ("we plan to grow" by "launching additional products," "increas[ing] the market penetration," and "entering new markets") and ¶ 104 ("deploying our innovation engine," "decades of disruptive breakthrough products," "rigorous discipline") – are also generalized and aspirational expressions of optimism, and thus are not actionable as a matter of law. *See, e.g.*, *Restoration Robotics*, 417 F. Supp. 3d at 1255-56; *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *9 (N.D. Cal. Sept. 16, 2014).

actionable puffery).  Similarly, statements describing Zymergen's overall market approach[11] are

high-level descriptions of corporate strategy and far too generalized to support a claim.  *See*

*Restoration Robotics*, 417 F. Supp. 3d at 1255-56 ("our goal is to expand the commercialization"

by "driv[ing] increased utilization ...working collaboratively with our … customers" is puffery);

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014)

("opportunity for system placement [was] 'still very, very large'" and "there is potential for

growth in the [product] market" were not actionable statements); *Cloudera*, 2021 WL 2115303, at

*17 ("we're ramping up … to create awareness," and "we think we'll compete very effectively,"

were not actionable).

      The remaining statements concerning the market opportunity for the Company's products

and anticipated revenue[12] are all expressions of opinion.  *See Costanzo*, 2021 WL 5908385, at

*10-11.  And, as with the other challenged opinions discussed previously, the Amended

Complaint fails to plead that they were not genuinely believed at the time of the IPO (or that the

opinions were based upon specific facts that Zymergen was obligated to disclose).  *See* Secs.

IV.A-B., *supra*; *see also Costanzo*, 2021 WL 5908385, at *10-12; *Dropbox*, 2020 WL 6161502,

at *7.  Indeed, Mr. Flatley's August and November statements – which, as noted above, Plaintiffs

---

[11] *See* ¶ 101 (stating generally that company was "pursuing new markets for future growth"); ¶ 103 (describing "general" approach to "target products with a market opportunity that if successful, at scale, could support annual sales of greater than $150 million"); *id*. (describing "belie[f]" that Company's "strategy will drive strong future revenue growth as our revenues from launched products increase and revenues from new product launches stack on top of each other")

[12] *See* ¶ 95 ("[t]he demand for innovative materials has never been greater" and "the demand for materials that solve important problems and are environmentally sustainable has never been greater"); ¶ 102 ("[i]n the case of Hyaline, we expect to begin generating revenue in the second half of 2021"); *id*. ("[w]e expect other electronics products, including ZYM0101, which we expect to launch in 2023, to follow a similar 6-18 month qualification process following which we expect to generate revenue"); *id*. ("[f]or many of our consumer care and agriculture products, including ZYM0201 which we expect to launch in 2023," the Company "expect[s] to generate revenue upon launch"); ¶ 104 (market opportunity for products is "enormous and diverse"); *id*. (expressing "belie[f]" that the true market opportunity is much larger"); *id*. (estimating display market for Hyaline at "over $1 billion in 2020" and opining based on Transparency Market Research that global market for insect repellents is "over $1.5 billion across sprays and other traditional formats"); *id*. (opining that "total market opportunity…addressable by our biofacturing platform" is "at least $1.2 trillion across 20 separate industries for our potential products," which are "all ripe for disruption"); *id*. (opining that the market opportunity in the "electronics, consumer care and agriculture" industries was approximately $150 billion); *id*. (data relating to insect repellent products "suggest[] that there is a large latent demand").

rely upon (albeit unsuccessfully) to plead falsity – describe *post-IPO* developments that led the Company to *reassess* its revenue expectations and thus are inconsistent with any suggestion that the challenged opinions were not genuinely believed in April 2021.  *See, e.g.*, ¶ 121 (the market opportunity for Hyaline has been "pushed out," and "the pipeline is thinner than we might have expected back several months ago"); ¶ 123 ("[w]hat is thinner than we expected is the pipeline of customers for Hyaline specifically"); ¶ 127 (based on subsequent and additional customer communication, Company realized that it "didn't do as good a job as we should have" in understanding the "demand curve," and as a result "we, in fact, did overestimate the near-term demand for Hyaline"); ¶ 164 (by November, as a result of "commercial" issues uncovered post-IPO, the Company "no longer ha[d] conviction in the market opportunity" for Hyaline).

In addition, most of the opinion statements – including those expressing forecasts of when revenue was expected – were forward-looking and identified as such.  *See* Ex. A at 57 (noting that forward-looking statements included "our ability to generate revenues from our products (including Hyaline) on the timelines we anticipate").  Once again, the Registration Statement's detailed and particularized risk factors[13] were more than sufficient to invoke the bespeaks caution doctrine and mandate dismissal of claims based on the challenged forward-looking statements.  *See, e.g.*, *Violin Memory*, 2014 WL 5525946, at *13; *see also* Secs. IV.A.-B., *supra*.

**D.     Plaintiffs Fail to Plead That the Risk Factors Are Actionable**

Finally, Plaintiffs make a half-hearted attempt to argue that some of the risk factors are misleading because the risks identified had already materialized at the time of the IPO.  ¶¶ 108-111.  That argument is entirely derivative of Plaintiffs' other theories: it assumes they have adequately alleged that the issues disclosed in August and November 2021 had actually "come to fruition" by the time of the IPO in April.  *See Pivotal*, 2020 WL 4193384, at *6.  For the reasons discussed above, the Amended Complaint does not satisfy that threshold requirement, and as a result Plaintiffs cannot base a claim on the risk factors.  *See id.* at *6-7 (rejecting claim where the

---

[13] *See* Ex. A at 12 (risks associated with efforts to commercialize Hyaline and other products, potential delays or challenges that could negatively impact ability to generate revenue, and customer acceptance), 19-20 (risks associated with projections for when Hyaline and other products might begin to generate revenue), 21-23 (risks of developing and commercializing new products, including Hyaline, and customer acceptance).

1    complaint "does not provide anything beyond conclusory assertions that the risks 'had already

2    materialized'"); *Cloudera,* 2021 WL 2115303, at *24 (plaintiffs' failure to plead that company

3    lacked a viable cloud product at time of registration statement meant that they similarly failed to

4    plead that challenged risk factors had already materialized).

5    **V.    PLAINTIFFS DO NOT STATE A CONTROL PERSON CLAIM**

6          Plaintiffs' failure to plead an underlying violation of Section 11 means the control person

7    claim under Section 15 must be dismissed as to all defendants. *See, e.g., Greenberg*, 233 F. Supp.

8    3d at 772 (citing *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012)).

9          In addition, Plaintiffs fail to plead that the True Ventures Funds "controlled" Zymergen by

10    "exercis[ing] control over [the Company's] 'management and policies'" or "direct[ing] its day-to-

11    day affairs." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1163 (9th Cir. 1996).

12    The fact that the True Ventures Funds held a minority ownership stake (about 8.5% before the

13    IPO, which dropped to 7.1% after the IPO was completed) is insufficient to establish the requisite

14    control. *See Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019), *aff'd*, 994

15    F.3d 1102 (9th Cir. 2021). In fact, much larger interests have been held to be inadequate to

16    support a control person claim. *See, e.g., Bao v. Solarcity Corp.*, 2016 WL 54133, at *9 (N.D.

17    Cal. Jan. 5, 2016) (30% equity interest); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL

18    1727405 at, *16 (N.D. Cal. Sept. 29, 2000) (20% equity interest); *Golub*, 372 F. Supp. 3d at 1053

19    (15.3% equity interest). *See also* DCVC Mot. at Sec. III.B; Softbank Defendants' Motion to

20    Dismiss ("Softbank Mot.") at Sec. II.B.1.[14]

21          Nor can Plaintiffs plead control by indiscriminately lumping the True Ventures Funds

22    with other shareholders. ¶¶ 65-69. The Amended Complaint is devoid of allegations to show that

23    the True Ventures Funds (or any of the other investors) were part of a larger group of

24

25    [14] Indeed, the True Ventures Funds did not own enough shares to be deemed "Major Investors"
(or receive the rights afforded such shareholders) under the Investors' Rights Agreement. *See*

26    Investors' Rights Agreement at 17 (§ 3.1(a)). Furthermore, to the extent that Plaintiffs might
argue certain rights granted to particular investors bear upon the control person analysis, that

27    argument is meritless for the reasons discussed in the DCVC moving papers. *See* DCVC Mot. at
Sec. III.C (citing Investors' Rights Agreement, §§ 3.6(a), 3.13). In any event, those provisions do

28    not even apply to True Ventures. *See id.*

1   shareholders acting in concert to jointly exercise control over Zymergen.  *See, e.g.*, *LLDVF, L.P.*

2   *v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010); *Fouad v. Isilon Sys., Inc.*, 2008

3   WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008).  And conclusory allegations regarding a

4   Voting Agreement (¶ 67) as to which *more than 70 other investors* were signatories (*see*

5   Investors' Rights Agreement at S-1, S-3) do nothing to satisfy Plaintiffs' pleading burden.  *See In*

6   *re Am. Apparel, Inc. S'holder Litig.*, 2013 WL 10914316, at *35 n.257 (C.D. Cal. Aug. 8, 2013)

7   ("The mere fact that such a voting agreement exists is insufficient to demonstrate control."); *see*

8   *also* DCVC Mot. at Sec, III.C; Softbank Mot. at Sec. II.B.2.[15]

9          Furthermore, the fact that Dr. Sharma (a partner at True Ventures) serves on Zymergen's

10   Board does not establish control.  *See, e.g.*, *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217,

11   1243 (N.D. Cal. 1994).  In sum, for all of these reasons, and those discussed in the moving papers

12   filed by DCVC and Softbank, the Amended Complaint fails to plead that the True Ventures

13   Funds can be liable as control persons.

14   **VI.    CONCLUSION**

15          Because the Amended Complaint does not contain factual allegations sufficient to state a

16   claim against the Zymergen Defendants or the True Ventures Funds, their motions to dismiss

17   should be granted.

18   Dated:  April 25, 2022                          WILMER CUTLER PICKERING HALE
                                                                    AND DORR LLP
19

20                                                          By:   ___/s/ Susan S. Muck_____
                                                                         Susan S. Muck
21
                                                          *Attorneys for Defendants Zymergen Inc., Josh*
22                                                        *Hoffman, Enakshi Singh, Steven Chu, Jay T.*
                                                          *Flatley, Christine M. Gorjanc, Travis Murdoch,*
                                                          *Matthew A. Ocko, Sandra E. Peterson, Zach*
23                                                        *Serber, Rohit Sharma, True Ventures IV, L.P.,*
                                                          *True Ventures Select I, L.P., True Ventures Select*
24                                                        *II, L.P., True Ventures Select III, L.P. and True*
                                                          *Ventures Select IV, L.P.*
25

26   _____

27   [15] Similarly, Plaintiffs' boilerplate allegations regarding the purported rights of preferred
     shareholders under "the Company's governing documents" (¶ 65), or the composition of the
     Board (¶ 66), do not suffice to plead that the True Ventures Funds – or any of the other investors
28   – are control persons.  *See* DCVC Mot. at Sec. II.C; Softbank Mot. at Sec. II.B.2.