UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARIRAM SHANKAR, <br><br> Plaintiff, <br><br> v. <br><br> ZYMERGEN INC., et al., <br><br> Defendants. | Case No. 21-cv-06028-VC <br><br> **ORDER RE MOTIONS TO DISMISS** <br> Re: Dkt. Nos. 134, 135, 136, 137, 141 |

The motions to dismiss are denied as to the section 11 claim and granted as to the section 15 claim. This ruling assumes the reader is familiar with the facts of the case and the arguments made by the parties.

1. *Judicial Notice*. The Zymergen Defendants and the True Ventures Funds Defendants ask the Court to take judicial notice of Zymergen's initial public offering prospectus and Zymergen's 2021 Form 8-K. Dkt. No. 134-4. The DCVC Defendants ask the Court to take judicial notice of an Investors' Rights Agreement, Zymergen's Certificate of Incorporation, Zymergen's Bylaws, and a copy of Defendant Matt Ocko's tweets from April 22, 2021. Dkt. No. 135-6. Those requests are granted. *See Dreiling v. American Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006).[1]

2. *Section 11 Claim.* To state a claim under section 11 of the Securities Act, a plaintiff must allege "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a

---

[1] The Court does not treat any statements in these documents as true. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1060 (N.D. Cal. 2021).

reasonable investor about the nature of his or her investment. No scienter is required for liability under § 11; defendants [are] liable for innocent or negligent material misstatements or omissions." *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403–04 (9th Cir. 1996) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994)) (citations and quotations omitted).

There are multiple ways to plead falsity, but one is most relevant here: the plaintiffs have stated a claim based on Zymergen's opinion statements under an omissions theory of liability. *See City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*, 856 F.3d 605, 614–15 (9th Cir. 2017). "[A] reasonable investor may, depending on the circumstances, understand an opinion statement to convey facts about how the speaker has formed the opinion—or, otherwise put, about the speaker's basis for holding that view." *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175, 188 (2015). A plaintiff may therefore plead that an opinion statement contains an actionable omission by pointing to "particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading." *Id.* at 194.

The plaintiffs have stated a claim based on Zymergen's statements about the market size for Hyaline and its expectations for when Hyaline would generate revenue. In particular, the registration statement said:

> The market opportunity addressable by our biofacturing platform is enormous and diverse. Our bottom-up, industry-by-industry, application-by-application, analysis suggests that our total market opportunity is at least $1.2 trillion across 20 separate industries for our potential products, all ripe for disruption, and that the market opportunity of the first three industries we will pursue, electronics, consumer care and agriculture, is approximately $150 billion. In particular, we estimate that the display market alone for Hyaline was over $1 billion in 2020… Complaint ¶ 104.

The registration statement echoed this optimistic view of the market by explaining, "We generally target products with a market opportunity that if successful, at scale, could support annual sales of greater than $150 million." *Id.* ¶ 103. Finally, it stated, "In the case of Hyaline,

we expect to begin generating revenue in the second half of 2021…" *Id.* ¶ 102. Based on the totality of the allegations in the complaint, it is plausible that Zymergen "lacked the basis…that a reasonable investor would expect" when it offered these opinions. *Omnicare*, 575 U.S. at 196.

First, the estimates of Hyaline's market size: Jay Flatley, Zymergen's acting CEO, admitted that Zymergen "overestimate[d] the near-term demand for Hyaline" because it did not have sufficient insight into the market. Complaint ¶ 127. As he put it, Zymergen "didn't do as good a job as we should have in understanding…the ultimate end-use of the product," and "did not have significant insight into the customer qualification process and into [its] customers and users, which resulted in forecasted overestimated near-term demand." Complaint ¶¶ 115, 127. This allegedly inflated forecast meant that Zymergen's estimated timeline regarding its revenue was misleading as well. After all, Zymergen acknowledged that it discontinued Hyaline in part because "the ultimate market was not…large enough to justify continuation of the program." *Id.* ¶ 183.

Zymergen's revenue timeline was plausibly misleading for another reason: as Flatley explained, Zymergen did not have an "intimate relationship with the customer," and it needed "to do a much better job of understanding and anticipating the end-use of the product in the customer hands." *Id.* ¶ 133. It is plausible that, without this relationship, Zymergen could not have reasonably estimated that it would generate revenue in the second half of 2021 because it would not have known if there were any problems with the product.

Additional facts in the complaint support the plaintiffs' theory. First, there was a very short time period between the registration statement and the adverse disclosures, suggesting that these facts were knowable at the time the registration statement was issued. Second, Zymergen's former CEO, Josh Hoffman, stepped down as CEO and as a member of the Board, presumably because of these failures. *Id.* ¶ 114. Indeed, a contemporary news article states that a former Zymergen employee confronted Hoffman about the "exaggerated financial figures" and "overly optimistic projections about the company's capabilities," and Hoffman responded, "never underestimate the power of the greater fool." *Id.* ¶ 32. Third, Zymergen itself acknowledged its

"credibility" problem following these disclosures. *Id.* ¶ 115. Finally, Zymergen subsequently conducted "deep dives into the company's product pipeline and development processes," suggesting that it understood its previous processes were inadequate. *Id*. Taken together, these allegations suggest that Zymergen did not have a reasonable basis for its statements—either because it lacked sufficient knowledge or because it failed to conduct a reasonable inquiry—and so the statements were misleading.

      3. *Bespeaks Caution Doctrine*. Zymergen argues that these statements are protected by the bespeaks caution doctrine because the registration statement discussed the risks inherent in these estimates. But dismissing a pleading under the bespeaks caution doctrine "requires a stringent showing: There must be sufficient 'cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading.'" *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (quoting *In re Stac*, 89 F.3d at 1409). Zymergen has not met that standard here: the risk factors identified are too general to foreclose a finding that the challenged statements are misleading.

      4. *Section 15 Claim*. The section 15 claim is dismissed. Zymergen has not offered sufficient allegations to suggest that the "Controlling Stockholders" acted in concert. *See Fouad v. Isilon Systems, Inc.*, No. C07-1764 MJP, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008).

      Dismissal is with leave to amend. Any amended complaint is due within 28 days of this order. But if the plaintiffs wish to proceed on this complaint, they can always seek leave to amend at a later stage if discovery reveals additional information relevant to the dismissed claims.

      **IT IS SO ORDERED.**

Dated: November 29, 2022

                                                        VINCE CHHABRIA
                                                        United States District Judge