UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIAO WANG,<br><br>        Lead Plaintiff,<br><br>    v.<br><br>ZYMERGEN INC., et al.,<br><br>        Defendants. | Case No. 21-cv-06028-PCP<br><br>**ORDER DENYING MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**<br><br>Re: Dkt. No. 399 |

Lead plaintiff Biao Wang represents a putative class of people alleging securities fraud arising from defendant Zymergen, Inc.'s initial public offering in 2021. Two classes of defendants—certain management companies and their funds—moved to dismiss Mr. Wang's second amended complaint as barred by the relevant statute of limitations. The Court denied those motions. The management companies and funds now ask the Court to certify the order denying their motion to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b). For the following reasons, the Court denies the defendants' motions.

## BACKGROUND

The Court accepts the following allegations from the complaint in resolving these motions.

This case arises from materials manufacturing startup Zymergen's IPO in April 2021. Zymergen went public at $31 per share, touting its "biofacturing" process that would allow Zymergen to make products "faster, cheaper and more sustainably than traditional chemistry." It sold around 18.5 million shares of common stock at $31 per share in the first public offering, yielding proceeds of nearly $530 million. Its registration statement discussed various products in Zymergen's development pipeline, estimating a total market opportunity of $1.2 trillion across twenty industries. The statement suggested that the company expected to begin generating revenue

in late 2021. Mr. Wang alleges that these and other statements were either untrue statements of material fact or that they omitted material facts about Zymergen's business projections.

Less than four months after its IPO, Zymergen revealed "issues with its commercial product pipeline" that would impact its "delivery timeline and revenue projections." The company said it no longer expected revenue in 2021 and expected immaterial revenue in 2022. It also announced that the CEO was stepping down. Zymergen's stock price fell from $26.58 per share to $8.25 per share the following day.

Over the next few months Zymergen announced layoffs of 220 employees. Cofounder Jed Dean stepped down. News reports compared Zymergen to Theranos and addressed how the company "imploded." In November 2021, the company announced that it was discontinuing Hyaline and that it was under investigation by the SEC.

In October 2022, more than a year after the IPO, Zymergen completed an all-stock merger to become a subsidiary of Ginkgo Bioworks Holdings, Inc. Zymergen shareholders received Ginkgo shares at a rate that valued Zymergen at less than one tenth of its IPO valuation.

A year later, in October 2023, Zymergen filed a Chapter 11 bankruptcy petition.

*   *   *

Zymergen had three early investors: DCVC, True Ventures, and SoftBank. DCVC was Zymergen's initial seed investor.[1] It invested around $44 million before Zymergen's IPO and received the right to appoint one of Zymergen's board members as a condition of investment. True Ventures was another seed investor.[2] It invested around $75 million before the IPO and also received the right to appoint a board member. SoftBank was Zymergen's largest pre-IPO investor.[3] It invested around $404 million and received the right to appoint a board member and to have that board member serve on every board committee.

---

[1] Except where noted, this order refers collectively to the management companies and the individual funds they managed as "investor defendants." Defendant DCVC Management Co, LLC manages the defendant funds Data Collective II, L.P. and DCVC Opportunity Fund, L.P.

[2] Defendant True Venture Management, L.L.C. manages the defendant funds True Ventures IV, L.P.; True Ventures Select I, L.P.; True Ventures Select II, L.P.; True Ventures Select III, L.P.; and True Venture Select IV, L.P.

[3] Defendant SB Investment Advisers (US) Inc. manages the defendant SVF Excalibur (Cayman) Limited, SVF Endurance (Cayman) Limited, and SoftBank Vision Fund (AIV M1) L.P.

At the time of Zymergen's public offering, these three investors were Zymergen's three largest shareholders, and the only investors entitled to appoint board members. SoftBank owned around a third of Zymergen's shares, while DCVC and True Ventures each owned just under 10%. Together, the three investors owned more than half of Zymergen's outstanding shares before the public offering, including nearly 60% of its preferred shares.

Zymergen's governance documents required that the company obtain approval from at least two of these three investors for most business matters, including adopting any budget or business plan, hiring executives, granting stock or options, entering or exiting a line of business, or incurring debt. Zymergen could not amend its governing documents or issue common stock without all three investors' consent. The three investors also entered an agreement to vote their shares together on certain issues, including each firm's board nominee. The investors required that Zymergen indemnify not only their board appointees but also the firms and associated individuals from certain securities claims arising from their appointees' board service.

The complaint asserts that serving on Zymergen's board, controlling Zymergen, and signing its registration statement fell within the scope of the respective agency relationships between the VC firms and their board appointees. Each of the appointed board members served on the boards of multiple companies in which his respective VC firm had invested.

During the lead up to Zymergen's public offering, the three VC firm board appointees were the three sole members of the Zymergen board's audit committee, which controlled Zymergen's financial statements and its internal audit function.

\*   \*   \*

Mr. Wang filed his initial complaint on August 4, 2021. The complaint named as defendants Zymergen, Josh Hoffman (Zymergen's CEO), Enakshi Singh (Zymergen's CFO), the other members of Zymergen's board, and the underwriters of the IPO. On February 24, 2022, Mr. Wang filed his first amended complaint. Dkt. No. 78. This complaint added the individual SoftBank, True Ventures, and DCVC funds (but not the management companies) as defendants. It included a claim under Section 11 of the Securities Act against Zymergen, the individual board members and executives, and the underwriters, as well as a Section 15 claim against the individual

3

defendants and the three investors.

Three motions to dismiss followed: one by Zymergen, the individual defendants, and the True Ventures funds (also joined by the underwriters); one by the DCVC funds; and one by the SoftBank funds. On November 29, 2022, the Court denied the motions to dismiss as to the Section 11 claim and granted them as to the Section 15 claim. Dkt. No. 162, 2022 WL 17259057 (Chhabria, J.). The order stated that the dismissal of the Section 15 claim was "with leave to amend" and that an "amended complaint is due within 28 days of this order." But the order also noted that "if the plaintiffs wish to proceed on this complaint, they can always seek leave to amend at a later stage if discovery reveals additional information relevant to the dismissed claims."

Mr. Wang did not file an amended complaint within 28 days. After this case was assigned to a new district judge on December 21, 2023, Mr. Wang moved for leave to file a second amended complaint reasserting the Section 15 claims against the individual defendants and the SoftBank, DCVC, and True Ventures funds. He also sought to add the three separate management companies as defendants to the Section 15 claim. The Court granted Mr. Wang's motion.

The SoftBank, DCVC, and True Ventures defendants thereafter moved to dismiss the second amended complaint. As relevant here, the defendants asserted a statute of limitations defense, arguing that Mr. Wang's claims against them were time barred. The Court rejected the statute of limitations defense as to both the funds and the management companies.

First, the Court held that the claims against the fund defendants related back to the filing of the first amended complaint. Although the Court had previously dismissed the claims against the fund defendants, that dismissal was without prejudice and the Court never entered final judgment as to the funds. The Court concluded that the fund defendants therefore remained parties and that Rule 15(c)(1)(B) governed whether the reasserted claims against the fund defendants related back to the date of the first amended complaint. The Court concluded that the Section 11 and Section 15 claims in Mr. Wang's second amended complaint arose out of the same transaction as the claims in the first complaint and that the claims therefore related back to the filing of the first amended complaint within the statute of limitations.

Second, the Court held that the claims against the management companies might relate

back to the filing of the first amended complaint. The Court concluded that because the first amended complaint did not name the management companies, Rule 15(c)(1)(C) governed the relation back of claims as to those parties. The Court then held that because "the pleadings suggest that the management companies should have known that the action would have been brought against them but for a mistake concerning the role the management companies played" in the events surrounding Zymergen's IPO, Mr. Wang had made "plausible allegations to suggest that the claims against the management companies will relate back" under Rule 15(c)(1)(C).

Ultimately, the Court granted with leave to amend DCVC's motion to dismiss the Section 15 claim based on DCVC's alleged control of Mr. Ocko as well as the Section 11 claims against DCVC, which were premised on the theory that DCVC had respondeat superior liability for Mr. Ocko's actions. The Court otherwise denied DCVC, Soft Bank, and True Ventures's motions to dismiss. The Court set September 12, 2024 as the deadline for Mr. Wang to file an amended complaint, which he did not do.

Defendants now ask the Court to certify that order for interlocutory review under 28 U.S.C. § 1292(b). They seek review of the following questions:

1) When an amended complaint adds a claim against a previously dismissed defendant after the limitations period has run, must the timeliness of the claim be assessed under Rule 15(c)(1)(C), which governs claims against a party "brought in by amendment," or may it be assessed under Rule 15(c)(1)(B) on the theory that the defendant remained a party despite the dismissal?

2) When an amended complaint adds a claim against a new defendant—as opposed to substituting for, or correcting the name of, an existing defendant—after the limitations period has run, can that claim relate back under Rule 15(c)(1)(C) to an earlier complaint on the theory that the earlier complaint's failure to name that new defendant was a "mistake"?

**LEGAL STANDARDS**

The final judgment rule generally mandates that "parties may appeal only from orders which end the litigation on the merits and leave nothing for the court to do but execute the

judgment." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (cleaned up); *see also In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (describing the federal courts' "basic policy of postponing appellate review until after the entry of a final judgment"). Under exceptional circumstances, however, an interlocutory appeal may be permitted to allow for the immediate review of a non-dispositive order. Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if three conditions are met: The order (1) involves a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal may materially advance the ultimate termination of the litigation.

The first prong includes two requirements: The question must be one of law, not fact, and resolution of the issue on appeal must have the potential to materially affect the outcome of the litigation in the district court. *In re Cement*, 673 F.2d at 1026. As to the first requirement, the question generally must present a pure legal question rather than a mixed question of law and fact. *Williams v. Alameda Cnty.*, 657 F. Supp. 3d 1250, 1254 (N.D. Cal. 2023); *Ill. Union Ins. Co. v. Intuitive Surgical, Inc.*, No. 13-cv-04863-JST, 2016 WL 5905935, at *2–3 (N.D. Cal. Oct. 11, 2016). The application of a "legal standard to the facts of the case[] is not by itself appropriate for certification." *Williams*, 657 F. Supp. 3d at 1254. Interlocutory appeal is generally appropriate only for questions that "the court of appeals [can] decide quickly and cleanly without having to study the record." *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 879 (C.D. Cal. 2012) (quoting *Ahrenholz v. Bd. of Trustees of Univ. of Illinois,* 219 F.3d 674, 676–77 (7th Cir. 2000)). As to the second requirement, "[a] question may be controlling even though its resolution does not determine who will prevail on the merits. But it is not controlling simply because its immediate resolution may promote judicial economy." *Id.*

The second prong, substantial ground for difference of opinion, concerns the extent to which "controlling law is unclear." *Couch*, 611 F.3d at 633. "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Id*. (quoting 3 Fed. Proc., Laws. Ed. § 3:212 (2010)); *see also* 2 Fed. Proc., Laws. Ed.

§ 3:217. While a novel legal issue "on which fair-minded jurists might reach contradictory conclusions" may be certified for interlocutory appeal, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011), "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal," *Couch*, 611 F.3d at 633 (cleaned up). A split on an issue among district courts is rarely substantial enough on its own to justify interlocutory appeal.

Finally, the "materially advance" prong is satisfied when the resolution of the question "may appreciably shorten the time, effort, or expense of conducting" the district court proceedings. *In re Cement*, 673 F.2d at 1027; *see also Dukes v. Wal-Mart Stores*, No. C 01-02252 CRB, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012) (cleaned up) (holding that the materially advance prong is met "if [the] present appeal promises to advance the time for trial or to shorten the time required for trial"). To materially advance the litigation, an appeal need not have final, dispositive effect. *Williams*, 657 F. Supp. 3d at 1255. "The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Allen v. ConAgra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2019 WL 1466889, at *3 (N.D. Cal. Feb. 6, 2019) (cleaned up); *see also Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 958 (N.D. Cal. 2019).

Ultimately, certification is appropriate "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement*, 673 F.2d at 1026. This exception to the final judgment rule "must be construed narrowly," *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002), and "applied sparingly," *In re Cement*, 673 F.2d at 1027; *see also Stiner*, 383 F. Supp. 3d at 957 ("[T]he district court should … certify for interlocutory appeal only when 'exceptional circumstances' justify a departure from the well-established policy of postponing appellate review until after a final judgment.").

# ANALYSIS

## I. Defendants' Rule 15(c)(1)(B) question does not meet the requirements for certification for interlocutory appeal.

The first question that defendants seek to certify for interlocutory review concerns whether the timeliness of a claim asserted against a previously dismissed defendant is governed by Rule 15(c)(1)(C) as a party "brought in by amendment" or by Rule 15(c)(1)(B) as a party that remained a defendant despite the dismissal. For the following reasons, this question does not meet the requirements for certification under 28 U.S.C. § 1292(b).

### A. Controlling question of law

Defendants are correct that whether the timeliness of a claim asserted against a previously dismissed defendant should be assessed under Rule 15(c)(1)(C) or Rule 15(c)(1)(B) is a pure question of law. The Court's application of Rule 15(c)(1)(B) to the fund defendants relied on its conclusion that Rule 15(c)(1)(B) governs where a court has never entered final judgment under Rule 54(b). The Court concluded that absent entry of final judgment, the dismissed defendants remain parties to the litigation and the relation back of new claims against those defendants is governed by Rule 15(c)(1)(B)'s "conduct, transaction, or occurrence" test. By contrast, if dismissal of claims against a defendant extinguishes their party status even absent final judgment, Rule 15(c)(1)(C)'s "mistake" test would apply. Whether a defendant remains a party to a case despite dismissal of claims against them is thus a pure legal question that does not require the application of a "legal standard to the facts of the case[.]" *Williams*, 657 F. supp. 3d at 1254.

It is not clear, however, that an interlocutory appeal on this question would materially affect the outcome of the litigation. Even if defendants were to succeed on appeal, litigation would proceed as to the Section 11 and Section 15 claims against Zymergen and numerous other defendants, including the three board members appointed by the management companies and the management companies themselves. Given that so many parties, issues, and claims will remain in this case whether or not the funds remain parties, an appellate decision with respect to the first question will have a relatively minimal impact on the overall case.

### B. Substantial ground for difference of opinion

More fundamentally, defendants have not identified a substantial ground for difference of opinion on the first question. A substantial ground for difference of opinion generally exists only where "the *circuits* are in dispute on the question and the court of appeals of the circuit has not spoken on the point[.]" *Couch*, 611 F.3d at 63 (emphasis added) (internal citation omitted). In this case, every circuit court to consider this question has adopted the position taken by this Court in its order. *See Crostley v. Lamar Cnty.*, 717 F.3d 410, 421 (5th Cir. 2013) ("Because the … dismissal of the claims against Lamar County was not a final judgment, and because the order 'adjudicate[d] fewer than all the claims or the rights and liabilities of fewer than all the parties,' the dismissal did 'not end the action as to [Lamar County] and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.' Fed. R. Civ. P. 54(b)."); *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1159 (10th Cir. 2023) ("'[E]ntitlement' to repose … depends on whether the dismissal was a final judgment. An order, even a dismissal, other than a final judgment 'does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.' Fed. R. Civ. P. 54(b)"); *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 347–48 (3d Cir. 2021) ("For those claims to be barred [by the statute of limitations], then, they had to end. But under Rule 54(b), 'any order' that decides 'fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties.'"). Given this unbroken line of circuit authority, the Court's order did not create any watershed new legal principle that practitioners must consider when advising their clients going forward.

As noted already, a split on an issue among district courts (which defendants contend exists here) is rarely substantial enough on its own to justify interlocutory appeal. But even if such a split were sufficient, the two cases upon which defendants rely do not demonstrate a clear difference of opinion. In *Nghiem v. Santa Clara Univ.*, No. 21-cv-06872-BLF 2023 WL 3012494, at *4 (N.D. Cal. Mar. 20, 2023), the court declined to allow relation back under Rule 15(c)(1)(B) even though the plaintiff had been named in the original complaint and the first amended complaint because the defendant "would be a new [party]." Similarly, in *Nite & Day Power Techs. V. Corporate Capital*

9

*Resources, Inc.*, No. cv-89-20298-RMW 1995 WL 7942, at *4 (N.D. Cal. Jan 5, 1995), the court declined to allow relation back under Rule 15 where the plaintiff sought to reassert claims against a previously dismissed defendant. But neither of these two cases considered the question at issue here, which is whether Rule 15(c)(1)(C) or Rule 15(c)(1)(B) applies. Both cases began from the premise that Rule 15(c)(1)(C) governs a situation in which a party previously dismissed from the case is added back by amendment. Neither case analyzed the interplay between Rule 15(c)(1)(B) and Rule 54(b), as the circuit courts to consider this question have done. In the absence of evidence regarding how fully or capably the issue was briefed before those courts, neither case presents a clear difference of opinion from this Court's.[4]

Because existing circuit precedent agrees with this Court's decision and defendants have identified only two somewhat contrary district court decisions, defendants have not identified a substantial ground for difference in opinion that could justify an interlocutory appeal.

### C. Material advancement of the termination of the litigation

Finally, certifying the first question will not materially advance termination of the litigation because the bulk of the case will move forward regardless of the outcome on appeal. If the fund defendants are successful on appeal, the underlying Section 11 and Section 15 claims in the case will remain, and those claims involve facts and legal questions that overlap with the claims asserted against the fund defendants. Further, the management companies will remain parties, and the claims against individuals closely associated with the funds will move forward as well. Certification of this question will therefore do little to "minimize the total burdens of litigation" on the judicial system. *Allen,* 2019 WL 1466889, at *3 (cleaned up). "When litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166-IEG 2010 WL 743750, at *4 (S.D. Cal. Feb. 25, 2010) (quoting *White v. Nix*, 43 F.3d 374, 378–79 (8th Cir. 1994)).

---

[4] Mr. Wang argues that both *Nghiem* and *Nite & Day* cases are distinguishable in that in both cases the court had previously dismissed claims against the defendants with prejudice, whereas the claims against the fund defendants here were dismissed without prejudice. To the extent this distinction is relevant, both cases are also distinguishable on that basis.

10

1    Accordingly, the funds have not shown that certification of the second question would

2    appreciably shorten the time, effort, and expense of this litigation. Judicial economy will instead

3    be better served by litigating the claims against the funds along with the claims against the other

4    defendants and permitting the funds to appeal this Court's ruling on the first question on appeal

5    after a final judgment against the funds (should one ever be entered).

**II.     Defendants failed to argue in their motions to dismiss that Rule 15(c)(1)(C) does not allow claims against a new defendant to relate back under a "mistake theory." Certification is therefore improper.**

The second question that defendants seek to certify for interlocutory review concerns whether Rule 15(c)(1)(C)'s "mistake" test can be used where an amended complaint adds a claim against a new defendant as opposed to substituting a new defendant for an existing defendant. This question is improper for certification because defendants never argued in their motions to dismiss that Rule 15(c)(1)(C)'s "mistake" test *does not* apply to newly added defendants.

In their respective motions to dismiss Mr. Wang's second amended complaint, the management companies all accepted the premise that Rule 15(c)(1)(C) applied to newly added defendants. They simply argued that Mr. Wang had failed to satisfy Rule 15(c)(1)(C)'s requirements for relation back. DCVC stated that "[w]hen an amended complaint '*adds a new defendant*' (like DCVC Management) … 'the plaintiffs must satisfy Rule 15(c)(1)(C). Dkt. No. 371, at 14 (emphasis added). Similarly, True Ventures stated, "Federal Rule of Civil Procedures 15(c)(1)(C) sets forth the requirements for relation back of amendments that *add a party*." Dkt. No. 370, at 12 (citation omitted) (emphasis added). SoftBank cited Ninth Circuit precedent to argue that for a "proposed amendment *adding a new defendant* to relate back to a prior complaint, a plaintiff must show that the proposed defendant 'should have known that, but for a mistake concerning identity, the action would have been brought against it.'" Dkt. No. 372, at 14 (emphasis added) (citing *Louisiana-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993)). This Court then applied Rule 15(c)(1)(C) to assess whether Mr. Wangs claims against the management companies could relate back to the first amended complaint.

The management companies' disagreement with this Court's application of the rule they had suggested is not the sort of "exceptional situation[]" for which interlocutory appeal is

11

1    warranted. *In re Cement*, 673 F.2d at 1026.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion to certify its order for interlocutory appeal.

**IT IS SO ORDERED.**

Dated: December 16, 2024

_____
P. Casey Pitts
United States District Judge