KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
GIAN P. GUALCO-NELSON (SBN 337284)
gian.gualco-nelson@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001

PETER J. KOLOVOS (appearance pro hac vice)
peter.kolovos@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526 6000
Facsimile: (617) 526-5000

[Additional counsel omitted]

*Attorneys for Defendants Zymergen Inc., Steven Chu,
Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch,
Matthew A. Ocko, Sandra E. Peterson,
Zach Serber, and Rohit Sharma*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| BIAO WANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ZYMERGEN INC., et al.,<br><br>Defendants. | Case No. 5:21-cv-06028-PCP<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ZYMERGEN DEFENDANTS' DISCOVERY SUBMISSION**<br><br>Date: January 21, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 6<br>Judge: The Honorable Susan Van Keulen |

**TABLE OF CONTENTS**

Page

I.  The Assertion of a Due Diligence Defense Does Not Waive Privilege. ............................... 1

II. Disclosure of Privileged Communications to Agents of Certain Zymergen Directors Does Not Waive Privilege........................................................................................................ 3

III. Disclosure To Auditors Did Not Waive Privilege. ............................................................... 5

IV. Documents Regarding Zymergen's Internal Investigation Are Privileged. ......................... 6

V.  Inclusion of Gilmartin Group on Communications Does Not Waive Privilege. .................. 7

VI. Disclosure To Joele Frank Does Not Constitute Waiver. ..................................................... 9

# TABLE OF AUTHORITIES

Page(s)

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*
    255 F. Supp. 3d 561 (M.D. Pa. 2017) ...................................................................................4

*Garvey v. Hulu, LLC*,
    2015 WL 294850 (N.D. Cal. Jan. 21, 2015)............................................................................4

*Gen-Probe Inc. v. Becton, Dickinson & Co.*,
    2012 WL 1155709 (S.D. Cal. Apr. 6, 2012)...........................................................................8

*Harbor House Owners Corp. v. Admiral Indemnity Co.*,
    2020 WL 2319943 (S.D.N.Y. May 11, 2020) .......................................................................4

*In re Bieter Co.*,
    16 F.3d 929 (8th Cir. 1994)..............................................................................................8, 9

*In re Charles Schwab Corporation Securities Litigation*,
    No. 08-01510 (N.D. Cal. Feb. 23, 2010) ...........................................................................2, 3

*In re Cnty. of Erie*,
    546 F.3d 222 (2d Cir. 2008)..................................................................................................1

*In re Geothermal Res. Int'l, Inc.*,
    93 F.3d 648 (9th Cir. 1996).  .................................................................................................2

*In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*,
    357 F.3d 900 (9th Cir. 2004) ................................................................................................6

*In re Lidoderm Antitrust Litig.*,
    2016 WL 4191612 (N.D. Cal. Aug. 9, 2016) .......................................................................2

*Kirkpatrick v. City of Oakland, Cal.*,
    2022 WL 137628 (N.D. Cal. Jan. 14, 2022).......................................................................10

*Klein v. Meta Platforms, Inc.*,
    2022 WL 767096 (N.D. Cal. Mar. 11, 2022)......................................................................10

*Laven v. Flanagan*,
    695 F. Supp. 800 (D.N.J. 1988) ...........................................................................................1

*LG Elecs. v. Whirlpool Corp.*,
    2009 WL 3294800 (N.D. Ill. Aug. 24, 2009). ......................................................................4

*Moradpour v. Velodyne Lidar, Inc.*,
    2023 WL 5667885 (N.D. Cal. Aug. 15, 2023). ..................................................................10

*Munguia-Brown v. Equity Residential*,
    2020 WL 3057502 (N.D. Cal. June 9, 2020).  ......................................................................7

*Oxyn Telecomm. v. Onse Telecom*,
    2003 WL 660848 (S.D.N.Y. Feb. 27, 2003)...........................................................................4

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*,
    2018 WL 6079617 (N.D. Cal. Nov. 21, 2018). .....................................................................1

*Resolute Forest Prods. v. Greenpeace Int'l*,
    2022 WL 885368 (N.D. Cal. Mar. 25, 2022).........................................................................8

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
    32 F.3d 851 (3d Cir. 1994)....................................................................................................1

*Roblox Corp. v. WowWee Grp. Ltd.*,
    2024 WL 815516 (N.D. Cal. Feb. 27, 2024). .......................................................................8

*Schmidt v. Levi Strauss & Co.*,
    2007 WL 628660 (N.D. Cal. Feb. 28, 2007). .......................................................................7

*Schuman v. Microchip Tech. Inc.*,
    2019 WL 8333737 (N.D. Cal. Jan. 8, 2019). ........................................................................2

*SEC v. Berry*,
    2011 WL 825742 (N.D. Cal. Mar. 7, 2011)..........................................................................5

*SEC v. Shroeder*,
    2009 WL 1125579 (N.D. Cal. Apr. 27, 2009). .....................................................................8

*Stardock Sys., Inc. v. Reiche*,
    2018 WL 6259536 (N.D. Cal. Nov. 30, 2018) ...............................................................6, 10

*Stone Brewing Co., LLC v. Molson Coors Brewing Co.*,
    2019 WL 2176792 (S.D. Cal. May 20, 2019)............................................................ 6-7, 10

*Sugar Hill Music v. CBS Interactive Inc.*,
    2014 WL 12586744 (C.D. Cal. Sept. 5, 2014). .....................................................................4

*U.S. ex rel. Strom v. Scios, Inc.*,
    2011 WL 4831193 (N.D. Cal. Oct. 12, 2011).......................................................................8

*United Food and Com. Workers Union v. Chesapeake Energy Corp.*,
    2012 WL 2370637 (W.D. Okla. June 22, 2012)...............................................................1, 2

*United States v. Anthony*,
    2023 WL 2716581 (N.D. Cal. Mar. 29, 2023)......................................................................1

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010). .............................................................................................5

*United States v. Graf*,
    610 F.3d 1148 (9th Cir. 2010) ..........................................................................................8, 9

SUPP. MEM. ISO ZYMERGEN DEFS.'    - iii -    Case No.: 5:21-cv-06028-PCP
DISCOVERY SUBMISSION

*United States v. Landof*,
　　591 F.2d 36 (9th Cir. 1978). ...............................................................................................3

*United States v. Sanmina Corp.*,
　　968 F.3d 1107 (9th Cir. 2020). ........................................................................................4, 5

Pursuant to the Court's Order dated December 17, 2024 [ECF No. 458], the Zymergen Defendants respectfully submit this supplemental brief to further support their privilege assertions. For the reasons set forth below, Plaintiffs' challenges to the assertions of privilege and work product are without merit.[1]

### I. The Assertion of a Due Diligence Defense Does Not Waive Privilege.

Plaintiffs maintain that by asserting due diligence and good faith defenses, the Director Defendants implicitly waived privilege over any documents reflecting the legal advice of Freshfields LLP, the law firm that advised the Company during its initial public offering. *See* Jt. Disc. Statement [ECF No. 452] 2-3. At the outset, Plaintiffs' argument relies on the fallacious premise that establishing the due diligence defense *necessarily* requires relying on the advice of counsel. The "due diligence defense does not require that [the directors] rely on communications with counsel to demonstrate that they acted with due diligence in connection with the" Registration Statement. *United Food and Com. Workers Union v. Chesapeake Energy Corp.*, 2012 WL 2370637, at *9 (W.D. Okla. June 22, 2012). "Instead they must show that their actions, not those of counsel, demonstrate the reasonableness of their investigation." *Id.* (citation omitted). Indeed, defendants have frequently established the due diligence defense without relying on the advice of counsel. *See, e.g.*, *Laven v. Flanagan*, 695 F. Supp. 800 (D.N.J. 1988).

In any event, "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue." *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). Rather, a party must "assert[] a claim or defense, and attempt[] to prove that claim or defense by disclosing or describing an attorney client communication." *Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, 2018 WL 6079617, at *2 (N.D. Cal. Nov. 21, 2018) (quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)); *see also United States v. Anthony*, 2023 WL 2716581, at *3 (N.D. Cal. Mar. 29, 2023) (distinguishing cases where "the privilege holder invoked a privileged communication or privileged legal advice as part of a claim or defense,

---

[1] "Zymergen Defendants" refers to Zymergen, Inc. ("Zymergen" or "the Company") and eight of its former directors: Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma ("Director Defendants").

thereby putting the communication or advice at issue"). As the Director Defendants made clear in their prior submission and during the December 17 hearing, at this time they are not relying on Freshfields' legal advice in support of these defenses, as opposed to the fact that Freshfields was involved in the due diligence process.

Plaintiffs nevertheless insist that the Director Defendants' belief "that the statements in the Registration Statement were true and not misleading" necessitates a broad waiver of privilege with respect to communications on which the Director Defendants are not relying for their due diligence defense. Jt. Disc. Statement 2. But even if the communications with Freshfields were relevant to the due diligence defense (they are not), "a simple showing of relevance to a case will not suffice." *In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *4 (N.D. Cal. Aug. 9, 2016) (citing *In re Geothermal Res. Int'l, Inc.*, 93 F.3d 648, 653 (9th Cir. 1996)). Rather, Plaintiffs must establish that the privileged information is "*directly* relevant and *necessary* to allow a party to fully challenge the . . . defenses of the party asserting the privilege, and the information cannot be secured through other sources." *Id.* (emphasis included). Such privileged information is only directly relevant and necessary if parties "intend to rely on advice of counsel in support[] [of] their" defenses. *Schuman v. Microchip Tech. Inc.*, 2019 WL 8333737, at *4 (N.D. Cal. Jan. 8, 2019). This principle is entirely consistent with Section 11's due diligence defense. *See Chesapeake Energy Corp.,* 2012 WL 2370637, at *7, *9 (assertion of due diligence defense did not waive privilege where, as here, there was "no indication that [defendants] intend to introduce evidence reflecting otherwise privileged attorney-client communications to support their contention that they acted with due diligence").[2]

Plaintiffs' own authority undermines their argument. In *In re Charles Schwab Corporation Securities Litigation*, No. 08-01510 (N.D. Cal. Feb. 23, 2010), defendants explicitly asserted reliance on legal advice in asserting their Section 11 due diligence defense. In particular, in

---

[2] Because Plaintiffs cannot cite evidence that the Director Defendants plan to rely on privileged Freshfields materials, they instead point to interrogatory responses from Defendants Josh Hoffman and Ena Singh. *See* Jt. Disc. Statement 3. But nothing in Defendants Hoffman and Singh's responses suggest that they currently plan to rely on *privileged* materials from Freshfields in formulating their due diligence defense.

response to contention interrogatories, defendants stated that they "knew in-house and outside counsel drafted Registration Statements, . . . and that *these persons had accurately* and appropriately prepared the registration statements." *See In re Charles Schwab Corp. Sec. Litig.*, No. 08-01510, Pl.'s Mem., Ex. D [ECF No. 353-4] at 4 (N.D. Cal. Jan. 25, 2010) (responses to contention interrogatories) (emphasis added). The defendants in the *Charles Schwab* case also made a submission to the SEC that included privileged conversations pertaining to the due diligence process, further demonstrating their reliance on legal advice – and not, as here, only on counsel's involvement in the due diligence process – to support a due diligence defense. *See id.*, Pl.'s Mem. [ECF No. 352] at 6-7.[3]

## II. Disclosure of Privileged Communications to Agents of Certain Zymergen Directors Does Not Waive Privilege.

Plaintiffs do not dispute that Zymergen's outside directors, including Travis Murdoch (at the time affiliated with Softbank), Matthew Ocko (DCVC) and Rohit Sharma (True Ventures), fell within the scope of Zymergen's attorney-client and work product protections. However, Plaintiffs argue that because these directors and/or Zymergen shared privileged communications with other individuals affiliated with Softbank, DCVC, and True Ventures (collectively, the "Venture Capital Funds"), this waived privilege. But attorney-client privilege extends not just to the client receiving legal advice, but also to agents of the client. *See United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978) (attorney-client privilege may extend to communications with agents). Sharing communications with those who are supporting these individuals in their roles as Zymergen directors, in a context where there is a reasonable expectation that the confidentiality of these

---

[3] In a subsequent decision in the *Charles Schwab* case, Judge Alsup addressed a related issue that is also present here. There, one individual defendant stated an intent to raise a "reasonable care" defense, but because that defendant was a former employee, he had no authority to waive Charles Schwab's attorney-client privilege even if he intended to rely on legal advice for his defense. *In re Charles Schwab Corp. Sec. Litig.*, No. 08-01510 [ECF No. 612] at 1-2 (N.D. Cal. Apr. 14, 2010). Similarly, because the individual defendants here are former directors and officers of Zymergen, no individual defendant has the authority to waive Zymergen's privilege; because the due diligence defense is not available to issuers, the corporate defendant (Zymergen) has not asserted that defense. Acknowledging this "predicament," Judge Alsup resolved this issue with a proposed jury instruction intended to alleviate any potential unfairness to plaintiffs or the former employee defendant. *Id.* at 2-3.

communications would be maintained by those with whom they were shared, does not waive the privilege. *See Sugar Hill Music v. CBS Interactive Inc.*, 2014 WL 12586744, at *8 (C.D. Cal. Sept. 5, 2014) (disclosure to agent of attorney or client does not waive privilege); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020) (attorney-client privilege may extend to "communications with third parties acting as an agent of the client"); *Oxyn Telecomm. v. Onse Telecom*, 2003 WL 660848, at *3-4 (S.D.N.Y. Feb. 27, 2003) (similar).

Here, certain privileged communications were shared with additional individuals affiliated with the Venture Capital Funds in order facilitate the Director Defendants' review of certain documents and support their work as Zymergen directors. As the relevant log entries reflect, most of the communications at issue were distributed to a limited number of individuals outside of Zymergen, and in many cases only to in-house and/or outside counsel for one or more of the Venture Capital Funds, which also rebuts plaintiffs' waiver argument. *See Garvey v. Hulu, LLC*, 2015 WL 294850, at *3 (N.D. Cal. Jan. 21, 2015) (limited nature of distribution of privileged communications within company supported the privilege claim); *LG Elecs. v. Whirlpool Corp.*, 2009 WL 3294800, at *4-5 (N.D. Ill. Aug. 24, 2009) (finding no waiver in common interest context where "in house legal of both companies . . . work[ed] together"). The inclusion of these individuals on the communications to facilitate the Director Defendants' work does not break privilege. *See Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.* 255 F. Supp. 3d 561, 572 (M.D. Pa. 2017) ("[T]here is substantial authority for the proposition that the attorney-client privilege will apply to protect communications with agents of the client who facilitate the transmission and technical interpretation of confidential information flowing between the attorney and the client.") (citing Restatement (Third) of the Law Governing Lawyers § 70 (2000)); *Harbor House Owners Corp. v. Admiral Indemnity Co.*, 2020 WL 2319943, at *2 (S.D.N.Y. May 11, 2020) (finding communications that included various agents of the client, including the client's management company and adjuster, did not break privilege).[4]

---

[4] Certain communications identified in the "VC Entries" section of Exhibit A [ECF No. 452-1] to the Jt. Disc. Statement include communications solely between DCVC and its in-house and/or outside counsel that contain DCVC's request for legal advice and/or legal advice rendered by DCVC. To the extent these communications are protected by DCVC's attorney-client privilege, that privilege is in addition to Zymergen's privilege, which pertains to other portions of the

### III. Disclosure To Auditors Did Not Waive Privilege.

Ninth Circuit law is clear: Zymergen's disclosure of work product to Ernst & Young ("EY") did not waive work product protection. *See, e.g., Sanmina Corp.*, 968 F.3d at 1122; *SEC v. Berry*, 2011 WL 825742, at *7-8 (N.D. Cal. Mar. 7, 2011) (sharing substance of witness interviews with auditor did not waive work product protection). As the relevant log entries reflect, Plaintiffs' challenges here fall into two categories: (1) the redacted portion of two memoranda produced by EY in this action and dated from March 2022 (well after plaintiffs filed this action), which reflect attorney work product from Zymergen's outside counsel regarding Zymergen's internal investigation, the SEC investigation, and private litigation, and (2) communications forwarded to EY involving a draft press release and draft earnings call script, which reflect attorney work product from Zymergen's outside counsel regarding those draft disclosures, provided in anticipation of litigation.[5] As the Ninth Circuit explained in *Sanmina*, disclosure of attorney work product to an independent auditor "does not constitute disclosure to an adversary sufficient to waive the protection." 968 F.3d at 1122. *Sanmina* adopts the prevailing view regarding disclosure to auditors. *Id.*; *United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010) ("Among the district courts that have addressed this issue, most have found no waiver."). In assessing whether disclosure of work product to EY constitutes waiver, "the relevant question [i]s not whether [EY] could be [Zymergen's] adversary in any conceivable future litigation, but whether [EY] could be [Zymergen's] adversary in the sort of litigation the work-product documents address." *Sanmina*, 968 F.3d at 1121. Here, the log entries reflect that the work product at issue addressed the instant litigation (which was either already ongoing or plainly anticipated at the time of the documents in question) and related internal and SEC investigations, matters that did not pit EY against the Company in a way that might waive work product protection under *Sanmina*.

---

communications between Zymergen's in house and/or outside counsel and the Director Defendants, including Matthew Ocko of DCVC. The Zymergen Defendants do not understand Plaintiffs to be challenging DCVC's privilege with respect to any documents produced and/or withheld on the basis of DCVC privilege, including but not limited to any such documents on Exhibit A.

[5] Indeed, the press release and earnings call script in question are dated July 29, 2021, just a few days before the August 3, 2021 disclosures that gave rise to this litigation.

### IV. Documents Regarding Zymergen's Internal Investigation Are Privileged.

Plaintiffs argue that documents concerning Zymergen's internal investigation were never privileged in the first place because they "were created with the intent to disclose them to the Government." Jt. Disc. Statement 4. This self-serving assumption is factually incorrect. In the alternative, Plaintiffs posit that by providing any kind of presentation about its internal investigation to the SEC, Zymergen somehow waived privilege over any investigation-related document. *Id*. This argument also fails.

Less than two months before Plaintiffs filed this action, Zymergen retained the law firm of Boersch & Illovksy ("Boersch") to conduct an internal investigation. Board minutes that have been produced to Plaintiffs in this action reflect that this engagement occurred soon after the Board learned of new information that seemed to cast doubt on the Company's "ability to meet expectations regarding Hyaline revenue." Ex. A, ZYMERGEN_NDCAL_000057773. The Board decided that the Audit Committee would, *inter alia*, perform a "deep dive" into the forecasting work that had been performed in the months before the IPO, and would have the authority to bring in external advisors and resources to support that work. *Id*.

As the relevant log entries reflect, the documents at issue, which were exchanged with outside counsel, were created in order to further Boersch's internal investigation. Plaintiffs point to no evidence—because none exists—suggesting that any of the challenged documents were prepared for the purpose of sharing them with the government. To the contrary, given the timing of the engagement, the internal investigation plainly was conducted in anticipation of the litigation that followed soon thereafter. The challenged investigation materials were not prepared in the ordinary course of business and "would not have been created in substantially similar form but for the prospect of litigation." *Stardock Sys., Inc. v. Reiche*, 2018 WL 6259536, at *3, *6 (N.D. Cal. Nov. 30, 2018); *see also In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (document should be deemed prepared "in anticipation of litigation" if it has been prepared or obtained "because of the prospect of litigation"). The mere fact that litigation had not yet commenced does not undermine a work product claim. *Stone Brewing Co., LLC v.*

1  *Molson Coors Brewing Co.*, 2019 WL 2176792, at *4 (S.D. Cal. May 20, 2019) (work performed
2  in the weeks leading up to litigation was protected by work-product doctrine).

3  Next, the fact that Zymergen's counsel shared certain underlying source documents—*not*
4  the documents Plaintiffs now challenge—with the SEC does not constitute a broad waiver as to
5  the entire subject matter of the investigation. The documents that Zymergen *did* share with the
6  SEC have already been produced to Plaintiffs in this action, and the internal investigation
7  documents that the Zymergen Defendants have withheld from production in this matter on
8  privilege grounds were not produced to the SEC. Muck Decl. ¶ 5. Moreover, while Boersch
9  explained the nature of its assignment to the SEC and provided an overview of its investigatory
10 processes during a November 2021 meeting with the SEC, Boersch and Zymergen did not produce,
11 in whole or in part, Boersch's internal notes, interview memoranda, or any other written work
12 product regarding the investigation to the SEC. Muck Decl. ¶ 5. Thus, *Wadler v. Bio-Rad Lab'ys.,*
13 *Inc.* is readily distinguishable; there, unlike here, counsel's presentation to the SEC resulted in a
14 broad waiver of attorney-client privilege because the presentation "describe[d] the underlying
15 investigation by outside counsel in great detail" and the defendant "repeatedly relied on that
16 document as a sword by citing to its conclusion." 212 F. Supp. 3d 829, 851, 852 (N.D. Cal. 2016);
17 *see also Munguia-Brown v. Equity Residential*, 2020 WL 3057502, at *2 (N.D. Cal. June 9, 2020)
18 (subject matter waiver "is reserved for those *unusual* situations… in which the privilege holder
19 seeks to use the disclosed material for advantage." (internal quotation marks omitted and emphasis
20 added); *Schmidt v. Levi Strauss & Co.*, 2007 WL 628660, *4 (N.D. Cal. Feb. 28, 2007) (disclosure
21 of certain internal investigation documents to government did not result in subject matter waiver
22 of any "internal notes, drafts, memoranda, emails, etc. which were never disclosed outside" and
23 where the defendant had "no intention of relying upon … his investigation at trial."); *SEC v.*
24 *Shroeder*, 2009 WL 1125579, *7 (N.D. Cal. Apr. 27, 2009) (similar).

25 **V.    Inclusion of Gilmartin Group on Communications Does Not Waive Privilege.**
26 As an emerging company, Zymergen relied on consultants to perform certain business
27 functions, including interfacing with investors. Gilmartin Group, and specifically its employees
28

Carrie Mendivil and Mary Kate McDonough,[6] served in the role of an in-house public relations/investor relations department for Zymergen. As such, Gilmartin Group's participation or inclusion in attorney-client communications does not waive the Company's privilege. *See, e.g., Gen-Probe Inc. v. Becton, Dickinson & Co.*, 2012 WL 1155709, at *4-5 (S.D. Cal. Apr. 6, 2012) (no waiver where third party was the functional equivalent of an employee); *U.S. ex rel. Strom v. Scios, Inc.*, 2011 WL 4831193, at *2-3 (N.D. Cal. Oct. 12, 2011) (similar); *see also United States v. Graf*, 610 F.3d 1148, 1158 (9th Cir. 2010) ("[T]oo narrow a definition of representative of the client will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely.")

In assessing whether a non-employee can be considered the functional equivalent of an employee, this Court has relied on the fact-intensive inquiry that the Eighth Circuit adopted in *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994). *See Roblox Corp. v. WowWee Grp. Ltd.,* 2024 WL 815516 (N.D. Cal. Feb. 27, 2024); *Resolute Forest Prods. v. Greenpeace Int'l*, 2022 WL 885368 (N.D. Cal. March 25, 2022). Contrary to Plaintiffs' assertion, *see* Jt. Disc. Statement 5, a disclaimer of an agency relationship is not dispositive. *Bieter*, 16 F.3d 929 at 933-34 (non-employee deemed functional equivalent of employee even through agreement "made clear that [individual] was an independent contractor, and that he was expressly not an agent, employee, or partner of Bieter"). Here, as in *Bieter*, it is evident that Gilmartin employees worked closely with Zymergen and were "involved on a daily basis with the principals" of the Company. *Id*. at 938. Indeed, the fact that Gilmartin produced over 30,000 non-privileged documents to Plaintiffs in response to their third-party subpoena in this action demonstrates the degree to which Gilmartin was integrated into Zymergen's business. Further, the privilege log entries challenged by Plaintiffs reflect that a small group of Gilmartin employees worked regularly with Zymergen's Chief Legal Officer, Mina Kim, and Vice President of Corporate Legal, Celeste Ferber. For example, the entries reflect that Gilmartin employees regularly provided information to and sought advice from

---

[6] Gilmartin employee Conor Rodriguez replaced McDonough in this role in January 2022.

Zymergen's legal department, including Ms. Kim, regarding investor communications such as earnings releases and draft call scripts. Zymergen, in turn, included Ms. Mendivil and her team on privileged communications that request, provide, and discuss legal advice regarding a myriad of topics, including marketing communications and public filings with the SEC. *See, e.g.*, Jt. Disc. Statement, Ex. A [ECF No. 452-1] at 94-112. The log entries also reflect that during the IPO process, Gilmartin worked closely not only with the Company but also "on [the company's] behalf" in interacting with outside counsel and in putting together materials for investors. *See Bieter*, 16 F.3d 929 at 938; *see also Graf*, 610 F.3d 1148, at 1157 (third-party consultant deemed a "functional employee" where the consultant "regularly communicated with insurance brokers and others on behalf of [the company]").[7] In short, Gilmartin Group's role was both extensive and integral to Zymergen's operations (including the operations of its legal department), and as such its inclusion on privileged communications does not constitute waiver.

### VI. Disclosure To Joele Frank Does Not Constitute Waiver.

Finally, Plaintiffs argue that Joele Frank was not retained for the purpose of assisting Zymergen's in-house attorneys in the provision of legal advice. Jt. Disc. Statement 5. Zymergen's legal department retained Joele Frank in May 2021 to assist with strategic communications and investor relations. Thereafter, at a June 19, 2021 Board meeting (when the Board learned of new information that appeared to cast doubt on the Company's "ability to meet expectations regarding Hyaline revenue"), the Board authorized a subcommittee to work with management and Joele Frank on communications to investors related to these issues in advance of the upcoming August earnings call. *See* Ex. A, ZYMERGEN_NDCAL_000057773. The log entries reflect that Joele Frank helped Zymergen's legal department prepare earnings call scripts and board materials related to the very issues that gave rise to this litigation, and indeed most of the documents at issue are from the period between the June 19, 2021 Board meeting and the August 3, 2021 disclosures that led to this litigation.

---

[7] *Bieter* also considered whether the contractor in question worked out of the Company's office. *Bieter*, 16 F.3d 929, at 933. Here, the work associated with Zymergen's IPO occurred when the COVID-19 pandemic was still ongoing and much work was done remotely, which reduces the relevance of this factor in this case.

1   Because Joele Frank's services supported Zymergen's in-house lawyers' review of draft public statements and otherwise assisted the Company's legal department, their communications are protected by the attorney-client privilege and, in certain cases, the work product doctrine. *See Moradpour v. Velodyne Lidar, Inc.*, 2023 WL 5667885, at *2 (N.D. Cal. Aug. 15, 2023) (defendants did not waive privilege over confidential documents simply because they were shared with Joele Frank, and communications to Joele Frank made for a legal purpose are protected by the attorney-client privilege); *Klein v. Meta Platforms, Inc.*, 2022 WL 767096, at *3 (N.D. Cal. Mar. 11, 2022) (similar); *Kirkpatrick v. City of Oakland, Cal.*, 2022 WL 137628, at *1-2 (N.D. Cal. Jan. 14, 2022) (disclosure to public relations firm does not waive privilege where "disclosure to the third party is necessary for the attorney to render sound legal advice"); *Stardock,* 2018 WL 6259536, at *1, *6 (communications between public relations firm and defendants' counsel regarding, *inter alia*, draft press releases protected by the attorney-client privilege). Whether the public relations consultant was engaged before or after the commencement of litigation is not determinative. *See Kirkpatrick*, 2022 WL 137628, at *1-2 (privilege applied where consultant was retained months before filing of a lawsuit); *see also Stone Brewing Co., LLC*, 2019 WL 2176792, at *4 (similar). Indeed, as is the case here, in the *Velodyne* matter Joele Frank was retained to assist with "strategic communications and investor relations" soon after the company's audit committee learned of facts that presented a litigation risk. *See Moradpour v. Velodyne Lidar, Inc.*, No. 21-cv-01486, Joint Disc. Ltr. [ECF No. 196] (N.D. Cal. Mar. 2, 2021).

| | | |
|---|---|---|
| 1 | DATED: January 3, 2025 | WILMER CUTLER PICKERING |
| 2 | | HALE AND DORR LLP |

By:   */s/ Peter J. Kolovos*
     Peter J. Kolovos

KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
GIAN P. GUALCO-NELSON (SBN 337284)
gian.gualco-nelson@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001

PETER J. KOLOVOS (appearance *pro hac vice*)
peter.kolovos@wilmerhale.com
BETH E. BOOKWALTER (appearance *pro hac vice*)
beth.bookwalter@wilmerhale.com
JOCELYN M. KEIDER (appearance *pro hac vice*)
jocelyn.keider@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526 6000
Facsimile: (617) 526-5000

*Attorneys for Defendants Zymergen Inc., Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma*