ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
ALAINA L. GILCHRIST (335807)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
agilchrist@rgrdlaw.com
        – and –
JUAN CARLOS SANCHEZ (301834)
PATTON L. JOHNSON (320631)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jsanchez@rgrdlaw.com
pjohnson@rgrdlaw.com

Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BIAO WANG, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        vs.<br><br>ZYMERGEN INC., et al.,<br><br>                              Defendants. | Case No. 5:21-cv-06028-PCP<br><br>PLAINTIFF'S SUPPLEMENTAL OPPOSITION CONCERNING ZYMERGEN DEFENDANTS' PRIVILEGES |

4905-4583-8870.v1

## I.      Zymergen Is a Defunct Corporation and No Longer Has the Ability to Assert Any Attorney-Client or Work Product Privileges

As discussed in Plaintiff's Opposition (ECF 475), this briefing has clarified that only Zymergen, Inc. ("Zymergen"), and not the Director Defendants, are claiming privilege over the challenged documents.[1]  Because Zymergen is no longer a viable business and thus no longer has the ability to assert any attorney-client privilege or work product privileges, the challenged documents – and all others which it continues to improperly withhold – must be produced.  ECF 475 at 1-2.

### A.      Zymergen Is a Defunct Corporation with No Remaining Operations

On October 19, 2022, Ginkgo Bioworks Holdings, Inc. ("Ginkgo") completed a merger with Zymergen, whereby Zymergen became a wholly-owned subsidiary of Ginkgo and stopped trading on the NASDAQ.  ECF 321, ¶55.  Ginkgo bought Zymergen in an all-stock transaction, which valued Zymergen at less than 8% of its market capitalization at Zymergen's April 2021 IPO price.  *Id.*, ¶55 n.2.  At the time of the merger Ginkgo claimed that Zymergen's technologies and $100 million in cash would benefit Ginkgo, "truly [a] net cash number."  *Id.*  But after about a year, Ginkgo put Zymergen into bankruptcy and the company filed for bankruptcy protection on October 3, 2023.  ECF 218.

From the beginning of the bankruptcy, Zymergen intended to liquidate its assets and no longer operate as a commercial enterprise.  Zymergen stated to the bankruptcy court that the reason why it filed for bankruptcy was to "to maximize value for the benefit of their estates and creditors through the contemplated sale of all or substantially all of their assets pursuant to an auction and sale process."  BK Dkt. 9, ¶5.[2]  Zymergen claimed that bankruptcy protections were needed to "to minimize administrative expenses and ultimately to distribute their cash on hand plus sale proceeds to creditors."  *Id.*, ¶23.  On the same day it filed for bankruptcy, Zymergen entered into an agreement to sell substantially all its assets to Ginkgo.  BK Dkt. 288 at 1.  On December 21, 2023, the

---

[1]      "Plaintiff" refers to Lead Plaintiff and Class Representative Biao Wang.  "Director Defendants" refer to Steven Chu, Jay T. Flatley, Christine M. Gorianc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma, and collectively with Zymergen, "Zymergen Defendants."

[2]      All references to "BK Dkt." are to Zymergen's bankruptcy docket, *In Re Zymergen Inc.*, 1:23-BK-11661 (Bankr. D. Del. 2024).

1   bankruptcy court approved the sale of certain Zymergen assets to Pivot Bio, Inc. ("Pivot Bio") for

2   $2.3 million (BK Dkt. 287-1 at 2), and substantially all of Zymergen's remaining assets to Ginkgo

3   for approximately $6.3 million (BK Dkt. 288-1 at 46).  BK Dkt. 287, 288.

4          On February 5, 2024, the bankruptcy court approved Zymergen's Plan of Liquidation and

5   ordered that Zymergen as a "corporate entit[y] shall be wound down."  BK Dkt. 372, ¶O.  On

6   February 23, 2024, the Plan of Liquidation became effective and provided for the transfer of all of

7   Zymergen's assets, such as any remaining cash and sale proceeds, to a liquidation trust (the

8   "Liquidating Trust") to be liquidated and distributed to creditors.  BK Dkt. 372-1, ¶1.61; BK Dkt.

9   353, ¶35; BK Dkt. 404; *see* 26 C.F.R. § 301.7701-4(d) (A liquidating trust "is formed with the

10  objective of liquidating particular assets and not as an organization having as its purpose the carrying

11  on of a profit-making business.").  In addition, on February 23, 2024, by way of the Plan of

12  Liquidation coming into effect, any Zymergen directors and officers were "discharged from their

13  duties and terminated automatically."  BK Dkt. 372-1, ¶6.6.  Ginkgo reported that: "All of the

14  Company's interests in the Zymergen entities were extinguished and terminated as of February 23,

15  2024." Ginkgo 1Q24 10-Q.[3]  Thus, there is no real dispute that Zymergen is a defunct corporation,

16  merely an empty corporate shell – it has no owners, no directors, no employees, no business purpose,

17  and all its assets and any corporate power is all vested in the Liquidating Trust.

18       **B.     Defunct Corporations Have No Privilege to Assert**

19         When a company files for bankruptcy and ceases to function, "there is a presumption that

20  evidentiary privileges such as attorney-client privilege or the work product doctrine are no longer

21  viable." *Abdo v. Fitzsimmons*, 2019 WL 10910805, at *1-*2 (N.D. Cal. Oct. 2, 2019).  As the Ninth

22  Circuit has stated, privileges are "'an obstacle to the investigation of the truth,' and thus, 'it ought to

23  be strictly confined within the narrowest possible limits consistent with the logic of its principle.'"

24  *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (cleaned up); *see In re Pac. Pictures Corp.*, 679

25  F.3d 1121, 1127-28 (9th Cir. 2012) ("If we were to unmoor a privilege from its underlying

26  justification, we would at least be failing to construe the privilege narrowly.").  "'When the

27

28  ---
    [3]   *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/1830214/000162828024022229/dna-2024
    0331.htm.

1  corporation is gone, so too is its interest in protecting its communications; the need to promote full

2  and frank exchanges between an attorney and agents of his corporate clients disappears when the

3  corporation employing those clients has departed.'" *Abdo*, 2019 WL 10910805, at *1 (quoting

4  *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2012 WL 874322, at *4 (N.D. Ill. Mar. 14, 2012)).

5  Likewise, when a corporation has no directors, officers, or any intent to carry-on as a business, as

6  here, "'[n]o real purpose would be served by continuing the privilege after operations cease, as the

7  corporation would no longer have any goodwill or reputation to maintain.'" *In re Am. Med.*

8  *Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 2023 WL 8595741, at *5 (D.N.J.

9  Oct. 16, 2023).

10      Thus, it appears that Zymergen will not be able to prove that its attorney-client and work

11  product privileges exist. *Abdo*, 2019 WL 10910805, at *2 ("[T]he burden of proving an evidentiary

12  privilege applies rests not with the parting contesting the privilege, but with the party asserting it.").

13  Zymergen's conduct in this litigation is also a tacit admission that it has no privilege to assert.  The

14  Zymergen Defendants have continually sought to obfuscate who was asserting the privilege – was it

15  Zymergen or was it the Director Defendants?  Only after Plaintiff brought its sword and shield

16  concerns to the Court did counsel for Zymergen remark at the hearing that the former directors could

17  not waive ***Zymergen's*** privilege.  ECF 462 at 17:2-8.  And still, after the Court gave Zymergen

18  Defendants an opportunity to brief the issue, Zymergen buried its assertion of privilege in a footnote.

19  ECF 467 at 3 n.3.  In fact, Zymergen has yet to claim that after the Plan of Liquidation came into

20  effect that it actually does have any privileges.  And it is clear why – "[t]he weight of federal

21  authority supports a holding that there is a presumption the attorney-client privilege is no longer

22  viable after a business entity ceases to function." *U.S. v. Walters*, 2020 WL 1934803, at *2 (S.D.

23  Miss. Apr. 21, 2020).

24  **II.    Zymergen Has Waived Its Privilege Protections by Its Assertion of a Good**
         **Faith Defense and Working Together in Tandem with the Director**

25       **Defendants**

26      Zymergen has made arguments to the Court suggesting that only the Director Defendants are

27  asserting the affirmative defenses and the Director Defendants cannot waive Zymergen's privileges.

28  ECF 467 at 3 n.3; ECF 456 at 17:16-19.  However, Zymergen is still asserting a good faith defense

1   in its Answer. ECF 374 at 54. This was confirmed when the Court asked counsel to Zymergen and

2   the Director Defendants (*i.e.*, WilmerHale) why "[g]ood faith wasn't addressed in the papers," Mr.

3   Kolovos stated affirmatively that "***we are still asserting the good faith defense***." ECF 489 at 36:5-6.

4   Accordingly, Zymergen raising that it acted "in conformity with the law and rules and regulations of

5   the U.S. Securities and Exchange Commission" (ECF 374 at 54) is the classic waiver scenario where

6   "a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during

7   the course of litigation." *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003).

8         The Director Defendants' assertion of the good faith and due diligence defenses also operates

9   as a waiver of the privileges. This is because "[t]he doctrine of waiver of the attorney-client

10  privilege is rooted in notions of fundamental fairness," and Zymergen and the Director Defendants

11  have been unfairly working together in tandem. *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337,

12  340-41 (9th Cir. 1996). As noted above, not only have the Zymergen Defendants continually

13  obfuscated who is raising the privileges, they have also obfuscated who is raising the affirmative

14  defenses. Even after the Plan of Liquidation became effective on February 23, 2024, Zymergen and

15  the Director Defendants submitted a single Answer to the operative Second Amended Complaint

16  which makes no distinction between any answering defendant, leaving it ambiguous who is asserting

17  which affirmative defense. ECF 374. And through the same exact lawyers, the Director Defendants

18  wield the sword while propping up a defunct corporation's shield. This is a fundamentally unfair

19  litigation tactic that the Court has the authority to remedy. *U.S. v. Roscoe*, 2011 WL 13143140, at

20  *3 (N.D. Cal. Jan. 6, 2011) ("[t]he defendants' attempt to raise the attorney-client privilege on behalf

21  of the corporation at this time appears to be a disguised attempt to protect the communications from

22  disclosure for defendants' personal benefit"); *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 189, (1990)

23  (finding courts have "flexibility to develop rules of privilege on a case-by-case basis").

24        Fairness also dictates that Zymergen's disclosure of its purportedly protected material to the

25  Director Defendants in this litigation is a selective waiver to an adversary that destroyed any

26  privileges. "[The doctrine of waiver's] principal purpose is to protect against the unfairness that

27  would result from a privilege holder selectively disclosing privileged communications to an

28  adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid

1   disclosing those that are less favorable." *Tennenbaum*, 77 F.3d at 340-41.  Indeed, the Ninth circuit

2   has called it a "relevant guidepost[]" when "'the disclosing party has engaged in self-interested

3   selective disclosure by revealing its work product to some adversaries but not to others." *U.S. v.*

4   *Sanmina Corp*., 968 F.3d 1107, 1121 (9th Cir. 2020).

5          Zymergen and the Director Defendants are now adversaries.  In bankruptcy court, the trustee

6   for the Liquidating Trust, where all of Zymergen's dwindling assets and causes of action sit,

7   attempted to compel mediation amongst various Zymergen creditors, including Plaintiff.  BK Dkt.

8   537.  The trustee claimed that mediation would be beneficial to settle causes of action that the

9   Liquidating Trust has on behalf of Zymergen "***against the company's former directors and***

10  ***officers***," *i.e.*, causes of action to be brought derivatively for the benefit of the bankruptcy estate and

11  its creditors against the same Director Defendants who led Zymergen before the sale to Ginkgo and

12  subsequent insolvency.  *Id.*, ¶22.  Indeed, the SEC found that while the Director Defendants were

13  running Zymergen, the company "misled investors about its lone developed product's market

14  opportunity, revenue prospects, and customer pipeline" – the same issues being litigated against

15  them here.  ECF 475-22, ¶1.  And the trustee told the bankruptcy court that "[t]he Liquidating Trust

16  will be ready to file a complaint with these Potential Claims in the absence of a successful

17  mediation."  BK Dkt. 537, ¶22.  Despite this apparent conflict, WilmerHale continues to make

18  appearances and present legal arguments on behalf of both the Zymergen and the Director

19  Defendants in this action.  But while the trustee has yet to formally assert Zymergen's claims against

20  the Director Defendants, their interests are in fact adverse.

21         A joint defense extension does not save the privilege either.  "[A] shared desire to see the

22  same outcome in a legal matter is ***insufficient*** to bring a communication between two parties within

23  this exception."  *Pac. Pictures*, 679 F.3d at 1129.  Disclosure of privileged information to a co-

24  defendant constitutes waiver, unless "the communication was made for the 'limited and restricted

25  purpose to assist in asserting ***their common claims***.'"  *U.S. v. Gonzalez*, 669 F.3d 974, 978 (9th Cir.

26  2012).  Here, the Director Defendants are asserting the due diligence defense, but Zymergen is not,

27  and thus the joint defense exception to waiver cannot apply.  Accordingly, Zymergen's disclosure of

28  its purportedly privileged attorney-client communications and work product to the Director

Defendants and their agents now in this litigation, in fairness, has in fact waived any of its prior protections.

### III. If the Privilege Information Is Not Produced to Plaintiff the Court Must Strike the Zymergen Defendants' Good Faith and Due Diligence Defenses

As explained by the Ninth Circuit, in imposing an implied waiver "the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them." *Bittaker*, 331 F.3d at 720. Here, the Court recognized, "communications with counsel that inform that state of mind, the privilege is waived as to those communications." ECF 489 at 9:20-22. As Zymergen maintains that it is asserting a good faith defense, there is no question that it must produce the documents identified by Plaintiff related to Freshfields. ECF 452, Ex. A, at Freshfields Entries 1 through 40.

Likewise, as the Director Defendants are working together in tandem with the defunct corporation Zymergen, the Director Defendants must be required to produce the same documents that they unquestionably have possession over through their agent WilmerHale. *Sec. & Exch. Comm'n v. Honig*, 2021 WL 5630804, at *15 (S.D.N.Y. Nov. 30, 2021) ("if Ladd persists in his defense of good faith, he must seek MGT's waiver of the privilege").

Ultimately, however, if the privileged information is not produced, the Court must strike the good faith and due diligence defenses asserted by Zymergen and the Director Defendants. "It would be unfair to allow these defendants to use a good faith defense that defendants admit ultimately rests on attorney-client information." *Brice v. Haynes Invs., LLC.*, 2021 WL 9860718, at *4 (N.D. Cal. Aug. 10, 2021) (striking good faith defense where reorganized company instructed defendants that privilege is not waived); *see* ECF 489 at 40:16-18 (Zymergen Defendants admitting that "where Freshfields is advising on the drafts of the registration statement, those have been withheld as privileged."). Likewise, with the due diligence defense, "[h]aving withheld documents on the subjects of its public statements on the grounds of privilege, fairness dictates that Defendants not be able to introduce evidence implying that its lawyers passed on the adequacy of Defendants' communications." *Shenwick v. Twitter, Inc.*, 2021 WL 1232451, at *4 (N.D. Cal. Mar. 31, 2021) (excluding evidence or argument at trial regarding any good faith reliance on counsel or the

1  purported role of lawyers in reviewing or approving public disclosures); *see U.S. v. Wells Fargo*

2  *Bank, N.A.*, 132 F. Supp. 3d 558, 566 (S.D.N.Y. 2015) ("[T]he Court concludes that Lofrano is

3  precluded from asserting an advice-of-counsel defense in light of Wells Fargo's refusal to waive its

4  attorney-client privilege.").

5       Thus, as Plaintiff has already been prejudiced by this information being withheld through the

6  end of discovery, the Zymergen Defendants' good faith and due diligence defenses must be stricken.

7  DATED: February 4, 2025                ROBBINS GELLER RUDMAN & DOWD LLP
                                          JUAN CARLOS SANCHEZ
8                                         PATTON L. JOHNSON

9

10                                                s/ Patton L. Johnson
                                          _____
11                                             PATTON L. JOHNSON

12                                        655 West Broadway, Suite 1900
                                          San Diego, CA  92101
13                                        Telephone:  619/231-1058
                                          619/231-7423 (fax)
14                                        jsanchez@rgrdlaw.com
                                          pjohnson@rgrdlaw.com
15

16                                        ROBBINS GELLER RUDMAN & DOWD LLP
                                          SHAWN A. WILLIAMS
17                                        DANIEL J. PFEFFERBAUM
                                          ALAINA L. GILCHRIST
18                                        Post Montgomery Center
                                          One Montgomery Street, Suite 1800
19                                        San Francisco, CA  94104
                                          Telephone:  415/288-4545
20                                        415/288-4534 (fax)
                                          shawnw@rgrdlaw.com
21                                        dpfefferbaum@rgrdlaw.com
                                          agilchrist@rgrdlaw.com
22

23                                        Counsel for Plaintiffs

24

25

26

27

28

BERMAN TABACCO
NICOLE LAVALLEE (SBN 165755)
KRISTIN J. MOODY (SBN 206326)
CHRISTINA M. SARRAF (SBN 328028)
425 California Street, Suite 2300
San Francisco, CA  94104
Telephone:  415/433-3200
415/433-6382 (fax)
nlavallee@bermantabacco.com
kmoody@bermantabacco.com
jrocha@bermantabacco.com

BERMAN TABACCO
LESLIE R. STERN
PATRICK T. EGAN
One Liberty Square
Boston, MA  02109
Telephone:  617/542-8300
617/542-1194 (fax)
lstern@bermantabacco.com
pegan@bermantabacco.com

Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund

KLAUSNER, KAUFMAN, JENSEN
  & LEVINSON
ROBERT D. KLAUSNER
BONNI S. JENSEN
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
bonni@robertdklausner.com

Board Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund