KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
MELISSA A. MCCALL (SBN 335761)
melissa.mccall@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001

PETER J. KOLOVOS (appearance pro hac vice)
peter.kolovos@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526 6000
Facsimile: (617) 526-5000

[Additional counsel omitted]

*Attorneys for Defendants Zymergen Inc., Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| BIAO WANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ZYMERGEN INC., et al.,<br><br>Defendants. | Case No. 5:21-cv-06028-PCP<br><br>**ZYMERGEN DEFENDANTS' OPENING BRIEF IN RESPONSE TO JANUARY 21, 2025 ORDER**<br><br>Judge: The Honorable Susan Van Keulen |

**TABLE OF CONTENTS**

**Page**

I. Procedural History ................................................................................................................ 1

II. Zymergen's Bankruptcy Proceedings ................................................................................... 1

III. Zymergen's Privileges Remain Viable and Can Only Be Waived by the Trustee ............ 4

IV. The Potential Implications of the Director Defendants' Inability to Waive Zymergen's Privilege Is Not Ripe for Decision ....................................................................................... 6

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abdo v. Fitzsimmons*,
    2019 WL 10910805 (N.D. Cal. Oct. 2, 2019) ................................................................. 5

*CFTC v. Weintraub*,
    471 U.S. 343 (1985) ....................................................................................................... 4

*In re Charles Schwab Corporation Securities Litigation*,
    No. 08-01510 [ECF No. 612] (N. D. Cal. Apr. 14, 2010) ............................................. 7

*In re LendingClub Securities Litigation,*
    2018 WL 977558 (N. D. Cal. Feb. 20, 2018) ................................................................. 7

*In re Zymergen Inc.*,
    No. 23-11661 (Bankr. D. Del.) ....................................................................................... 2

*Jiaxing Super Lighting Electric. Appliance Co. v. Lunera Lighting, Inc.*,
    2021 WL 2711229 (N.D. Cal. July 1, 2021) .................................................................. 5

*Official Committee of Administration Claimants ex rel. LTV Steel Co. v. Moran*,
    802 F. Supp. 2d 947 (N.D. Ill. 2011) ............................................................................. 4

*Shenwick v. Twitter, Inc.,*
    2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) ............................................................... 7

*Swidler & Berlin v. United States,*
    524 U.S. 399 (1998) ....................................................................................................... 4

*United States v. Roscoe*,
    2011 WL 13143140 (N.D. Cal. Jan. 6, 2011) ................................................................. 5

The Zymergen Defendants respectfully submit this opening brief in response to the Court's Order dated January 21, 2025 [ECF 483] to address the issues the Court set forth in that Order and during the January 21, 2025 Discovery Hearing.[1]

## I. Procedural History.

On December 12, 2024, the parties filed a Joint Discovery Statement [ECF 452] regarding Plaintiffs' challenges to the Zymergen Defendants' assertion of attorney-client privilege and/or work product protection over six categories of documents. At a hearing on December 17, 2024, the Court ordered that the parties meet and confer further and, if necessary, make supplemental submissions.

On January 3, 2025, the Zymergen Defendants filed their supplemental brief. [ECF 467]. Plaintiffs filed their responsive brief on January 13, 2025. [ECF 475]. In Plaintiffs' submission, they argued—for the first time—that because Zymergen was in post-bankruptcy liquidation, it no longer had any privileges to assert. *Id.* at 1.

During the discovery hearing on January 21, 2025, and in the Court's subsequent Order following the hearing, the Court ordered supplemental briefing on the following questions: (1) whether Zymergen still holds an attorney-client privilege in light of the liquidation plan currently in place and, if so, (2) whether the Director Defendants can waive Zymergen's attorney-client privilege. At the hearing, the Court asked the parties to address an additional question: (3) if the Court were to find that the assertion of a due diligence defense waives the attorney-client privilege as to certain communications, but the Director Defendants cannot waive that privilege, what impact would that have, if any, on the due diligence defense.

## II. Zymergen's Bankruptcy Proceedings.

Because the Court's first two questions are answered by reference to an agreement that the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approved in connection with the confirmation of Zymergen's liquidation plan, the Zymergen Defendants

---

[1] "Zymergen Defendants" refers to Zymergen, Inc. ("Zymergen" or the "Company") and eight of its former directors: Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma (the "Director Defendants").

1  provide the following brief summary of the relevant proceedings in the Bankruptcy Court, in the
2  matter captioned *In re Zymergen Inc.*, Case No. 23-11661 (KBO) (Bankr. D. Del.).[2]

3  As the Court is aware from the parties' prior submissions, Zymergen and three related
4  entities (collectively, the "Debtors") filed for bankruptcy protection in the Bankruptcy Court on
5  October 3, 2023.  On October 4, 2023, the Debtors filed an initial proposed Joint Chapter 11 Plan
6  of Liquidation which, among other things, would establish a liquidation trust to hold certain assets
7  of the Debtors.  Ex. 1.[3]  The Debtors subsequently filed (as a supplement to the proposed
8  liquidation plan) a proposed form of Liquidating Trust Agreement, which would govern the
9  operation of the liquidation trust, and which the Debtors stated was "integral to, and considered
10 part of, the Plan."  Ex. 2 at 2.  The Debtors' submission stated that, "if the Plan is confirmed, the
11 [Liquidating Trust Agreement] [would] be approved by the Bankruptcy Court pursuant to the order
12 confirming the Plan.  *Id*.

13 As part of the solicitation and plan approval process, Zymergen's creditors, ***including the***
14 ***Plaintiffs in this case***, were afforded an opportunity to raise any objections that they may have
15 had to the proposed plan.  The Debtors filed a First Amended Joint Chapter 11 Plan of Liquidation
16 (the "Plan") on February 1, 2024.  [D.I. 361-1 at 34].  The Bankruptcy Court held a Confirmation
17 Hearing on February 5, 2024, during which counsel for Plaintiffs confirmed on the record that the
18 Plan submitted for the Court's approval "accurately reflects our resolution and we have no further
19 concerns."  *See* Ex. 3 at 10:9-15.  The Bankruptcy Court entered its order confirming the Plan that
20 same day (the "Confirmation Order"), which order stated that "any objections to the Plan hav[e]
21 been resolved and/or overruled by this Court pursuant to this Confirmation Order".  Ex. 4 at 2.
22 The Confirmation Order further stated that "the Plan, the Plan Supplement, and all related
23 documents are approved and confirmed in their entirety as if set forth verbatim in this Confirmation
24 Order."  *Id.* at 13.

---

[2] References to documents filed on the Bankruptcy Court's docket appear herein as "[D.I. ___]".

[3] All exhibits referenced herein ("Ex.") are attached to the Declaration of Peter J. Kolovos, filed herewith.

As indicated above, the Liquidating Trust Agreement was filed on the Bankruptcy Court's docket prior to the Confirmation Hearing, and therefore was publicly available to all interested parties, including Plaintiffs. Accordingly, nothing in the Liquidating Trust Agreement—including without limitation the provisions discussed below that address the transfer to the Trust of the rights and privileges associated with documents or communications—was not disclosed to Plaintiffs without an opportunity to object. Plaintiffs did not formally object to the Plan or the Liquidating Trust Agreement at the Confirmation Hearing, and as noted they confirmed their consent on the record to entry of the Confirmation Order, which among other documents approved the Liquidating Trust Agreement. Ex. 4 at 12. Thereafter, the Plan and the Liquidating Trust Agreement went effective on February 23, 2024. [D.I. 404]. Accordingly, the "Plan and its provisions are binding on the Debtors, any holder of a Claim or Interest, and such holder's respective successors and assigns," which includes Plaintiffs. [D.I. 404 at 1].

The Plan established a Liquidation Trust ("Trust") whose purpose is to, among other things, hold and liquidate certain assets of the Debtors, administer the responsibilities of the Debtors after the effective date of the Plan, recover assets on behalf of the Trust, and wind down the affairs of the Debtors. Ex. 4 at D.I. 372-1 p.19. The Confirmation Order appointed an individual (Neal Goldman) to serve as the trustee of the Trust (the "Trustee"). Ex. 4 at 17. Pursuant to the Confirmation Order, the Trustee is permitted to act on behalf of the Trust, and to employ professionals and pay them reasonable fees for services necessary to assist him in performing his duties to the Trust. *Id.* at 16-19. The Trustee is also responsible for complying with and effectuating the Plan; executing all instruments and documents necessary to make distributions; and winding up Zymergen's affairs, including taking any steps needed to dissolve, liquidate, and ultimately terminate Zymergen's corporate and organizational existence. *Id*. at D.I. 372-1 p.20.

The Confirmation Order also approved the form of, and authorized the entry into, a Liquidating Trust Agreement that, together with the Plan and Confirmation Order, governs the rights, powers, obligations and other matters pertaining to the Trust. Ex. 4 at 17. Of particular relevance to the questions the Court posed, the Liquidating Trust Agreement provides that all of

Zymergen's books and records are transferred or deemed assigned to the Trust, and that all rights and privileges associated with documents or communications transferred to the Trust would vest in the Trustee, *including the attorney-client and work product privileges; and that no person other than the Trustee would have the right to assert or waive those privileges*. Ex. 5, § 12.5.

### III. Zymergen's Privileges Remain Viable and Can Only Be Waived by the Trustee.

The Court's first two questions are clearly answered by the express language of the Bankruptcy Court-approved Liquidating Trust Agreement:

> Any documents or communications (whether written or oral, and including confidential information) transferred by the Debtors … to the Liquidating Trust shall vest, including all rights and privileges, *including the attorney-client and work product privileges*, related thereto, in the Liquidating Trustee and its, his or her representatives, …. After the Effective Date, *no person other than the Liquidating Trustee shall have the right to assert or waive any privilege of the Debtors* or to make any admission or statement against interest respecting the Debtors.

Ex. 5, § 12.5(b) (emphasis added).

This provision is consistent with federal law. When a company goes through a liquidation process, the trustee of the company's estate performs functions that are "closely analogous to those of management." *CFTC v. Weintraub*, 471 U.S. 343, 356 (1985). The powers and duties of the trustee "are extensive." *Id.* at 352. "Even in liquidation," the bankruptcy court may authorize the trustee to carry out the company's affairs. *Id.* When it does so, the trustee of a corporation in liquidation continues to control the corporation's attorney-client privilege. *Id.* at 352-3. Other courts have recognized that allowing trustees to assert evidentiary privilege "during the windup process" reinforces "the primary policy underlying the privilege: to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011) (quoting *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998)).

Notwithstanding the express language of the Liquidating Trust Agreement, Plaintiffs advance the claim that Zymergen's attorney-client and work product privileges are no longer

viable. They make this argument even though they are fully aware—given their active participation in Zymergen's bankruptcy proceedings—of the language in the Liquidating Trust Agreement that defeats this claim. Indeed, while Plaintiffs objected to other aspects of the Plan during the confirmation process, they did not object to Section 12.5 of the Liquidating Trust Agreement before representing to the Bankruptcy Court that Plaintiffs and the Debtors had consensually resolved all of objections to the Plan.[4] As a result, they should not be heard now to argue that Zymergen's privileges are no longer viable.

In any event, none of the cases that Plaintiffs cited in their January 13 submission establishes that a company (or its liquidating trustee) loses the right to invoke legal privileges during the process of liquidation. At most, these cases stand for the proposition that the attorney-client privilege will no longer apply once the Trustee completes the process of winding down the Company's affairs. For example, in *Abdo v. Fitzsimmons*, 2019 WL 10910805, at *1 (N.D. Cal. Oct. 2, 2019), the court found that the entity had "ceased to function" more than three years after it declared bankruptcy, and that the party seeking to invoke the privilege "failed to provide any basis for why such a privilege exists." 2019 WL 10910805, at *2. Similarly, in *United States v. Roscoe*, 2011 WL 13143140, at *3 (N.D. Cal. Jan. 6, 2011), the court held that two former managers of a now-defunct company were not permitted to invoke the attorney-client privilege on behalf of the company. 2011 WL 13143140, at *3.

Plaintiffs try to draw some significance from the claim that Zymergen is "winding up its affairs," citing *Jiaxing Super Lighting Elec. Appliance Co. v. Lunera Lighting, Inc.*, 2021 WL 2711229, at *2 (N.D. Cal. July 1, 2021). But in *Jiaxing*, the company no longer had any assets, and "there [was] no person whom the Court [could] compel to respond to discovery or attend . . . in an examination." *Id.* at *2. Given this "practical reality," the court determined that the debtor company no longer existed." *Id.* Here, by contrast, Plaintiffs have continued to seek discovery

---

[4] The Plaintiffs filed an objection [D.I. 253] concerning, *inter alia*, the Trustee's obligation to maintain documents relevant to this litigation post-confirmation and whether Plaintiffs could continue to pursue their claims against Zymergen to seek recovery from insurance funds. Ex. 6.

from Zymergen after confirmation of its Plan, including (as the Court will recall) seeking to compel Zymergen to serve a redaction log. [ECF No. 397].

Finally, Section 12.5(b) of the Liquidating Trust Agreement also addresses the Court's second question: "After the Effective Date, no person other than the Liquidating Trustee shall have the right to assert or waive any privilege of the Debtors …." Ex. 5, §12.5(b).

## IV. The Potential Implications of the Director Defendants' Inability to Waive Zymergen's Privilege Is Not Ripe for Decision.

As explained in the Zymergen Defendants' prior submissions, the assertion of due diligence and good faith defenses by the Director Defendants does not require a waiver of privilege over communications reflecting the legal advice they received during the due diligence process where, as here, the Director Defendants at this time are not relying on that legal advice in support of these defenses. [ECF 452 at 6-7; ECF 467 at 1-3]. However, in the event the Court disagrees, and in the further event that the Trustee does not agree to waive privilege over the documents at issue, this should not impact the Director Defendants' ability to invoke the statutory due diligence defense authorized by Section 11(b)(3) of the Securities Act of 1933. Plaintiffs' authorities do not support the drastic remedy they seek—precluding the defendants from raising their statutory due diligence defense altogether. Rather, those and other authorities indicate that it would be premature to determine at this time what impact, if any, the Director Defendants' inability to waive Zymergen's privileges should have on the due diligence defense, as courts address these matters through motions in limine and other trial procedures.

As a preliminary matter, the issue is not ripe for decision. The Court has not yet decided that the assertion of a due diligence defense requires waiver of Zymergen's privilege, or if so which of the documents subject to Plaintiffs' privilege challenge would need to be produced in accordance with such a ruling. Nor has the Trustee informed the Court that he would *not* waive privilege over the documents at issue, should the Court conclude that the assertion of the due diligence defense requires waiver. And in the event the Trustee chooses not to waive privilege, one or more defendants could move for an order to compel the Trustee to waive privilege and

permit the production of the documents at issue to allow the defendants to fully pursue their statutorily established defense.

But even if the circumstances ultimately develop such that the inability (or unwillingness) to waive privilege comes into conflict with a finding that the assertion of a due diligence defense requires the production of certain privileged documents, courts resolve this tension through motions in limine or other mechanisms at trial. For example, Judge Alsup addressed a similar issue—which the Court described as a "predicament"—in a manner that allowed the defendant to present his defenses at trial without limitation. *In re Charles Schwab Corp. Sec. Litig.,* No. 08-01510 [ECF No. 612] at 1-2 (N.D. Cal. Apr. 14, 2010). There, a former employee sought to raise a statutory "reasonable care" defense but had no authority (as a former employee) to waive his former employer's attorney-client privilege as to relevant communications. Acknowledging the former employee's argument "that it would be unfair to him if he were prevented from asserting a statutorily authorized affirmative defense because his former employer refuses to produce the necessary documents," the Court stated that it was "inclined to allow Mr. Daifotis to testify as to his personal knowledge of Schwab's processes for reviewing key documents, as well as other matters relevant to his statutory 'reasonable care' defense," and that any potential unfairness to plaintiffs could be addressed via a jury instruction. *Id.* at 2-3. Similarly, in *In re LendingClub Sec. Litig.,* 2018 WL 977558 at *3 (N. D. Cal. Feb. 20, 2018), the court found that any concerns about fairness and potential jury confusion stemming from the parallel assertion of a due diligence defense and attorney-client privilege could be addressed through pre-trial procedures and jury instructions. *Id.*; *see also Shenwick v. Twitter, Inc.,* 2021 WL 1232451 at *4 (N.D. Cal. Mar. 31, 2021) (resolving the question of how the assertion of privilege impacts a reliance on counsel defense at the motion in limine stage).

In sum, the question of how to resolve any potential tension between the Director Defendants' inability to waive Zymergen's privilege and a ruling that the assertion of a due diligence defense requires the production of privileged communications is not ripe for decision. But if and when this issue becomes ripe, it can be addressed through pre-trial motions in limine or

ZYMERGEN DEFS.' OPENING BRIEF IN RESPONSE TO JAN. 21, 2025 ORDER     - 7 -     Case No. 5:21-cv-06028-PCP

other trial mechanisms that will allow the Director Defendants to present their statutorily authorized affirmative defense while ensuring fairness for all parties.

DATED: February 4, 2025

WILMER CUTLER PICKERING
   HALE AND DORR LLP

By:   */s/ Peter J. Kolovos*
        Peter J. Kolovos

KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
JESSICA L. LEWIS (SBN 302467)
jessica.lewis@wilmerhale.com
GIAN P. GUALCO-NELSON (SBN 337284)
gian.gualco-nelson@wilmerhale.com
MELISSA A. MCCALL (SBN 335761)
melissa.mccall@wilmerhle.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
50 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (628) 235-1000
Facsimile: (628) 235-1001

PETER J. KOLOVOS (appearance *pro hac vice*)
peter.kolovos@wilmerhale.com
BETH E. BOOKWALTER (appearance *pro hac vice*)
beth.bookwalter@wilmerhale.com
JOCELYN M. KEIDER (appearance *pro hac vice*)
jocelyn.keider@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526 6000
Facsimile: (617) 526-5000

*Attorneys for Defendants Zymergen Inc., Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma*