UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAIO WANG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ZYMERGEN INC., et al.,<br><br>    Defendants. | Case No. 21-cv-06028-PCP   (SVK)<br><br>**ORDER RE DUE DILIGENCE DEFENSE AND ATTORNEY-CLIENT PRIVILEGE AS TO THE UNDERWRITER DEFENDANTS**<br><br>Re: Dkt. No. 466 |

Before the Court is a dispute regarding to what extent, if any, asserting the affirmative defense of "due diligence" leads to a waiver of the attorney-client communication privilege. Plaintiffs raise this issue in challenging certain entries on the privilege logs of both the Zymergen Defendants (Dkt. 452) and the Underwriter Defendants (Dkt. 466). Because of pertinent factual differences between the various groups of Defendants, this Order resolves the dispute only as to the Underwriter Defendants.[1] The Court received joint submissions and supplemental briefing,[2] held a hearing (Dkt. 484) and reviewed *in-camera* a substantial sample of the documents with privileged redactions by the Underwriter Defendants. For the reasons set forth below, the Court determines that in light of the circumstances as between Plaintiffs and the Underwriter Defendants, there is no waiver of the attorney-client privilege pursuant to the Underwriter Defendants' assertion of the due diligence defense.

////

---

[1] The Court does provide general guidance to the Zymergen defendants based upon its reasoning herein. *See* Section III, *infra*.

[2] Although the supplemental briefing was ordered in the dispute between Plaintiffs and the Zymergen Defendants (Dkt. 458), the legal discussion in the briefs is equally applicable to both sets of Defendants (*see* Dkt. 467, 475).

## I. THE DUE DILIGENCE DEFENSE

Pursuant to the due diligence defense, defendants must prove that they had "after reasonable investigation, reasonable ground to believe and did believe" that statements in the registration statement were not materially misleading. 15 U.S.C. § 77k(b)(3); *In re Software Toolworks, Inc., Securities Litigation*, 50 F.3d 615, 621 (9th Cir. 1994). This defense is evaluated under a negligence standard. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 208 (1976). The statute specifically, and archaically, provides, "what constitutes reasonable investigation and reasonable ground for belief . . . shall be that required of a prudent man in the management of his own property." 15 U.S.C. § 77k(c). As for underwriters in particular, "they must show that their actions, not those of counsel, demonstrate the reasonableness of their investigation." *United Food and Commercial Workers Union v. Chesapeake Energy Corp.*, No. CIV-09-1114-D, 2012 WL 2370637, at *9 *(W.D. Ok. June 22, 2012) (citing *In re WorldCom, Inc. Securities Litig.,* 346 F.Supp.2d 628, 662 (S.D.N.Y. 2004)).

## II. ANALYSIS

Reliance on the due diligence defense (as opposed to the advice of counsel defense) and whether it impacts attorney-client privilege has surprisingly sparse treatment in the courts. In some cases, defendants' lawyers participate in the due diligence investigation, but defendants carefully assert, and the court accepts, that they are not relying on any privileged communications with counsel in support of the defense. *See United Food and Commercial Workers Union*, 2012 WL 2370637, at * 9 ("There is no indication that the Chesapeake Defendants intended to introduce evidence reflecting otherwise privileged attorney-client communications to support their contention that they acted with due diligence").

In other instances, including in this District, the court may focus on the "belief" component of the statutory defense and, where counsel was involved in the due diligence investigation, find a basis for a limited, implicit waiver of the privilege. *See In re Charles Schwab Corp. Securities Litig.*, Case No. 3:08-cv-1510-WHA, Dkt. 424 (N.D. Cal. Feb. 23, 2010); *see also In re Lending Club Securities Litig.*, No. C 16-02627 WHA, 2018 WL 977558, at *3 ((N.D. Cal. ). In *Lending Club*, when faced with a challenge to the attorney-client privilege, the defendant eschewed any

reliance on any role of counsel in the due diligence process. *Id.* ("[T]he underwriter defendants stress that . . . they rely only on non-attorney professionals, including accountants, auditors, financial experts, and investigative firms, to prove their Section 11(b)(3) defense").[3]

The Underwriter Defendants adopt the *United Food* approach, fully embracing their counsel's dual role as confidential advisor on matters related to the IPO and as a key actor in the due diligence investigation. "[O]n the one hand, in its capacity as the Underwriters' outside counsel, WSGR provided *legal advice* to its clients on specific issues as the need arose during the offering. On the other hand, WSGR was part of the Zymergen IPO 'working group' and worked closely with the Underwriters to conduct a *factual* due diligence investigation of Zymergen and the subject matter of the offering documents. The latter is relevant to the Underwriters' due diligence defense, but the former is not." Dkt. 466 at 7 (emphasis in original). This distinction between an attorney's role as legal advisor and factual investigator is well-established in the context of the due diligence defense. *See Escott v. BarChris Const. Corp.*, 283 F. Supp. 643, 697 (S.D.N.Y 1968) ("It is not a matter of relying upon counsel for legal advice. Here the attorneys were dealing with matters of fact. Drexel delegated to them, as its agent, the business of examining the corporate minutes and contracts").

In further support of this distinction, the Underwriter Defendants point to their production of thousands of "non-privileged" communications with WSGR, "including 1,000+ communications solely between the Underwriters and WSGR that reflect pre-IPO diligence." Dkt. 466 at 9.[4] Underwriter Defendants also argue that their privilege assertions are limited to

---

[3] Plaintiffs also cite *Sheet Metal Workers National Pension Fund v. Bayer Aktiengesellschaft,* No. 20-cv-04737 RS (SK), 2024 WL 74928 (N.D. Cal. Jan. 5, 2024) in support of the due diligence defense leading to an implied waiver. Dkt. 466 at 4. However, in marked contrast to the Underwriter Defendants, the *Sheet Metal* defendants asserted a good faith reliance defense and provided an interrogatory response that identified counsel and documents upon which they had relied. The court found an implied waiver as to the documents arising out of defendants' admitted reliance thereon. *Id.* at 2-3. The court did not address the issue at hand, whether assertion of a due diligence defense, by itself, leads to an implied waiver. Another decision in this district, *Shenwick v. Twitter*, No. 16-cv-0534-JST, 2021 WL 1232451 (N.D. Cal. Mar. 31, 2021), similarly addresses whether the role of counsel can be argued at trial absent production of relevant documents, without any reference to or analysis of the statutory due diligence defense.

[4] Whether these communications are "non-privileged" as the Underwriter Defendants suggest or in fact reflect a limited waiver of the attorney-client privilege is not an issue the Court needs to reach

3

1   discrete redactions reflecting requests for or provision of legal advice contained within produced
2   documents. *Id*. at 10.

3       After careful consideration, the Court determines that the statutory language establishing
4   the defense should be applied holistically, rather than isolating the "belief" factor and finding a
5   waiver of the attorney-client privilege solely on that fragment. *See generally TRW Inc. v.*
6   *Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a
7   statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence,
8   or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker,* 533 U.S. 167,
9   174 (2001)). The pertinent question is:  Did the Underwriter Defendants conduct a reasonable
10  investigation and following that investigation come to a reasonable belief as to the accuracy of the
11  disclosure statements?  From this perspective, if the defense is supported by counsel's
12  participation in the investigation, then documents reflecting that participation, including
13  communications with Defendants as to what they were learning in the investigation, are
14  discoverable.  However, this role does not necessarily give rise to a wider waiver of all attorney-
15  client communications arising out of the investigation.

16      The Court's conclusion is bolstered by its *in-camera* review of the documents.  As
17  described above, the redactions for privilege are discrete, specific statements reflecting an inquiry
18  or response regarding legal advice.  In fact, the approximately 80 privileged documents in dispute
19  actually reflect only 12 unique redactions.  Because the redactions occur within produced
20  documents, the Court is readily able to discern the Underwriter Defendants' lines of demarcation:
21  counsel's comments regarding the factual investigation are produced in support of the
22  reasonableness of the investigation, and only the occasional detour into a colloquy reflecting legal
23  advice is redacted.

24  **III.   CONCLUSION**

25      For the foregoing reasons, including the record of the Underwriter Defendants' production
26  in this action, the Court finds no waiver of the attorney-client privilege pursuant to the

28  on this record.

4

Underwriter Defendants' assertion of the due diligence defense.

The Zymergen Defendants also assert a due diligence defense in which outside counsel had a role and claim the attorney-client privilege over communications with that counsel. Accordingly, the Zymergen Defendants will be held to the same standard: they must demonstrate a rigorous review of their purportedly privileged documents, production of "non-privileged" communications with counsel regarding the investigation and discrete redactions limited to legal advice.

**SO ORDERED.**

Dated: February 6, 2025

SUSAN VAN KEULEN
United States Magistrate Judge