ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
    – and –
JUAN CARLOS SANCHEZ (301834)
PATTON L. JOHNSON (320631)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jsanchez@rgrdlaw.com
pjohnson@rgrdlaw.com

Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BIAO WANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ZYMERGEN INC., et al.,<br><br>Defendants. | Case No. 5:21-cv-06028-PCP<br><br>LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO MODIFY THE CASE SCHEDULE<br><br>Date: July 31, 2025<br>Time: 10:00 a.m.<br>Place: Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

4900-7645-4737.v1

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. RELEVANT STATEMENT OF FACTS ..............................................................................3

    A. Operative Case Schedule .................................................................................................3

    B. The Zymergen Complaint ................................................................................................4

III. ARGUMENT .........................................................................................................................5

    A. Good Cause Exists to Modify the Case Schedule ...........................................................5

        1. Plaintiff Has Been Diligent In Seeking Modification of the Case Schedule ...............5

        2. Good Cause Exists to Modify the Case Schedule to Permit Limited Fact Discovery ...6

        3. Good Cause Exists to Modify the Deadlines for Limited Expert Discovery ...............8

        4. Good Cause Exists to Modify the Case Schedule to Permit the Filing of a Motion for Reconsideration of the Court's Order on the Application of the Attorney-Client Privilege ...11

IV. CONCLUSION ...................................................................................................................12

# TABLE OF AUTHORITIES

Page

**CASES**

*Entangled Media, LLC v. Dropbox Inc.*,
 348 F.R.D. 649 (N.D. Cal. 2025)..........................................................................................5

*Johnson v. Mammoth Recreations, Inc.*,
 975 F.2d 604 (9th Cir. 1992) ...............................................................................................5

*U.S. v. Sanmina Corp.*,
 968 F.3d 1107 (9th Cir. 2020) ...........................................................................................12

*Woods v. Google, Inc.*,
 2014 WL 1321007 (N.D. Cal. Mar. 28, 2014)......................................................................7

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure

 Rule 26(e)........................................................................................................................5, 7
 Rule 60(b) ..........................................................................................................................12
 Rule 16(b) ............................................................................................................................5
 Rule 16(b)(4)........................................................................................................................5

# NOTICE OF MOTION

TO: ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 31, 2025, at 10:00 a.m., before the Honorable P. Casey Pitts, United States District Judge, at the United States District Court, Northern District of California, San Jose Division, 280 South First Street, Courtroom 8, 4th Floor, San Jose, CA 95113, Lead Plaintiff and Class Representative Biao Wang ("Plaintiff"), hereby brings this Motion for Leave to Modify the Case Schedule (the "Motion").

Pursuant to Rule 16 of the Federal Rules of Civil Procedure ("Rule 16"), the Civil Local Rules, and this Court's Standing Order for Civil Cases, Plaintiff seeks leave to modify the case schedule for good cause in light of Zymergen, Inc.'s ("Zymergen" or the "Company") filing of a complaint against its former officer and director defendants accusing them of fraud. Pfefferbaum Decl., Ex. 1.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Daniel J. Pfefferbaum ("Pfefferbaum Decl."), the exhibits thereto, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On August 4, 2021 this action in this Court was initiated against Zymergen and its former officers and directors[1] for violations of the Securities Act of 1933 alleging that the Registration Statement issued in connection with Zymergen's April 2021 initial public offering was rife with

---

[1] The "Individual Defendants" refers collectively to the former CEO, Josh Hoffman, former CFO, Ena Singh, and the "Director Defendants" who made up Zymergen's Board of Directors: Steven Chu, Jay Flatley, Christine Gorjanc, Travis Murdoch, Matthew Ocko, Sandra Peterson, Zach Serber, and Rohit Sharma. "Underwriter Defendants" refers to J.P. Morgan Securities LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, BofA Securities, Inc., UBS Securities LLC, and Lazard Frères & Co. LLC. "VC Defendants" are True Ventures IV, L.P., True Ventures Select I, L.P., True Ventures Select II, L.P., True Ventures Select III, L.P., True Ventures Select IV, L.P., SVF Excalibur (Cayman) Limited, SVF Endurance (Cayman) Limited, SoftBank Vision Fund (AIV M1) L.P., Data Collective II, L.P., and DCVC Opportunity Fund, L.P. (the "Fund Defendants"); as well as True Venture Management, L.L.C., SB Investment Advisers (US) Inc., and DCVC Management Co, LLC (the "Management Company Defendants").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO MODIFY THE CASE SCHEDULE - 5:21-cv-06028-PCP - 1 -
4900-7645-4737.v1

1   material misrepresentations and omissions, which led to its spectacular implosion, hundreds of
2   millions of dollars in investor losses, and ultimately bankruptcy.  There is no credible dispute that
3   the Registration Statement was materially false and misleading, and on September 13, 2024 the
4   SEC confirmed as much in a Cease and Desist Order and imposition of a $30 million fine.

5         Nevertheless, Zymergen and Individual Defendants have, throughout the last four years of
6   litigation, independently and jointly vigorously contested the allegations of falsity and asserted
7   that the Individual Defendants ensured that the Registration was free of material
8   misrepresentations and omissions.  They filed a motion to dismiss on the basis of falsity.
9   Zymergen and the Director Defendants filed a joint Answer denying falsity and asserting
10  affirmative defenses, including of good faith and due diligence.  They filed or served numerous
11  pleadings, discovery responses and expert reports premised on these positions.  And, their
12  perceived non-adversarial posture was critical to the Magistrate Judge's finding that the attorney-
13  client privilege remained intact despite Zymergen's bankruptcy.

14        That changed dramatically on June 6, 2025, after the close of fact and expert discovery,
15  when the ZYM Liquidating Trust, "on behalf of  . . . Zymergen, Inc." sued the Individual
16  Defendants in California Superior Court accusing them of a "massive and systemic fraud" in
17  connection with the IPO Registration Statement.  Ex. 1, ¶1 ("Zymergen Complaint").[2]  Closely
18  mirroring this action, Zymergen alleges that the Registration Statement contained materially false
19  and misleading statements concerning the Company's biofacturing platform, product pipeline,
20  market opportunity, and revenue outlook.  Further, Zymergen alleges that the Individual
21  Defendants knew, or were reckless in not knowing, that these representations were false and
22  misleading.

23        Remarkably, no Defendant made the Court or Plaintiff aware of this significant
24  development.  Plaintiff learned of the Zymergen Complaint on June 16, 2025, and immediately
25  sought updates on Defendants' positions only to be rebuffed or ignored.  But Zymergen's lawsuit

---

[2]   The only Individual Defendant not named as a defendant in the Zymergen Complaint is former director Sandra Peterson.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO MODIFY THE CASE
SCHEDULE - 5:21-cv-06028-PCP - 2 -
4900-7645-4737.v1

against its co-defendants in this action has wide-ranging implications on this litigation which Plaintiff must assess prior to filing and/or opposing dispositive motions. These include, but are not limited to: (i) Defendants' Answers denying the falsity of the Registration Statement and their assertion of affirmative defenses; (ii) Defendants' responses and objections to interrogatories and requests for production of documents; and (iii) Zymergen's continued withholding (and instructions to other Defendants to withhold) documents on the basis of attorney client and/or work product privilege.

Furthermore, multiple expert opinions served by Defendants rely in part on Defendants' (now false) denials of falsity and appear to be materially undermined by the Zymergen Complaint. For example, Zymergen, along with the Individual Defendants, served expert reports opining of the sufficiency of the Registration Statement drafting process and the adequacy of the risk disclosures. The Underwriter Defendants served an expert opinion premised on the accuracy of the Registration Statement. And, the VC Defendants proffered an expert which opined that they provided advice and guidance to management on the Registration Statement that is now alleged by the Company to have been fraudulently prepared by those same executives.

Accordingly, for good cause shown, Plaintiff requests the following modifications to the case schedule: (i) reopen fact and expert discovery for 90 days to permit Plaintiff to take discovery as necessary concerning the allegations in the Zymergen Complaint; (ii) order Defendants to supplement their answers and outstanding discovery responses within 14 days and respond to any newly propounded discovery within 14 days; and (iii) extend the dispositive motion deadline for all parties by 30 days following the close of the requested further discovery period.

## II.  RELEVANT STATEMENT OF FACTS

### A.  Operative Case Schedule

On April 1, 2024, following entry of the operative Second Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF 321) ("SAC"), the Court entered a Case Management Order setting deadlines for this action. ECF 364. Consistent with this schedule, the parties have completed fact discovery, exchanged opening and rebuttal expert reports, and on May 30, 2025 completed expert discovery. The parties were engaged in negotiations concerning

a stipulated schedule for summary judgment and *Daubert* motions, currently due on July 11, 2025, when Plaintiff became aware of the Zymergen Complaint. All Defendants, including Zymergen, have informed Plaintiff that they intend to file a joint or individual summary judgment motion. But Plaintiff should not be required to proceed into the upcoming stages of this litigation without the relief sought in this Motion.

The Court currently has set this action for trial on March 16, 2026.

### B. The Zymergen Complaint

On June 6, 2025, the ZYM Liquidating Trust, on behalf of and as successor in interest to Zymergen, brought suit against the Individual Defendants in Superior Court of the State of California, County of San Francisco. Zymergen alleges that:

> This case arises from a **massive and systemic fraud** at Zymergen in which the Defendants made—and/or allowed Zymergen to make – material misrepresentations in connection with its initial public offering on April 22, 2021 (the "IPO"). **Zymergen misled IPO investors** about, among other things, its overall market potential, revenue prospects, and customer pipeline for its only commercially available product, an electronics film named Hyaline, *in what proved to be unsupported hype unmoored from objective facts*.

Ex. 1, ¶1. The Zymergen Complaint identifies many misrepresentations in the Registration Statement that are also identified as false and misleading in this action. For example:

> The untrue statements of material facts and omissions concerned the Company's biofacturing platform; the Company's ability to create commercially viable products and, to the extent it could, to make such products faster, cheaper and more sustainably using the biofacturing platform; the product development process; the development status of 11 products in the Company's product pipeline; the market opportunity for those products, in particular for Hyaline; and when those products would generate revenue.

Ex. 1, ¶6 (*compare* to SAC, ¶12). Zymergen identifies information known to the Individual Defendants that was improperly omitted from the Registration Statement:

> Specifically, **the Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose**, *inter alia*, that: (i) key customers encountered technical issues in implementing Hyaline into their manufacturing processes; (ii) the Company's commercial teams lacked insight into the qualification process, causing the Company to overestimate demand for Hyaline; (iii) the market opportunity for Hyaline was smaller than the Company had previously represented . . . .

Ex. 1, ¶37. The Zymergen Complaint alleges that the Individual Defendants' misconduct constitutes breach of fiduciary duty, unjust enrichment, and waste of corporate assets. *Id.*, ¶¶163-

185. The Zymergen Complaint alleges that the Individual Defendants caused Zymergen to "lose and expend tens of millions of dollars," including the $30 million fine imposed by the SEC. *Id.*, ¶159. Zymergen seeks to hold the Individual Defendants jointly and severally liable for the damages sustained by Zymergen, as well pre- and post-judgment interest. *Id.* at 60.

### III.    ARGUMENT

#### A.    Good Cause Exists to Modify the Case Schedule

This Court's standing order requires that "[o]nce set, case schedules . . . will only be modified for good cause." Judge P. Casey Pitts Standing Order for Civil Cases at 2. Rule 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "In evaluating diligence for the purposes of Rule 16(b), however, courts generally consider both when the relevant facts were learned and whether the moving party was diligent in seeking discovery of those facts." *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 654 (N.D. Cal. 2025).

##### 1.    Plaintiff Has Been Diligent In Seeking Modification of the Case Schedule

The facts prompting the instant request did not begin to materialize until June 16, 2025, when Plaintiff discovered that the trustee for the ZYM Liquidating Trust filed the Zymergen Complaint in Superior Court of the State of California, County of San Francisco on June 6, 2025. Pfefferbaum Decl., ¶2. Until that time, Plaintiff had aggressively litigated this action against what it believed was a committed adversary in Zymergen who denied all allegations made against it. Immediately upon obtaining the Zymergen Complaint, Plaintiff began assessing the impact of Zymergen's changed position with respect to the falsity of the Registration Statement and the conduct of the Individual Defendants.

On June 18, 2025, just two days after receiving the Zymergen Complaint, Plaintiff wrote to counsel for all Defendants seeking, among other things, that Defendants amend their answers to the operative complaint, produce documents no longer properly subject to privilege, supplement their prior discovery responses pursuant to their ongoing obligations under Fed. R. Civ. P. 26(e),

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO MODIFY THE CASE
SCHEDULE - 5:21-cv-06028-PCP    - 5 -
4900-7645-4737.v1

and withdraw any expert opinions which were no longer operable. Ex. 2. Those defendants that responded refused, others simply ignored Plaintiff's letter. Having failed to obtain any substantive response through direct communication, and with the dispositive motion deadline fast approaching, Plaintiff diligently filed the instant Motion.

Notably, in responding to Plaintiff's letter on June 24, 2025, WilmerHale stated that it was responding only on behalf of the Director Defendants in refusing Plaintiff's requests. Furthermore, despite having represented Zymergen since the inception of this action and on the Court's docket, WilmerHale stated: "We understand that it is the position of the ZYM Liquidating Trust that the plan injunction precludes further litigation against Zymergen . . . such that Zymergen has no further obligation to participate in the litigation." Ex. 3. This position appears to be in direct conflict with WilmerHale's representation to Plaintiff on June 17, 2025, one week prior and after the Zymergen Complaint was filed, that it represented Zymergen and that Zymergen would be filing a motion for summary judgment in this case. Pfefferbaum Decl., ¶3. Given that WilmerHale has not withdrawn its appearance on behalf of Zymergen, it will have to clarify its position for the Court.

### 2. Good Cause Exists to Modify the Case Schedule to Permit Limited Fact Discovery

Zymergen's judicial admission that the Registration Statement was false and misleading, and was a product of the Individual Defendants' knowing or reckless misconduct, creates a drastically different landscape in this litigation that Plaintiff must be afforded the opportunity to assess. This significantly impacts Plaintiff's claims and how it litigates this case at summary judgment and trial, as well as the defenses available to all Defendants. As an initial matter, the Answers of each Defendant must be supplemented or amended. Currently, Zymergen and the Director Defendants served a single combined answer, denying that the Registration Statement contained false and misleading statements and asserting a number of affirmative defenses, among other things, related to falsity, good faith, and due diligence. ECF 374. These parties are now adverse to each other and must file separate Answers, including withdrawing affirmative defenses to the extent applicable. The other Defendant also denied the allegations that the Registration Statement was false and misleading. ECF 368, 369, 373, 423, 424, 426. Given that Zymergen is

in a superior position to assess the accuracy of the Registration Statement, it is unclear if they intend to continue to advance these denials, Plaintiff must be afforded an opportunity to asses any new position (or maintained position in light of new facts) through discovery, as necessary, prior to summary judgment.

With respect to outstanding discovery, Fed. R. Civ. P. 26(e) places an ongoing duty on the Defendants to update their discovery responses. "A party who has . . . responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: [] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e). This obligation does not end with the close of fact discovery. *Woods v. Google, Inc.*, 2014 WL 1321007, at *4 (N.D. Cal. Mar. 28, 2014) ("Rule 26(e) duty to supplement or correct incomplete or incorrect responses does, in fact, extend beyond the discovery cutoff date."). Defendants' existing discovery responses appear to require supplementation. For example, after the IPO Zymergen publicly stated that based on emerging data the market opportunity for Hyaline was smaller than it anticipated during the IPO; one of Plaintiff's interrogatories asked to identify this emerging data. *See*, *e.g.*, SAC, ¶¶182, 196. Zymergen responded stating that the emerging data was "information provided by potential customers" and a report dated June 2021. But the Zymergen Complaint alleges, however, that "the data did exist at the time of the IPO," and was not later-emerging. Ex. 1, ¶23. Similarly, the Director Defendants responded to an interrogatory concerning their purported due diligence affirmative defense claiming to rely upon "their participation in the process that was designed and implemented by Zymergen and its retained professionals."[3] Zymergen however, has now accused these same individuals of "knowing and culpable violation of their obligations as directors and officers of Zymergen, the absence of good faith on their part, or a reckless disregard for their duties to the Company," violating "the Code of Conduct, the Code of Ethics, the Audit Committee Charter, and the Company's corporate governance documents," "gross mismanagement," and distinct lack of "an adequate system of oversight, disclosure controls and procedures, and internal

---

[3] Defendants Hoffman and Singh responded similarly.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO MODIFY THE CASE
SCHEDULE - 5:21-cv-06028-PCP - 7 -
4900-7645-4737.v1

controls." Ex. 1, ¶¶100, 118, 167. In addition, all of the Defendants objected to certain interrogatories and requests for production of documents on the grounds of attorney client or work product privilege. As discussed below, because Zymergen and the Individual Defendants are now adversaries, that privilege no longer applies.

In light of the foregoing, good cause exists for the Court to reopen fact and expert discovery for Plaintiff and the other related relief requested herein.

### 3. Good Cause Exists to Modify the Deadlines for Limited Expert Discovery

The Defendants in this action have each submitted a total of seven reports and rebuttal reports authored by five different experts. Of those reports, four are offered on behalf Zymergen together with the defendants that they have now sued. The basis and credibility of each expert opinion appears to be now at issue in light of the allegations made in the Zymergen Complaint. As an initial matter, the status of these reports is unclear. Zymergen's change in position would certainly appear to place it in conflict with multiple opinions offered on its behalf, so it seems that it would have to withdraw those opinions. Defendants have thus far refused to confirm whether they continue to seek to proffer these reports, whether the testifying experts continue to opine that Zymergen's IPO was, for example, customary and reasonable, or if they have even been made aware of Zymergen's changed positions. The experts that relied on Zymergen's discovery and discovery responses would appear to at least be required to confirm whether they stand by their opinions.

For example, Charles K. Whitehead ("Whitehead"), a Business Law professor at Cornell Law School, offers opinions on behalf of Zymergen, the Individual Defendants, and the VC Defendants, concerning among other things, the process and procedures for drafting the Registration Statement, ostensibly to support their defenses of due diligence and/or reasonable care. Whitehead opines that drafting of certain representations in the Registration Statement was consistent with custom and practice designed to ensure that the Registration Statement did not contain material misrepresentations including reliance on the executives who Zymergen now accuses of fraudulent misconduct. Certainly, as stated above, violating company rules and

charters, gross mismanagement, and the absence of an adequate system of oversight or disclosure controls cannot be standard custom and practice. It is not clear whether the adverse position of the parties he submits his report on behalf of, or the emergence of the allegations, were known to Whitehead at the time of his report, or whether Whitehead maintains such opinions in light of these new facts. If he does intend to offer these opinions, Plaintiff seeks to depose him on the implications of the Zymergen Complaint allegations.

Similarly, Yael Hochberg ("Hochberg"), a Professor of Finance at Rice University, submits an expert opinion on behalf of Zymergen, the Individual Defendants, and the VC Defendants concerning, among other things, what she apparently views as unique risks associated with investing in "platform companies" such as Zymergen.[4] Specifically, Hochberg sets forth what she believes to be the particular risks associated with platform companies, opines that those risks were disclosed in the Registration Statement and that what was disclosed on August 3, 2021, were the very risks warned of by Zymergen in the Registration Statement. Ostensibly, the Defendants seek to offer her opinion in support of their arguments that the Registration Statement was accurate at the time it was issued. The opinions of Hochberg contradict allegations made in the Zymergen Complaint, in particular that the Individual Defendants concealed known material risks and that those risk disclosures in the Registration Statement were false and misleading. It is not clear whether the adverse position of the parties she submits her report on behalf of or the emergence of the allegations were known to Hochberg at the time of her report, or whether Hochberg maintains such opinions in light these new facts. If she does intend to offer these opinions, Plaintiff seeks to depose her on the implications of the Zymergen Complaint allegations.

Gary M. Lawrence ("Lawrence"), an adjunct professor at SMU Dedman School of Law, is proffered as an expert by the Underwriter Defendants to opine that the Underwriters performed adequate due diligence. While Lawrence claims that the sufficiency of due diligence is assessed independent of the accuracy of the Registration Statement, he opines at length at the ways in which

---

[4] Plaintiff will move to exclude this report for a variety of reasons in a *Daubert* motion at the appropriate time.

the Underwriter Defendants' investigation confirmed the representations in the Registration Statement, including by relying on Zymergen, the Individual Defendants, and Zymergen's counsel. He also relies on the Underwriter Defendants' Answer, where the Underwriter Defendants expressly deny that the Registration Statement was false or misleading. It is not clear whether the adverse position of the parties he claims Underwriter Defendants relied on or the emergence of the allegations were known to Lawrence at the time of his report, or whether Lawrence maintains such opinions in light these new facts. If he does intend to offer these opinions, Plaintiff seeks to depose him on the implications of the Zymergen Complaint allegations.

David J. Denis ("Denis"), a Professor of Finance at the University of Pittsburg, submitted an opening and rebuttal expert report on behalf of all Defendants concerning negative causation and damages. In his opening report he provides an opinion based upon assumptions provided by counsel for both Zymergen and the Individual Defendants, who are now in conflict. In particular, Denis states that he was directed by counsel to assume that certain statements in the Registration Statement were not false and misleading when made and/or did not cause the price declines in Zymergen stock on August 4, 2021. In light of Zymergen's new judicial admissions, it would be incongruous for Defendants, especially Zymergen, to continue to proffer this report in this action. Furthermore, it is not clear whether the adverse position of the parties he submits his report on behalf of or the emergence of the allegations were known to Denis at the time of his opening or rebuttal report, or whether Denis maintains such opinions in light these new facts. If he does intend to offer these opinions, Plaintiff seeks to depose him on the implications of the Zymergen Complaint allegations.

Lastly, Professor Ilya Strebulaev ("Strebulaev"), a Professor of Finance at the Stanford University, offers opinions on behalf of the VC Defendants, concerning among other things, that the directors designated by the VC Funds (*i.e.* Defendants Ocko, Murdoch, and Sharma) had a fiduciary duty to all Zymergen shareholders. Indeed, at the motion to dismiss stage the VC Defendants argued that their directors acted with loyalty toward Zymergen. *See*, *e.g.*, ECF 372 at 17. Those same Defendants are now being sued by the Company for breach of fiduciary duties "based on bad faith and intentional, reckless, or disloyal misconduct." Ex. 1, ¶177. It is not clear

whether the adverse position of Zymergen and the VC Defendants' directors, or the emergence of the allegations, were known to Strubulaev at the time of his report, or whether he maintains such opinions in light these new facts. If he does intend to offer these opinions, Plaintiff seeks to depose him on the implications of the Zymergen Complaint allegations.

Plaintiff requests that the expert discovery be reopened for 90 days for the limited purpose of allowing Plaintiff to depose Defendants' experts about the allegations in the Zymergen Complaint, on their opinions and any new opinion they may attempt to offer.

### 4. Good Cause Exists to Modify the Case Schedule to Permit the Filing of a Motion for Reconsideration of the Court's Order on the Application of the Attorney-Client Privilege

On December 12, 2024, Plaintiff challenged the withholding of certain documents by Zymergen and the Director Defendants on the basis of attorney-client privilege and attorney work product. ECF 452. Zymergen, not the Director Defendants, was deemed the holder of the privileges, and thus, the Director Defendants claimed they could not waive Zymergen's privileges. *See* ECF 501; *see also* relevant filings and Court orders at ECF 397, 412, 452, 458, 467, 475, 483, 500, 501, 520, 521, 522, 523, and 524. Among other things, Plaintiff pointed out that it believed Zymergen and the Director Defendants (while showing a unified front to the Court in this litigation), were in fact adverse, based on the Trustee's threats in bankruptcy court filings that it intended to bring causes of action against the Director Defendants. By allowing the Director Defendants to have access to purportedly privileged information in this litigation, Plaintiff argued that such disclosure constituted selective waiver that extinguished Zymergen's privileges. ECF 500 at 4-5. On February 21, 2025, the Court rejected Plaintiff's arguments that a potentially adverse position gives rise to selective waiver, stating that "while it is conceivable that an action may arise from the bankruptcy proceedings that puts Zymergen and the Director Defendants in an adversarial posture, there is no such action at this time, and these Parties are co-defendants in this present litigation." ECF 524 at 5.

The Court's privilege Order by its own terms must be reconsidered based on changed circumstances now that Zymergen and the Individual Defendants are adversaries in Superior Court. Zymergen's admissions in the Zymergen Complaint and the filing of the lawsuit are the

emergence of new material facts that warrant reconsideration. *See* Civ. L.R. 7-9(b) (a showing of reasonable diligence in bringing the motion coupled with the "emergence of new material facts" constitutes grounds for the Court to reconsider a prior order); *see also* Fed. R. Civ. P. 60(b). Zymergen cannot, among other things, maintain its privileges when it selectively allowed the Director Defendants access to, and ongoing access to, the withheld documents, and they will also be subject to discovery in the Superior Court action. *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1120 (9th Cir. 2020) (voluntary disclosure waives the attorney-client privilege and if to an adversary also waives the work-product protection).

The new facts presented by the Zymergen Complaint and lawsuit directly contradict those relied upon by the Magistrate Judge in her prior Order, supporting good cause to modify the case schedule to permit the necessary time for Plaintiff to bring its motion and obtain the improperly withheld documents.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the following relief for good cause shown: (i) reopen fact and expert discovery for 90 days to permit Plaintiff to take discovery as necessary concerning the allegations in the Zymergen Complaint; (ii) order Defendants to supplement their answers and outstanding discovery responses within 14 days and respond to any newly propounded discovery within 14 days; and (iii) extend the dispositive motion deadline for all parties by 30 days following the close of the requested further discovery period.

DATED: June 26, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM

s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com

|   |   |
|---|---|
| 1 |  |
| 2 | ROBBINS GELLER RUDMAN & DOWD LLP |
|   | JUAN CARLOS SANCHEZ |
| 3 | PATTON L. JOHNSON |
|   | 655 West Broadway, Suite 1900 |
| 4 | San Diego, CA  92101 |
|   | Telephone:  619/231-1058 |
| 5 | 619/231-7423 (fax) |
|   | jsanchez@rgrdlaw.com |
| 6 | pjohnson@rgrdlaw.com |
| 7 | Counsel for Plaintiffs |
| 8 |  |
|   | BERMAN TABACCO |
| 9 | NICOLE LAVALLEE (SBN 165755) |
|   | KRISTIN J. MOODY (SBN 206326) |
| 10 | CHRISTINA M. SARRAF (SBN 328028) |
|   | 425 California Street, Suite 2300 |
| 11 | San Francisco, CA  94104 |
|   | Telephone:  415/433-3200 |
| 12 | 415/433-6382 (fax) |
|   | nlavallee@bermantabacco.com |
| 13 | kmoody@bermantabacco.com |
|   | csarraf@bermantabacco.com |
| 14 |  |
|   | BERMAN TABACCO |
| 15 | LESLIE R. STERN |
|   | PATRICK T. EGAN |
| 16 | One Liberty Square |
|   | Boston, MA  02109 |
| 17 | Telephone:  617/542-8300 |
|   | 617/542-1194 (fax) |
| 18 | lstern@bermantabacco.com |
|   | pegan@bermantabacco.com |
| 19 |  |
|   | Counsel for Plaintiff West Palm Beach |
| 20 | Firefighters' Pension Fund |
| 21 | KLAUSNER, KAUFMAN, JENSEN & LEVINSON |
| 22 | ROBERT D. KLAUSNER |
|   | BONNI S. JENSEN |
| 23 | 7080 NW 4th Street |
|   | Plantation, FL  33317 |
| 24 | Telephone:  954/916-1202 |
|   | 954/916-1232 (fax) |
| 25 | bob@robertdklausner.com |
|   | bonni@robertdklausner.com |
| 26 |  |
|   | Board Counsel for Plaintiff West Palm Beach |
| 27 | Firefighters' Pension Fund |
| 28 |  |