ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
         – and –
JUAN CARLOS SANCHEZ (301834)
PATTON L. JOHNSON (320631)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
jsanchez@rgrdlaw.com
pjohnson@rgrdlaw.com

Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BIAO WANG, Individually and on Behalf of All Others Similarly Situated,<br><br>                          Plaintiff,<br><br>        vs.<br><br>ZYMERGEN INC., et al.,<br><br>                          Defendants. | Case No. 5:21-cv-06028-PCP<br><br>LEAD PLAINTIFF'S OMNIBUS OPPOSITION TO MOTIONS FOR STAY<br><br>Date:   July 31, 2025<br>Time:   10:00 a.m.<br>Place:  Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. APPLICABLE BACKGROUND ..........................................................................2

    A. The Court Certifies This Action as a Class Action, Including §15 Claims ............3

    B. The Second Amended Complaint Is Upheld Against the VC Defendants; Plaintiff Informs VC Defendants that Second Class Certification Motion Is Unnecessary ........................................................................................................4

III. LEGAL STANDARD ............................................................................................6

IV. ARGUMENT .........................................................................................................6

    A. The Class Claims Against Zymergen, the Individual Defendants, and the Underwriter Defendants Should Proceed ..............................................................6

        1. The Class Claims Against Zymergen, the Individual and Underwriter Defendants Are Unaffected by the 23(f) Appeal .....................7

        2. The Individual and Underwriter Defendants Will Not Be Harmed by Proceeding ........................................................................................8

    B. The Claims Against the VC Defendants Should Proceed .....................................10

        1. Defendants Have Not Shown that They Are Entitled to a Stay Under the *Nken* Factors ..............................................................................11

            a. Defendants Cannot Show Irreparable Harm ....................................11

            b. Defendants Are Not Likely to Succeed on the Merits Which Are Purely Procedural ...........................................................12

            c. Public Interests Weigh in Plaintiff's Favor ....................................15

            d. Plaintiff Will be Harmed By Further Delay ....................................16

    C. This Case Will Proceed Through Summary Judgment and Trial Regardless of the Outcome of the 23(f) Appeal ....................................................................17

    D. Defendants' Attempt to Argue the Merits Demonstrates They Have No Credible Basis to Decertify the Class Based on Traceability ................................18

V. CONCLUSION ....................................................................................................19

**CASES**

*Adams v. Postmates, Inc.*,
   2020 WL 1066980 (N.D. Cal. Mar. 5, 2020) .........................................................11

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ......................................................................6, 12

*Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*,
   2017 WL 2378060 (N.D. Cal. June 1, 2017) ...................................................6, 11

*Bally v. State Farm Life Ins. Co.*,
   2020 WL 3035781 (N.D. Cal. June 5, 2020) ...........................................10, 11, 15

*Bates v. Bankers Life & Cas. Co.*,
   848 F.3d 1236 (9th Cir. 2017) .......................................................................17

*Buckingham v. Sec'y of U.S. Dep't of Agric.*,
   603 F.3d 1073 (9th Cir. 2010) .......................................................................14

*Cal. v. Azar*,
   911 F.3d 558 (9th Cir. 2018) ..........................................................................9

*Davidson v. O'Reilly Auto Enters., LLC*,
   968 F.3d 955 (9th Cir. 2020) ...........................................................................7

*DBD Credit Funding LLC v. Silicon Lab'ys, Inc.*,
   2016 WL 6893882 (N.D. Cal. Nov. 23, 2016) ....................................................11

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
   498 F.3d 1059 (9th Cir. 2007) .......................................................................16

*Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*,
   445 U.S. 326 (1980) ......................................................................................17

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) .........................................................................9

*Duncan v. Bonta*,
   83 F.4th 803 (9th Cir. 2023) ...........................................................................6

*Garvey v. Kmart Corp.*,
   2012 WL 12919626 (N.D. Cal. Aug. 22, 2012) ............................................10, 18

*Guifu Li v. A Perfect Franchise, Inc.*,
   2011 WL 2293221 (N.D. Cal. June 8, 2011) .....................................................11

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ............................................................................12

*In re Facebook Biometric Info. Priv. Litig.*,
  2018 WL 2412176 (N.D. Cal. May 29, 2018) .................................................11

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  208 F.R.D. 1 (D.D.C. 2002) ............................................................................11

*In re Packaged Seafood Prods. Antitrust Litig.*,
  2020 WL 2745231 (S.D. Cal. May 27, 2020) .................................................10

*In re Petrobras Secs.*,
  193 F. Supp. 3d 313 (S.D.N.Y. 2016) .............................................10, 15, 18

*In re PG&E Corp. Sec. Litig.*,
  100 F.4th 1076 (9th Cir. 2024) ..................................................7, 15, 16

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012) .........................................................................8

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................6, 7

*Lathrop v. Uber Techs., Inc.*,
  2016 WL 97511 (N.D. Cal. Jan. 8, 2016) ......................................................16

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ...........................................................................6

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ...................................................................7, 11

*M.B. v. Corsi*,
  2018 WL 5504178 (W.D. Mo. Oct. 29, 2018) ...........................................10, 15

*Marlo v. UPS, Inc.*,
  639 F.3d 942 (9th Cir. 2011) .........................................................................14

*Microsoft Corp. v. Baker*,
  582 U.S. 23 (2017) ...................................................................................15, 17

*Mohamed v. Uber Techs., et al*,
  115 F. Supp. 3d 1024 (N.D. Cal. 2015) .........................................................11

|  | Page |
|---|---|

*Nken v. Holder,*
    556 U.S. 418 (2009)..................................................................6, 9, 11, 15

*Pavelic & LeFlore v. Marvel Ent. Grp.,*
    493 U.S. 120 (1989)..........................................................................14

*Pirani v. Slack Techs., Inc.,*
    127 F.4th 1183 (9th Cir. 2025) .......................................................19

*Pitts v. Terrible Herbst, Inc.,*
    653 F.3d 1081 (9th Cir. 2011) ....................................................10, 17

*Ramos v. Cap. One, N.A.,*
    2017 WL 895635 (N.D. Cal. Mar. 7, 2017)....................................16

*Rhines v. Weber,*
    544 U.S. 269 (2005)............................................................................8

*Roseman v. Bloomberg L.P.,*
    2017 WL 5176379 (S.D.N.Y. Nov. 7, 2017) ...................................10

*Sampson v. Murray,*
    415 U.S. 61 (1974)............................................................................11

*Sarieddine v. Connected Int'l Inc.,*
    2025 WL 958204 (E.D. Cal. Mar. 31, 2025)..................................7, 9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010)....................................................................13, 14

*Shenzhenshi Haitiecheng Sci. & Tech. Co., Ltd. v. Rearden LLC,*
    2017 WL 6059039 (N.D. Cal. Dec. 6, 2017).............................6, 12, 13

*Somers v. Apple, Inc.,*
    729 F.3d 953 (9th Cir. 2013) ...........................................................18

*Tinsley v. McKay,*
    2018 WL 11352146 (D. Ariz. Feb. 13, 2018)..........................10, 14, 15

*Wang v. Data Collective II, LP et al.,*
    25-1875, Dkt. 1.1 ................................................................................5

                                                                                           **Page**

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................3, 4, 13, 14
    Rule 23(a).............................................................................................3, 4, 5
    Rule 23(b)(3) ..............................................................................................4
    Rule 23(c)(1)(A) ........................................................................................13
    Rule 23(c)(1)(C) ...........................................................................7, 10, 14
    Rule 23(f) ...........................................................................1, 5, 10, 15
    Rule 26(f)......................................................................................................4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As ordered by the Court, Lead Plaintiff and Class Representative Biao Wang, on behalf of himself and the certified class ("Plaintiff"), hereby submits this omnibus opposition to the DCVC, True Ventures, and SoftBank Defendants' Notice of Motion and Motion to Stay Pending Appeal; Memorandum of Points and Authorities in Support Thereof (ECF 553) ("VC Mot."), the Underwriter Defendants' Motion to Stay Proceedings Pending Appeal (ECF 555) ("UW Mot."), and the Individual Defendants' Joinder in Underwriter Defendants' Motion to Stay Proceedings Pending Appeal (ECF 556).[1]  ECF 559.

## I.     INTRODUCTION

A stay of proceedings is entirely unwarranted and solely designed to delay the impending resolution of this long pending action.  As this Court is well aware, instead of setting forth their arguments against class certification in a motion to decertify as this Court suggested, the VC Defendants have now launched an interlocutory appeal to the Ninth Circuit in an attempt to force a second, redundant round of class certification briefing.  But as shown in this opposition, the grant of this Rule 23(f) appeal and Defendants' arguments fall far short of what is required for a stay.

Zymergen, the Individual Defendants and the Underwriter Defendants, all engaged in extensive class certification discovery from plaintiffs during 2023.  They all elected to inform the Court that in light of the factual record developed they do not oppose class certification and subsequently approved the contents of the notice provided to members of the class.  They have never moved to decertify the class, and none of them joined the VC Defendants' Rule 23(f) petition.  Instead, they all proceeded through fact and expert discovery and proposed a schedule for summary judgment and *Daubert* proceedings.  The certified class as it pertains to these

---

[1]     "Individual Defendants" refers to Joshua Hoffman, Enakshi Singh, Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber and Rohit Sharma.  "Underwriter Defendants" refers to J.P. Morgan Securities LLC, Goldman Sachs & Co. LLC, Cowen and Company, LLC, BofA Securities, Inc., UBS Securities LLC, and Lazard Frères & Co. LLC.  "VC Defendants" refers to Data Collective II, L.P., DCVC Opportunity Fund, L.P., and DCVC Management Co, LLC (the "DCVC Defendants" or "DCVC"), Defendants True Ventures IV, L.P., True Ventures Select I, L.P., True Ventures Select II, L.P., True Ventures Select III, L.P., True Ventures Select IV, L.P., and True Venture Management, L.L.C. (the "True Ventures Defendants" or "True Ventures"), and Defendants SVF Excalibur (Cayman) Limited, SVF Endurance (Cayman) Limited, SoftBank Vision Fund (AIV M1) LP, and SB Investment Advisers (US) Inc. (the "SoftBank Defendants" or "SoftBank").

Defendants will not be disturbed by any ruling of the Ninth Circuit. That these defendants prefer to sit on the sidelines, when they could move to decertify at any time speaks volumes about the weakness of the merits of VC Defendants' arguments.

While the Ninth Circuit has accepted the VC Defendants' petition, for nearly a year since the Court denied their motions to dismiss the VC Defendants have actively litigated this case. Despite their purported concerns over costs and efficiency, they failed to bring any motion with respect to class certification until *after the close of fact discovery*. They also rejected the Court's invitation to most efficiently advance their arguments by filing a motion to decertify and elected instead to pursue a roundabout 23(f) appeal. It is thus unsurprising that they cannot satisfy the factors necessary to support a stay. While the VC Defendants distort the issues on interlocutory appeal, the fact remains that even if they are successful, this Court, not the Ninth Circuit, will assess their arguments against certification. This is no different than the normal course of class actions, where class certification can be revisited any time before final judgment, and so the stay serves no purpose other than delay. And further still, even if VC Defendants are successful with their tracing arguments before this Court, this action will still move forward as a class action comprised of those investors who purchased "pursuant" to the Registration Statement.

Five years have already passed since Defendants raised half a billion dollars from the plaintiff class via an admittedly false Registration Statement. Granting a stay and delaying the case for a purely gratuitous appeal is prejudicial and unjust, especially as Plaintiff must now sort through the impact of Zymergen's new litigation position that its former officers and directors engaged in *a massive and systemic* fraud. Because this case will continue as a class action even if the VC Defendants prevail on both their interlocutory appeal and their subsequent merits arguments – and they present zero evidence that they will – the Court should deny the motions to stay, allow Plaintiff to re-open limited discovery, and proceed to summary judgment and trial.

## II.    APPLICABLE BACKGROUND

Plaintiff filed its First Amended Complaint in this action on February 24, 2022, pleading §11 claims against Zymergen, its former officers and directors, and the underwriters, and §15 control claims against the former officers and directors and the VC Funds. ECF 78. The VC

Funds filed Motions to Dismiss thereafter, and the Court granted that motion as to the §15 control claims on November 29, 2022 with leave to amend, explicitly stating that Plaintiff was permitted to replead these claims if new evidence arose in discovery. ECF 135, 136, 137, 162 at 4. During this time, the VC Funds were subject to discovery from Plaintiff and participated by way of Zymergen's former directors that they placed on Zymergen's Board, Defendants Ocko, Sharma, and Murdoch.

### A. The Court Certifies This Action as a Class Action, Including §15 Claims

On April 6, 2023, Plaintiff filed a Motion to Certify Class, Appoint Class Representative, and Appoint Class Counsel, seeking to certify its §11 and §15 claims. Plaintiff set forth that each of the Rule 23(a) (*i.e.*, numerosity, commonality, typicality and adequacy) and 23(b)(3) requirements (*i.e.,* predominance and superiority) were readily satisfied by the facts and record evidence in this action. ECF 180. All Defendants at that time, including Defendant Ocko – who owns and controls DCVC – actively participated in seeking class discovery. *See* ECF 371 at 16-17. After taking discovery, these Defendants filed a Statement of Non-Opposition to Lead Plaintiff's Motion for Class Certification, which stated that their non-opposition was made "in light of the factual record developed as of the date of this Notice."[2] ECF 188 at 1. Judge Chhabria, then presiding over this action, noted the suitability of Securities Act cases for certification.[3] ECF 180. He proceeded to certify the following class:

> As the motion defines it, the certified class consists of persons and entities that purchased or otherwise acquired Zymergen Inc. common stock pursuant and/or traceable to the registration statement and prospectus issued in connection with Zymergen's April 2021 initial public offering.

ECF 194. Defendants approved the contents of Plaintiff's Proposal for Dissemination of Notice to the Class (ECF 204), the Court found that it met the requirements of Rule 23 and of due process

---

[2] The Defendants also aggressively sought discovery from West Palm Beach despite its non-representative status as a named plaintiff.

[3] At the hearing the Court stated that for securities class actions "What do you think you're going to be able to argue to defeat class certification? Isn't it in everybody's interest to just agree to class certification and get on with the merits?" Aug. 10, 2023 Tr., ECF 267 at 4:22-25. To which Defendants' representative stated "That is correct. That is what we concluded." *Id.* at 5:4.

1  (ECF 209), and notice was provided to all members of the class.  A website was also established

2  to keep the class appraised of major developments (www.zymergensecuritieslitigation.com).

3  **B.  The Second Amended Complaint Is Upheld Against the VC Defendants; Plaintiff Informs VC Defendants that Second Class Certification Motion Is Unnecessary**

4

5  On December 21, 2023, Plaintiff filed a motion for leave to file the Second Amended Class

6  Action Complaint for Violations of the Federal Securities Laws ("SAC"), re-pleading control

7  allegations against the VC Funds and named the management companies that control them as

8  additional defendants, based on documents obtained from these and other Defendants which were

9  unavailable to Plaintiff when filing the prior complaint and contradicted the arguments they had

10  previously made to the Court.  ECF 321 at ¶¶74-132.  The VC Defendants each separately opposed

11  Plaintiff's motion seeking leave to file the amended complaint on grounds of futility.  ECF 292,

12  296, 299.  They then each separately moved to dismiss the SAC in both opening and reply briefs

13  (ECF 370, 371, 372, 382, 383, 384).  Pertinent here, despite being early-stage investors with full

14  knowledge of the IPO lockup in effect on non-registered shares (including their own shares), the

15  VC Defendants did not mention traceability a single time in their nine briefs.  On August 14, 2024,

16  the Court denied the motions (as to nearly all claims alleged), thus adding the VC Defendants back

17  as parties to this action. ECF 395.

18  On September 4, 2024, Plaintiff and VC Defendants completed the Rule 26(f) conference

19  as a precursor to discovery.  As documented in the Further Joint Case Management Conference

20  Statement Re: VC Defendants (ECF 400), Plaintiff informed the VC Defendants that a second

21  class certification motion was unnecessary because the class composition and its ability to meet

22  the Rule 23 factors was unchanged by their addition to the case.  "Plaintiff's Position" stated "this

23  Court found that the requirements of Rule 23(a) and 23(b)(3) were satisfied; nothing about the

24  addition of the VC Defendants changes that determination regarding e.g., numerosity, typicality,

25  adequacy, etc."  ECF 400 at 9-10.

26  Without bringing their purported issues concerning class certification to the Court, the VC

27  Defendants proceeded to aggressively pursue merits discovery to support their defenses and resist

28  Plaintiff's discovery efforts.  They exchanged discovery responses and voluminous document

productions, attended depositions, moved to depose both the Lead Plaintiff and named plaintiff a second time (ECF 440, 447), served multiple sets of overlapping interrogatories, engaged in briefing related to multiple discovery disputes (ECF 495, 497, 509, 511, 528, 529, 543), filed unsuccessful motions attempting to remove the management companies as parties (ECF 399, 406), and unsuccessfully sought to extend fact discovery (ECF 529).

On February 28, 2025, the VC Defendants filed a Motion to Set Briefing Schedule seeking that the Court order Plaintiff to file another motion to certify this action as a class action. ECF 528. On March 6, 2025, Court denied the Motion to Set Briefing Schedule and instructed the VC Defendants that the proper avenue for them to challenge certification was a motion to decertify the class, suggesting that Plaintiff would still have the burden of proof at that time. Mar. 6, 2025 Tr., ECF 538 at 9:24-10:10. *See also* ECF 536.

Despite the Court's guidance, on March 20, 2025, the VC Defendants mislabeled the Court's minute order on their briefing request as an order certifying a class and filed a Petition for Permission to Appeal Under Rule 23(f) in the United States Court of Appeals for the Ninth Circuit. *Wang v. Data Collective II, LP et al.*, 25-1875 ("23(f) Petition"), Dkt. 1.1. The reasons for granting review that VC Defendants put forward are that this Court purportedly committed manifest error in (1) "automatically expanding an earlier certification order to new claims against new defendants;" and (2) not giving VC Defendants the "opportunity, required by due process, to brief class certification before any class was certified against them." *Id.* at 13, 19. The VC Defendants also claimed that had they been given the opportunity to contest class certification there were "serious arguments" that "might have persuaded the district court not to certify the class." *Id.* at 25. The petition makes no reference to any Rule 23(a) or 23(b) requirements, and does not ask the Ninth Circuit to decertify the existing class. The Ninth Circuit granted the petition and issued a Scheduling Order that designated briefing to end on October 24, 2025.[4] ECF 550; 23(f) Petition, Dkt. 2.1.

___

[4] Because the Ninth Circuit provides streamlined briefing extensions of 30 days, briefing is unlikely to completed by the end of October 2025. Federal Rules of Appellate Procedure, Ninth Circuit Rule 31-2.2.

III.     **LEGAL STANDARD**

The proper standard for evaluating a motion to stay pending an appeal of class certification is set forth in *Nken v. Holder*, 556 U.S. 418 (2009). *See Duncan v. Bonta*, 83 F.4th 803 (9th Cir. 2023); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (same). Under the *Nken* standard:

> a court considers four factors, "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

*Nken*, 556 U.S. at 426.[5] "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.[6]

IV.     **ARGUMENT**

A.     **The Class Claims Against Zymergen, the Individual Defendants, and the Underwriter Defendants Should Proceed**

The Underwriter Defendants (and the Individual Defendants who filed a joinder with them) seek to stay the entirety of this case pending the outcome of the VC Defendants' appeal. As a matter of common sense, their motion should be rejected out-of-hand as they refuse to advance the arguments against certification purportedly available to them, instead seeking an indefinite stay of this entire litigation. Furthermore, these defendants cannot demonstrate the most important element under *Nken* – irreparable harm. "[I]f the petitioner has not made a certain threshold showing regarding irreparable harm . . . then a stay may not issue, ***regardless of the petitioner's proof regarding the other stay factors***." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). To meet this threshold, a movant """"must show that an irreparable injury is ***the more probable or likely outcome***."""" *Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, 2017 WL 2378060, at *4 (N.D. Cal. June 1, 2017); *Shenzhenshi Haitiecheng Sci. & Tech. Co., Ltd. v. Rearden LLC*, 2017 WL 6059039, at *2 (N.D. Cal. Dec. 6, 2017) ("'Speculative injury cannot be the basis for a finding of irreparable harm.'"). Even under the alternative standard, *Landis*, "the

---

[5]     Emphasis is added and citations are omitted throughout unless otherwise indicated.

[6]     An alternative standard is also set forth in *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). As there is substantial overlap between these too standards, the outcome here under either is the same.

party seeking a stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1087 (9th Cir. 2024).

### 1. The Class Claims Against Zymergen, the Individual and Underwriter Defendants Are Unaffected by the 23(f) Appeal

The Individual and Underwriter Defendants fail to demonstrate any likelihood of success on the merits of the interlocutory appeal because they are not party to it. Plaintiff has brought §11 claims against Zymergen, the Individual Defendants and the Underwriter Defendants for their roles in the issuance of the false and misleading April 2021 IPO Registration Statement. Plaintiff has further brought §15 claims against the Individual Defendants for their control over Zymergen. The VC Defendants' 23(f) appeal has no bearing on these certified class claims which will all continue as currently situated.

First, the Individual and Underwriter defendants were not parties to the VC Defendants' Motion to Set Briefing Schedule on Class Certification, they are not parties to the pending interlocutory appeal, and resolution of the appeal even in the VC Defendants' favor, will not impact the certified class claims against them. *See Sarieddine v. Connected Int'l Inc.*, 2025 WL 958204, at *3 (E.D. Cal. Mar. 31, 2025) ("A *Landis* stay is inappropriate if another proceeding is 'unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court.'") (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1113 (9th Cir. 2005)).

Second, if the Individual and Underwriter Defendants believe there are meritorious arguments against certification, they can bring a motion to decertify at any time. *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 964 n. 7 (9th Cir. 2020) ("parties may move a district court to alter or amend an order granting or denying class certification at any time 'before final judgment'") (quoting Rule 23(c)(1)(C)). The Individual and Underwriter Defendants engaged in six months of discovery from Plaintiff, obtaining document productions, interrogatory responses and deposition testimony. They filed a non-opposition to class certification but reserved their rights to "decertify any class or any portion of any class that the Court may certify" to the extent "warranted by legal or factual developments that occur or that Defendants become aware of after the date of this filing." ECF 188 at 1. Yet these Defendants proceeded through class notice, fact

discovery and expert discovery, completely silent as to traceability or any other issue affecting the composition of the Class. They pursued no discovery from third parties concerning transactions in unregistered shares and submitted no expert report addressing any aspect of traceability. Regardless of how the Ninth Circuit resolves the present interlocutory appeal with respect to the VC Defendants, there can be no dispute that the Individual and Underwriter Defendants have an avenue for recourse right now and choose not to use it.

Third, the Individual and Underwriter Defendants efforts to wait on the VC Defendants' merits arguments are transparently dilatory. The Individual and Underwriter Defendants are fully capable of protecting their own interests and advancing arguments concerning traceability. In fact, these defendants are ***better*** positioned to bring a motion concerning purported trading in unregistered shares than the VC Defendants. Indeed, the Underwriter Defendants structured the IPO, reorganized the company into a public company, and were the ones who obtained the lockup agreements on non-registered shares. *See* §IV.D, *infra*. If there was any merit to the tracing arguments, these sophisticated Defendants' failure to bring them to the Court's attention is inexplicable. As for the Individual Defendants, Matthew Ocko is represented by Gibson Dunn, the same attorneys that represent DCVC and who have appealed to the Ninth Circuit on the VC Defendants' behalf. ECF 493. Thus, he especially, could bring the "serious questions" dangled by the VC Defendants to the Court without delay. If the Individual and Underwriter Defendants have arguments they believe to be meritorious, they should present them in a motion to decertify; waiting for the VC Defendants to do the same is not a valid basis for a stay. *Rhines v. Weber*, 544 U.S. 269, 278 (2005) ("[I]f a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.").

### 2. The Individual and Underwriter Defendants Will Not Be Harmed by Proceeding

The Individual and Underwriters cannot substantiate any irreparable injury they would suffer in the absence of a stay. The Ninth Circuit has stated that "[i]n analyzing whether there is a probability of irreparable injury, we also focus on the ***individualized nature of irreparable harm***." *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012) (denying stay as to other interested

parties that were not directly impacted by appeal). The Underwriter Defendants make no showing of probable and irreparable injury to themselves (or the Individual Defendants seeking to join them). They claim that VC Defendants "face the same question as all other defendants" and therefore (for some unstated reason) the case against the Individual and Underwriter Defendants should not move forward. UW Mot. at 8. But other than conclusory recitals of problems with bifurcation generally, they make no effort to show what harms will befall the Underwriter or Individual Defendants, specifically, or identify any way in which their defense would be hampered. UW Mot. at 6. To the extent that the Underwriters appear to argue that the VC Defendants would somehow be harmed by them proceeding through summary judgment and trial (UW Mot. at 6), such speculative harms to other parties does nothing to support the Underwriter Defendants' motion. "After all, the *Nken* irreparable harm standard is 'whether ***the applicant*** will be irreparably injured absent a stay.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) (emphasis in original).

Plaintiff can efficiently proceed to summary judgment and trial against Zymergen, the Individual Defendants, and the Underwriter Defendants. *See Sarieddine*, 2025 WL 958204, at *3 (denying stay based on the "Ninth Circuit's repeated admonition . . . 'not to delay trial preparation to await an interim ruling'" that "involve[s] a limited review of the factual record") (quoting *Cal. v. Azar*, 911 F.3d 558, 583-84 (9th Cir. 2018)). Indeed, the Court even inquired as why an approach that tried the §11 liability claims prior to the control and *respondeat superior* claims would not be preferable in this action. Oct. 31, 2024 Tr., ECF 445 at 23:10-24:4. As is demonstrated by the VC Defendants' control-related allegations in the SAC, the facts supporting the claims against them concern, among other things, their ownership stakes in Zymergen, the rights they obtained and exercised in exchange for their investments, and the relationships between them and their respective employees/agents on the Board of Directors. SAC, ¶¶74-132. These issues are separate and distinct from whether the Registration Statement was false and misleading or whether those misrepresentations were material to investors.

## B.    The Claims Against the VC Defendants Should Proceed

As an initial matter, the VC Defendants' motion to stay is premised on an inaccurate characterization of their 23(f) appeal.  They contend that "the Ninth Circuit's grant indicates a serious likelihood that it will vacate this Court's class certification order" and advance certain factual arguments that they claim "underscores that class treatment is inappropriate."  VC Mot. at 2, 7.  But class treatment is not on appeal.  Pursuant to VC Defendants' own petition, the reasons for granting review are only to decide: (1) the class certification's ***applicability to VC Defendants***; and (2) ***their opportunity to oppose*** it.  23(f) Petition, Dkt. 1.1 at 13, 19.  Thus, at best, the VC Defendants' appeal may result in Plaintiff re-filing an opening class certification motion on the same basis as he did in 2023 when the Court previously certified §§11 and 15 claims.  And even assuming, *arguendo*, that the VC Defendants were to prevail on their merits arguments, this action will still proceed as a class action.  *See* §IV.C, *infra*.

VC Defendants' misconstruction of their own appeal lays bare that the purpose of their motion is delay.  *See In re Packaged Seafood Prods. Antitrust Litig.*, 2020 WL 2745231, at *7 (S.D. Cal. May 27, 2020) (Denying stay because "'questions raised in summary judgment motions are not identical to questions presented in Rule 23(f) appeals, which are necessarily confined to class certification.'").  "'[A] plaintiff who brings a class action presents two separate issues for judicial resolution.  One is the claim on the merits; the other is the claim that he is entitled to represent a class.'"  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1089 (9th Cir. 2011).  If the Court has to alter or amend the class certification order at some future point after the Ninth Circuit rules, this is no different than the normal rules, as "[a]n order that grants or denies class certification may be altered or amended before final judgment."  Rule 23(c)(1)(C).  Indeed, courts regularly deny motions to stay after a Rule 23(f) petition grant for similar reasons.  *See e.g.*, *Bally v. State Farm Life Ins. Co.*, 2020 WL 3035781, at *7 (N.D. Cal. June 5, 2020); *Garvey v. Kmart Corp.*, 2012 WL 12919626, at *1 (N.D. Cal. Aug. 22, 2012); *Tinsley v. McKay*, 2018 WL 11352146, at *2 (D. Ariz. Feb. 13, 2018); *Roseman v. Bloomberg L.P.*, 2017 WL 5176379, at *2 (S.D.N.Y. Nov. 7,

2017); *In re Petrobras Secs.*, 193 F. Supp. 3d 313, 316 (S.D.N.Y. 2016); *M.B. v. Corsi*, 2018 WL 5504178, at *3 (W.D. Mo. Oct. 29, 2018).[7]

### 1. Defendants Have Not Shown that They Are Entitled to a Stay Under the *Nken* Factors

#### a. Defendants Cannot Show Irreparable Harm

Continued litigation does not constitute irreparable harm. "The Supreme Court has stressed that the '[t]he key word in this consideration is irreparable,' and so '[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.'" *Arabian Gas & Oil*, 2017 WL 2378060, at *4 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The Ninth Circuit has held specifically that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1112. Indeed, "nearly all courts 'have concluded that incurring litigation expenses does not amount to an irreparable harm.'" *Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1032–33 (N.D. Cal. 2015).[8] Even Defendants' cited case stands for this proposition. *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002) ("litigation expenses alone do not necessarily qualify as irreparable harm").

Like the other Defendants, VC Defendants' purported concern over costs is belied by their litigation strategy. During fact discovery the VC Defendants vigorously litigated this case, including bringing multiple issues to the Court for resolution, such as moving to depose Plaintiff and named plaintiff each for a second time (ECF 440, 447) or discovery on statute of limitations

---

[7]    Previously, VC Defendants requested through a 1292(b) motion for this Court to certify interlocutory appeal. ECF 399. During the hearing for that motion, VC Defendants denied that an interlocutory appeal would slow down the case saying "I want to be super clear, ***hold us to it***. No one is slowing this case down. We didn't seek a stay. We're not looking to move the schedule. There's a deadline in January. There's another deadline in March." Oct. 31, 2024 Tr., ECF 445 at 9:4-9. Incredibly, now with an interlocutory appeal in hand, and one that is much more narrow than the 1292(b) motion that impacted their entire liability, they seek to stay these same deadlines.

[8]    *See also Adams v. Postmates, Inc.*, 2020 WL 1066980, at *5 (N.D. Cal. Mar. 5, 2020); *In re Facebook Biometric Info. Priv. Litig.*, 2018 WL 2412176, at *1 (N.D. Cal. May 29, 2018); *Bally*, 2020 WL 3035781, at *5; *Guifu Li v. A Perfect Franchise, Inc.*, 2011 WL 2293221, at *4 (N.D. Cal. June 8, 2011); *DBD Credit Funding LLC v. Silicon Lab'ys, Inc.*, 2016 WL 6893882, at *12 (N.D. Cal. Nov. 23, 2016).

issues where the Court already ruled against them (ECF 495, 511, 515).  Only after fact discovery concluded did VC Defendants raise the class certification issue, in a dubious motion to set a briefing schedule.  ECF 528.  In denying that scheduling motion on March 6, 2025, the Court stated that a motion to decertify the Class "would be the best and most economical way to present all of these issues and to get this figured out."  Mar. 6, 2025 Tr., ECF 538 at 11:21-23.  Instead of following the Court's advice, the VC Defendants deliberately pursued the most circuitous and expensive route of a 23(f) appeal while litigation costs continue to climb.  The VC Defendants retained multiple experts, proffering both opening and rebuttal reports, at astronomical rates (*e.g.*, $1,725 an hour), and sought in-person depositions for all four of Plaintiff's experts, with multiple attorneys for each VC Defendant present and leading the questioning.

Nothing about the conduct of the VCs in this action would suggests that avoiding litigation costs is a priority.  And now, even as the Ninth Circuit will not reach the merits of class certification, VC Defendants still have not filed the motion that would expeditiously resolve their purported denial of constitutional due process.  That VC Defendants would now be irreparably harmed when they have chosen the least efficient way to resolve their grievances is plainly a litigation strategy to achieve delay.  *Wolf*, 952 F.3d at 1008 ("'[S]elf-inflicted wounds are not irreparable injury.'").[9]

### b. Defendants Are Not Likely to Succeed on the Merits Which Are Purely Procedural

The Court should reject VC Defendants' conclusory arguments that they are likely to succeed on the merits.  Other than relying on the 23(f) grant, VC Defendants make no other argument that they will succeed on the merits, and for good reason – there is no authority.  VC Defendants cite only *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) claiming it stands for the proposition that "Due Process Clause requires notice and an opportunity to be heard before a class can be certified against a defendant."  VC Mot. at 6.  But this Court already found that the

---

[9]    VC Defendants make no showing as to what constitutes "harm" other than litigation costs in having to litigate on two fronts.  But "[t]he Court cannot grant a stay based on speculation," and the fact that there is an appeal pending at the same time as litigation in this Court is a product of their own making.  *Rearden*, 2017 WL 6059039, at *2.

case does not stand for this proposition.  Mar. 6, 2025 Tr., ECF 538 at 9.  First, unlike here, the due process violation in *In re Am. Med. Sys., Inc*. comprised multiple substantive issues, including the lack of opportunity to respond to the complaint, conduct discovery, submit briefs, ***and*** finally, to seek a hearing on class action issues.  Second, as the Court already recognized, defendants in *In re Am. Med. Sys., Inc.* "weren't given the opportunity to file a motion to decertify," exactly opposite of what the VC Defendants have been able to do here for almost a year.  Mar. 6, 2025 Tr., ECF 538 at 9:18-19; *See Rearden*, 2017 WL 6059039, at *1 (Concluding that "the Court has no legal basis to grant a stay" because "VGH offers no additional authority or information distinct from that which it presented [to the district court].").  While the VC Defendants argue that every time a new defendant is added to a class action, the class needs to file a new class certification motion, they provide no authority – whether statutory or judicially constructed – for such a proposition.[10]  VC Mot. at 6.

Plaintiff can show ample authority as to why VC Defendants' appeal will likely fail on the merits.  As noted above, the "merits" to consider are the class certification's applicability to the VC Defendants and their opportunity to oppose it.  But class certification is not about the defendants.  Indeed, not one factor in Rule 23 looks at the defendants; the focus is entirely on the unity of the plaintiff class – and here the Class here was unchanged by the addition of the VC Defendants to the already existing §15 claims.  The Supreme Court has found that if the categories under Rule 23 are met (subdivision (a) and (b)), then "[b]y its terms this creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010).[11]  Even

---

[10]  For example, Rule 23 requires class certification "[a]t an early practicable time after a person sues" and does not require this to be done with every additional defendant – particularly when such an addition would have ***zero*** impact on that assessment of the Rule 23 factors.  Rule 23(c)(1)(A).

[11]  The Supreme Court went as far as saying that if Rule 23 criteria is met, then the Court must certify the class, saying "Rule 23 provides a one-size-fits-all formula for deciding the class-action question" and that "[t]he discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff: He may bring his claim in a class action if he wishes." *Id.* at 399-400.

1  Underwriter Defendants recognize that "certification ultimately is about the cohesiveness of the

2  plaintiff class, not the lineup of the defendants." UW Mot. at 1.

3  The Court has also already reviewed the merits of VC Defendants' interlocutory appeal

4  finding them unlikely to succeed. This Court correctly observed that "the language of Rule 23

5  says that you certify **the action**." Mar. 6, 2025 Tr., ECF 538 at 8:13-14; *see* Rule 23(c)(1)(A) ("At

6  an early practicable time after a person sues or is sued as a class representative, the court must

7  determine by order whether to certify the action as a class action."). And the Court also observed

8  that the rules for class actions "contemplate the possibility of changes," elaborating that allowing

9  a decertification motion "***entirely preserves your right to be heard on the issue***." Mar. 6, 2025

10  Tr., ECF 538 at 11:4-5; *see* Rule 23(c)(1)(C) ("An order that grants or denies class certification

11  may be altered or amended before final judgment."). These basic observations of Rule 23 are the

12  most direct and logical interpretation of these rules and all that is needed to resolve this issue.[12]

13  Eviscerating their constitutional due process argument, the VC Defendants have possessed

14  at all times the opportunity to oppose class certification through a motion to amend or decertify

15  class certification which places the same burden on plaintiffs as a motion for certification. Indeed,

16  "[p]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process."

17  *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082 (9th Cir. 2010); *Allstate Ins.*,

18  559 U.S. at 402 (finding that Rule 23 is a procedural rule). And having the notice and opportunity

19  to decertify the class at any time "before final judgment" certainly mitigates any risk of error. Rule

20  23(c)(1)(C). In fact, because Rule 23 is procedural, opposite of what VC Defendants argue, it does

21  "not require that the notice and opportunity to be heard occur before the deprivation." 

22  *Buckingham*, 603 F.3d at 1082; *cf.* VC Mot. at 6. And, as the Court noted, "the burden on [a

23  decertification] motion remains on the plaintiffs as it would on the motion to certify." Mar. 6,

24  2025 Tr., ECF 538 at 10:5-6; *see, e.g.*, *Marlo v. UPS, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011).

25

26

---

27  [12]  *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning, and generally with them as with a statute, 'when we find the terms unambiguous, judicial inquiry is complete.'") (cleaned up).

28

1     Defendants only argument for being likely to success on the merits is the sole fact that the

2     23(f) Petition was granted.  VC Mot. at 5-6.  In *Tinsley v. McKay*, 2018 WL 11352146 (D. Ariz.

3     Feb. 13, 2018) defendants made almost identical arguments made here, namely that the grant's

4     citation to *Chamberlan* supported a stay.  VC Mot. at 5-6.[13]  But like there "the Ninth's Circuit's

5     mere citation to *Chamberlan*, absent indication why the class certification appeal qualifies for

6     immediate review, provides no basis for concluding Defendants are likely to succeed on the

7     merits." *McKay*, 2018 WL 11352146, at *3; *see also Petrobras*, 193 F. Supp. 3d at 316 ("[T]he

8     first *Nken* factor is indeterminate here because this Court does not know the Second Circuit's

9     reasons for granting defendants' petition."); *Corsi*, 2018 WL 5504178, at *3 ("The Eighth Circuit's

10    grant of leave to appeal from the class certification order suggests that Defendants have a

11    *possibility* of succeeding on the appeal, but it does not make success likely.").  Indeed, permission

12    is "most likely to be granted . . . when the certification decision turns on a novel or unsettled

13    question of law," not as VC Defendants would have the Court believe, granted for a "manifestly

14    erroneous" ruling. *Microsoft Corp. v. Baker*, 582 U.S. 23, 32, (2017); *cf*. VC Mot. at 6.[14]

15              **c.     Public Interests Weigh in Plaintiff's Favor**

16     VC Defendants only claim a public interest of "judicial economy" (VC Mot. at 9) but the

17    Court must find that any "efficiencies the district court seeks to gain outweigh the potential

18    prejudice caused by the significant delay." *PG&E Corp.*, 100 F.4th at 1088.  As pointed out above,

19    VC Defendants' choice to pursue an interlocutory appeal as opposed to immediately filing a

20    motion to decertify is not in the interest of judicial economy.  Further, this litigation will proceed

21    as class action, even if narrowed, and thus there is no economy gained by putting these on hold.

22    *See* §IV.C, *infra*.  The Court can also take the VC Defendants' own representations that the public

23

---

24   [13]  This is also the Underwriter Defendants' only argument.  UW Mot. at 8-9.

25   [14]  VC Defendants also do not make any showing that they will be successful in the disputed
26   procedure they used for interlocutory appeal.  Under Rule 23(f) the petition for permission to
      appeal must be made in 14 days after the district court's class certification order is entered.
27   Defendants attempt to avoid this deadline by creating a narrative that at the March 6, 2025 Hearing
      the Court affirmatively ruled that the class certification in place "extended to the VC Defendants."
28   VC Mot. at 3.  But this narrative was expressly rejected by the Court. with VC Defendants telling
      they Court they "Understood."  Mar. 6, 2025 Tr., ECF 538 at 11:8-19.

also has an interest in the resolution of this case on the merits. *Bally*, 2020 WL 3035781, at *5 (Finding "countervailing public interest weighs in the timely resolution of the class's claims."). At the October 31, 2024 hearing, VC Defendants contended that their potential control liability is "of general importance to the bar," "has gotten a lot of attention in our world[,] . . . talked about at conferences[, and] in the microclimate of San Jose." Oct. 31, 2024 Tr., ECF 445 at 12:17-19, 37:7-12; *see also id.* at 39:20-40:5.

### d. Plaintiff Will be Harmed By Further Delay

Unlike VC Defendants contend, the harm Plaintiff faces is not only "delay in receiving the relief he seeks" but the very real prospect of lost evidence and fading witness memories. VC Mot. at 9. First, VC Defendants request an indefinite stay "because its end date is triggered by the occurrence of an external event that is not time limited." *PG&E Corp.*, 100 F.4th at 1084. Defendants acknowledge that it is unlikely that the pending appeal will take less than eight months, extensions are likely, and oral argument has not been scheduled nor is there any guarantee as to when a ruling would come from the Ninth Circuit. VC Mot. at 3. "Generally, stays should not be indefinite in nature," and a district court "err[s] by issuing a stay without any indication that it would last only for a reasonable time." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007).

Second, this case concerns events dating back over five years. "[W]ith passing time, there remains a risk of lost and destroyed evidence, as well as fading witness memories." *See Ramos v. Cap. One, N.A.*, 2017 WL 895635, at *3 (N.D. Cal. Mar. 7, 2017); *Lathrop v. Uber Techs., Inc.*, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (same). As the Court also knows, pending in front of this Court is Plaintiff's Motion for Leave to Modify the Case Schedule in order to reopen discovery for 90 days to address Zymergen's allegations of "massive and systemic fraud" against its co-defendants in this case. ECF 557 at 2-3. As explained above, this case will move forward regardless of class certification issues, thus any stay will harm Plaintiff's needed discovery, which would now be being collected five years after the fact.

### C. This Case Will Proceed Through Summary Judgment and Trial Regardless of the Outcome of the 23(f) Appeal

The Defendants' dramatically overstate the potential impact of their arguments which – even if successful – would not result in decertification of this action but merely a narrowing of the class. The VC Defendants suggest that "a putative securities class action in which a class is not certified (or is de-certified) will resolve or be dismissed, as the losses of individual plaintiffs are rarely worth the litigation expense." VC Mot. at 8. The Underwriter Defendants go even further, suggesting that "Decertification of the plaintiff class . . . could very well be the death knell of this action." UW Mot. at 2.

The class is currently defined as investors who purchased shares "pursuant and/or traceable to the registration statement." ECF 194. The best the Defendants can do *arguendo* is force the removal of "and/or traceable" and this action will proceed with those investors who purchased directly in the IPO. Contrary to the VC Defendants arguments (VC Mot. at 7), this class is readily ascertainable and there are investors that can prove their shares were bought pursuant to the Registration Statement. For example, named plaintiff West Palm Beach purchased shares on the IPO date, directly from the Underwriter Defendants, at the offering price. ECF 43-2, 43-3. These were, by definition, registered shares pursuant to the Registration Statement. Thus, even if the Defendants miraculously come forward with evidence that locked up pre-IPO shares (which were unregistered and not tradeable on the NASDAQ) were somehow being transacted, the impact would at most only narrow the class definition.

If even the Defendants were somehow able to obtain decertification through a different argument not yet previewed, they ignore that "'[a]n order refusing to certify, or decertifying, a class does not of its own force terminate the entire litigation because the plaintiff is free to proceed on his individual claim.'" *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017); *Baker*, 582 U.S. at 34 (same). Plaintiff would retain "an individual economic interest in 'shift[ing] part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails'" allowing them to continue through to final judgment. *Pitts*, 653 F.3d at 1090. Also on behalf of the class, Plaintiff would retain a "private-attorney-general-like interest" to seek

reversal on appeal and adjudication of the merits of the class claims if successful. *Id.* (citing Supreme Court precedent).

Faced with this reality, Defendants' only contention, with no support, is the *ipse dixit* that "the losses of individual plaintiffs are rarely worth the litigation expense." VC Mot. at 8; UW Mot. at 5. But it is precisely because the losses are rarely worth the litigation expense that such "'private attorney general'" rights exist. *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338-39 (1980). And a putative class representative has an "obligation" to pursue claims "on an individual basis to obtain review of the district court's denial of certification on that claim." *Somers v. Apple, Inc.*, 729 F.3d 953, 961 (9th Cir. 2013). Court's deny stay motions for this exact reason and this Court should as well. *Garvey*, 2012 WL 12919626, at *1 (Denying stay because "[e]ven if plaintiff Garvey was only bringing her individual claim to trial, Kmart would still have to expend resources on trial preparation."); *Petrobras*, 193 F. Supp. 3d at 316 (denying stay because "[w]ere the class to be decertified . . . they would proceed as individual plaintiffs").

### D. Defendants' Attempt to Argue the Merits Demonstrates They Have No Credible Basis to Decertify the Class Based on Traceability

As discussed above, the prerequisites for class certification are not up on interlocutory appeal, thus the VC Defendants' arguments about "tracing" are not at issue. VC Mot. at 7. Nonetheless, it is readily apparent why the VC Defendants would prefer delay to having to back up their arguments. In comparison to the other defendants – who include the Company, its highest ranking officers and directors, and the underwriter banks responsible for the IPO – the VC Defendants' are likely the ***least*** knowledgeable about the status of non-registered shares and whether they remained locked up following the IPO. And yet, none of these other defendants previously advanced this argument nor have they sought to bring it to the Court's attention now.

As was fully explored prior to certification, only registered shares were sold in the IPO and all other shares issued pre-IPO were subject to a lockup through the August 3, 2021 disclosures which gave rise to this suit – thus all tradeable shares were traceable to the Registration Statement. The total number of shares sold in the IPO that became tradeable on NASDAQ under the ticker symbol "ZY" was 18,549,500, which included 16,130,000 shares initially offered and 2,419,500

additional shares all sold by the Underwriter Defendants. Ex. A. This is exactly the same number that was registered with the SEC to be sold pursuant to the Registration Statement. Ex. B (registering 15,640,000 shares) and Ex. C (registering 2,909,500 shares). All private shares held before the IPO were restricted and subject to a lockup, with the Registration Statement explicitly saying of these shares "beginning 181 days after the date of this prospectus, *all* remaining shares will become eligible for sale in the public market." Ex. A at 163. Zymergen imploded on August 3, 2021 and the lockup remained in effect until October 19, 2021, meaning any shares purchased from between the IPO and August 3, 2021 were purchased pursuant or traceable to the Registration Statement.

Zymergen's IPO is nothing like *Slack* that "went public through a direct listing, with no underwriters and no lock-up period." *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1187 (9th Cir. 2025). VC Defendants, as well as all the other Defendants, are well aware of this as all of their pre-IPO shares were subject to lockup agreements. *See* Ex. A at 163-165. And the acquisition of Lodo Therapeutics Corporation ("Lodo") that Zymergen acquired in May 2021 (*see* VC Mot. at 7 citing ECF 528-2 and 528-3), was conditioned on all those shares being subject to the same lockup. Ex. A at 164. Indeed, as is usually the case when shares are locked up, those shares bear a legend that marks them as locked up. Given the foregoing, it is unsurprising that no Defendants have ever substantiated the claim that shares that were not purchased pursuant or traceable to the Registration Statement were trading in the market at the time of the IPO.

## V. CONCLUSION

For the reasons stated herein, the Court should deny the Defendants' requests to stay proceedings.

DATED: July 10, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM

s/ Daniel J. Pfefferbaum
DANIEL J. PFEFFERBAUM

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
JUAN CARLOS SANCHEZ
PATTON L. JOHNSON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jsanchez@rgrdlaw.com
pjohnson@rgrdlaw.com

Counsel for Plaintiffs

BERMAN TABACCO
NICOLE LAVALLEE (SBN 165755)
KRISTIN J. MOODY (SBN 206326)
CHRISTINA M. SARRAF (SBN 328028)
425 California Street, Suite 2300
San Francisco, CA 94104
Telephone: 415/433-3200
415/433-6382 (fax)
nlavallee@bermantabacco.com
kmoody@bermantabacco.com
csarraf@bermantabacco.com

BERMAN TABACCO
LESLIE R. STERN
PATRICK T. EGAN
One Liberty Square
Boston, MA 02109
Telephone: 617/542-8300
617/542-1194 (fax)
lstern@bermantabacco.com
pegan@bermantabacco.com

Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund

KLAUSNER, KAUFMAN, JENSEN
   & LEVINSON
ROBERT D. KLAUSNER
BONNI S. JENSEN
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
bonni@robertdklausner.com

Board Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund