# EXHIBIT 19

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

**Case No. 5:21-cv-06028-PCP**

BIAO WANG, Individually and on Behalf of All
Others Similarly Situated,

                      Plaintiff,

    vs.


ZYMERGEN, INC, et.al.,

                    Defendants.


# EXPERT REPORT OF YAEL HOCHBERG, PH.D.
# MARCH 14, 2025

# TABLE OF CONTENTS

I.   Qualifications ..................................................................................................................1

II.  Case Background and Assignment ...................................................................................4

III. Summary of Opinions .....................................................................................................7

IV.  Platform-based versus Product-based Companies ..........................................................8

    A.   Platform-Based Versus Product-Based Companies......................................................9

    B.   Platform-Based Companies in the Synthetic Biology Sector ....................................10

    C.   Evaluating the Risks of Early-Stage Platform Companies ........................................12

V.   Overview of Zymergen's Business ...............................................................................22

    A.   Zymergen Was a Pre-Product Revenue Syn-Bio Platform Company at
        the Time of Its IPO ...................................................................................................22

    B.   Description of Zymergen's Biofacturing Platform and Business Model....................23

    C.   Product Pipeline .......................................................................................................25

VI.  Equity Analysts Viewed Zymergen as a Platform-Based Company and
     Evaluated Platform Risks................................................................................................27

    A.   Analysts Viewed Zymergen as a Platform Company ................................................28

    B.   Analysts Highlighted Key Platform Risks in Post-IPO Reports................................29

    C.   Platform-Related Risk Disclosures in the Offering Documents Were
        Consistent with the Types of Risks That Investors Evaluate for Early-
        Stage Platform Companies and That Analysts Highlighted for
        Zymergen ..................................................................................................................33

VII. August 2021 Disclosures Raised Investor Concerns about Zymergen's
     Biofacturing Platform and Its Previously Disclosed Risks....................................................41

    A.   Identification of Market Opportunities .....................................................................42

    B.   Technical Product Development / Scaling and Manufacturing ..................................44

    C.   Commercialization.....................................................................................................44

    D.   Lack of Track Record ...............................................................................................47

## I.    QUALIFICATIONS

1.    I am the Ralph S. O'Connor Professor in Entrepreneurship and Professor of Finance at the Jones Graduate School of Business at Rice University. I am also Head of the Rice University Entrepreneurship Initiative and Liu Idea Lab for Innovation and Entrepreneurship at Rice University, serve as a member of the leadership council for the Rice Biotech Launchpad, and advise Rice's Office of Innovation. In addition to my employment at Rice University, I am a Research Associate at the National Bureau of Economic Research, a Visiting Scholar at the Massachusetts Institute of Technology's ("MIT") Innovation Initiative, and a Visiting Professor at the Northwestern University Kellogg School of Management. I have previously held the Keohane Distinguished Visiting Professorship in Entrepreneurship at the University of North Carolina/Duke University and have been a Visiting Associate Professor at the MIT Sloan School of Management and a Visiting Professor at the University of Chicago Booth School of Business. I was the co-founder and a Managing Member of Flywheel Innovation, LLC, an innovation and entrepreneurship-related consultancy, and serve as Managing Director of the Seed Accelerator Rankings Project, which produced an annual ranking of startup accelerator programs in the U.S. from 2010 to 2020. I have previously served as a consultant in the Research Fellows Program in the Quantitative Research Group at Landmark Partners (now a division of Ares Capital), a private equity secondary markets investment firm.

2.    I received a Ph.D. in Business Administration (Finance) from the Stanford University Graduate School of Business, an M.A. in Economics from Stanford University, and a B.Sc. in Industrial Engineering and Management from the Technion–Israel Institute of Technology. My research specializes in the areas of venture capital, private equity, and entrepreneurship.

3.    Since earning my Ph.D., I have taught graduate MBA and executive MBA courses on venture capital and entrepreneurship at five top-ranked U.S. business schools: Cornell University's Johnson School of Management, Northwestern University's Kellogg School of Management, MIT's Sloan School of Management, the University of Chicago's

Booth School of Business, and Rice University's Jones Graduate School of Business. These graduate-level courses covered both introductory and advanced topics in entrepreneurship and venture capital, including evaluation of venture investments, evaluation of startup strategy, venture capital and angel financing, contract terms and structure, and investor exit. I have also taught courses on venture capital internationally, at Hong Kong University. In addition to regular courses at universities, I have also been invited as a lecturer on the subject of innovation-driven entrepreneurship and its financing for the National Bureau of Economic Research Entrepreneurship Research Bootcamp, the Kauffman Foundation, the Financial Research Network of Australia (FIRN), and the Korea Advanced Institute of Science and Technology (KAIST) Center for Innovation Strategy and Policy (CISP).

4.      At Cornell University's Johnson School of Management, I developed and taught two MBA courses on venture capital and entrepreneurial finance, one introductory, and one advanced, which also covered investor assessment of company potential and strategy. I also served as faculty advisor to the Big Red Venture Fund, the student-led venture capital fund at Cornell. At Northwestern University's Kellogg School of Management, I have developed and taught four MBA courses on venture capital and innovation and technology-driven entrepreneurship (one introductory, two advanced, one experiential lab) and one executive course on venture capital, and I continue to teach the Advanced Topics in Venture Capital course in Kellogg's San Francisco program each winter, which covers the evaluation of early-stage startup investment opportunities and their potential from an investor's perspective. At the University of Hong Kong, I developed and taught an introductory course on venture capital. At MIT Sloan School of Management, I developed and taught an introductory class on venture capital and entrepreneurial finance, and developed and taught a module on venture capital for an MIT executive education program. At the University of Chicago Booth School of Business, I developed and taught a comprehensive course on venture capital and entrepreneurial finance. At Rice University, I developed and currently teach a number of entrepreneurship courses. I also developed the curriculum used for the Financing the New Venture course, and I supervise the Rice Student Venture Capital Fund and its investments. All in all, I have been teaching and doing research in the area of venture capital and entrepreneurship for over 20 years.

5.     I have published numerous articles in leading peer-reviewed academic journals, including in the top three finance journals: *The Journal of Finance*, *The Review of Financial Studies*, and *The Journal of Financial Economics*, as well as in other well-respected outlets such as *Science*, *Research Policy*, *Innovation Policy and the Economy*, *Journal of Accounting Research*, and *Journal of Public Economics*.

6.     My research on the venture capital industry has received considerable recognition. In 2016, I was awarded the Ewing Marion Kauffman Prize Medal for Distinguished Research in Entrepreneurship in recognition of my research on the venture capital industry and the financing of entrepreneurial firms. My venture capital-related research has twice won an Emerald Citation of Excellence Award for proven impact since publication, as well as multiple Best Paper conference awards. My work has been featured widely in the media, including publications such as *The Economist*.

7.     My research on innovation and technology-driven entrepreneurship has received a number of prestigious grants totaling in the millions of dollars. This includes large grants from the National Science Foundation, the Kauffman Foundation, the Charles Koch Foundation, NASA's Translational Research Institute for Space Health, the National Science Foundation's Binational Science Foundation grant program, as well as other smaller grants and prizes.

8.     I have been invited to speak on my research on innovation-driven entrepreneurship and the venture capital industry at numerous universities, institutes, and government bodies in the U.S. and around the world. Since 2002, I have given over 150 seminars, workshops and invited talks on my research on venture capital, private equity and entrepreneurial finance at universities and government agencies and have been invited to present my research or to speak about or critique the research of others at over 100 conferences that make use of peer review to select speakers.

9.     I have extensive experience advising and assisting startup companies with their strategy and primary fundraising efforts as a board member, an advisory board member, informal advisor, and professor. In my role as advisory board member, board member, or as an informal advisor, I have also assisted various startup companies in developing their products or platforms and go-to-market strategies. I also provide such

advice based on my experience and expertise to students and alumni of the various institutions at which I teach or have taught, in my capacity as a professor and as head of an academic entrepreneurship program. I am also an investor in a number of venture capital funds and actively invest as an angel investor in startup companies. These activities provide me with further ongoing exposure to the current state of the private technology markets and venture capital industry.

10.     The opinions that I have expressed in this report represent my true professional opinion on the issues addressed in this report.

11.     I further confirm that I have no connection with, and I am not aware of any actual or potential conflict of interest with any of the parties to this case.

12.     My complete curriculum vitae, which includes a list of my publications, is attached as **Appendix A** to this report. A list of my prior testimony from the past four years is attached as **Appendix B**.

## II.     CASE BACKGROUND AND ASSIGNMENT

13.     Zymergen Inc. ("Zymergen" or the "Company") was an early-stage synthetic biology ("syn-bio") platform company that aimed to "design, develop, and commercialize bio-based breakthrough products" across a "broad range of industries" with its proprietary platform.[1] Zymergen was founded in 2013 and was a privately held company until the Company's April 22, 2021 initial public offering ("IPO"). As a private company, Zymergen had been financed in part by multiple venture capital ("VC") funds.[2]

---

[1]     Zymergen Inc. Prospectus [Rule 424(b)(4)], April 21, 2021 (Filed April 23, 2021) ("Prospectus"), at p. 1. I will also refer to the Company's filings at the time of the IPO more generally as the "Offering Documents."

[2]     I understand that the Second Amended Complaint names several VC funds and management companies as defendants in this matter and refers to them as the "Softbank Defendants," the "DCVC Defendants," and the "True Venture Defendants." Second Amended Class Action for Violations of the Federal Securities Laws [Redacted], *Biao Wang, Individually and on Behalf of All Others Similarly Situated vs. Zymergen Inc., et al.*, Case No. 5:21-cv-06028-PCP, March 4, 2024, ("Second Amended Complaint"). For ease of reference, I will use these short-hand references to the different VC funds and entities in this report and refer to these defendants collectively as the "VC Defendants." With respect to the SoftBank defendants specifically, I understand that Plaintiffs allege that SB Investment Advisers (US) Inc. ("SBIA US") managed SVF Excalibur (Cayman) Limited, SVF Endurance (Cayman) Limited, SoftBank Vision Fund (AIV M1) L.P. (together, the "SoftBank Funds"). However, SEC filings identify SB Investment Advisers (UK) Limited ("SBIA UK") as the investment manager and the entity exclusively responsible for making all final decisions related to the acquisition, financing, and divestment of the Softbank Funds' investments.

Zymergen's IPO was underwritten by J.P. Morgan Securities LLC ("JP Morgan"), Goldman Sachs & Co. LLC ("Goldman Sachs"), BofA Securities, Inc. ("BofA"), Cowen and Company, LLC ("Cowen"), UBS Securities LLC ("UBS"), and Lazard Frères & Co. LLC.[3]

14.     I understand that this case relates to disclosures that Zymergen made in its Offering Documents and subsequent disclosures on or after August 3, 2021. On that date, Zymergen issued a press release announcing "issues with its commercial product pipeline that will impact the Company's delivery timeline and revenue projections" and that the Company no longer expect[ed] product revenue in 2021, and expect[ed] product revenue to be immaterial in 2022."[4] The Company further announced that it was initiating "a full re-examination of Zymergen's target markets," and that the Company's CEO had stepped down.[5] On the earnings call later that day, Company management further stated that the "[C]ompany's commercial teams did not have significant insight into the customer qualification process and into their customers and users" and that "emerging data on the total addressable market for foldable display applications indicates a smaller near-term market opportunity."[6] Zymergen stock fell by approximately 76.3 percent the following day.[7]

15.     A class action complaint was subsequently filed on behalf of investors who purchased shares in Zymergen that were sold in the IPO against, among others, the VC Defendants.[8]

16.     I have been retained by Gibson, Dunn & Crutcher LLP (counsel for the DCVC Defendants), Goodwin Procter LLP (counsel for the True Ventures Defendants),

---

[3]     Prospectus, at p. 168.

[4]     "Zymergen Provides Business Update," *GlobeNewsWire*, August 3, 2021, ("Zymergen August 3, 2021 Press Release"), at p. 6. *See* Zymergen Inc. Form 8-K, August 3, 2021.

[5]     Zymergen August 3, 2021 Press Release, at p. 6.

[6]     "Zymergen Inc Business Update Call - Final," *Refinitiv Streetevents Edited Transcript,* August 3, 2021 ("Zymergen August 3, 2021 Earnings Call"), at p. 27.

[7]     Calculated as $100 - \frac{\$8.25}{\$34.83} \times 100$, Zymergen's closing stock price dropped from \$34.83 on August 3, 2021, to \$8.25 on August 4, 2021. *See*, "Stock Price for Zymergen Inc.," August 3 and 4, 2021, Bloomberg, accessed February 5, 2025.

[8]     Second Amended Complaint, at pp. 1-2, 14-19.

and Quinn Emanuel Urquhart & Sullivan, LLP (counsel for the Softbank Defendants), Wilmer Cutler Pickering Hale and Dorr LLP (counsel for defendants Zymergen Inc., Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma), Ehrlich & Craig LLP (counsel for defendant Josh Hoffman), and Morrison & Foerster LLP (counsel for defendant Enakshi Singh) (collectively, "Counsel"). Based on my teaching, academic research, and consulting experience in finance and the venture capital industry, I have been asked to provide expert analysis and testimony regarding:

- The difference between platform- and product-based companies and the nature of risks that investors generally focus on when evaluating early-stage, platform-based companies;

- The platform-related risks that analysts focused on when assessing Zymergen at the time of its IPO, as well as any platform-related risk disclosures that the Company made at that time; and

- Zymergen's August 3, 2021 announcement and how it related to the platform-related risks that early-stage investors generally focus on when evaluating platform companies.

17.     I am being compensated by the VC Defendants in respect of my work in connection with the preparation of this Report at a rate of $1,350 per hour. I have been assisted by individuals at Analysis Group, Inc., an economic consulting firm, working under my direction and supervision, and I receive additional compensation based on their fees. My compensation and that of Analysis Group are not contingent on the content of my opinions or on the outcome of the case.

18.     A list of the documents that I have considered in conducting my assignment is attached as **Appendix C** to this report.

19.     My work on this matter is ongoing. I reserve the right to supplement and/or modify this report based on additional, relevant information that may become available.

## III.  SUMMARY OF OPINIONS

20.     I summarize my opinions below and present a more detailed discussion of these opinions and their support in the sections below.

- Platform-based companies differ from product-based companies in ways that have important implications for how investors evaluate those companies. In contrast to product-based companies, platform-based companies typically use their underlying platform technology to create multiple products that target many different end-markets and sectors.

- Investments in early-stage companies invariably pose significant risks given factors such as the lack of an established track record of product sales and the difficulty of assessing management's ability to execute a plan.[9] The risks associated with early-stage platform companies present an even broader set of issues that investors generally evaluate compared to a product-based company. That is the case because a key component of an early-stage platform company's value is the applicability of the platform to a range of different products.

- Investors would generally consider several key types of risks associated with emerging platform companies, including risks associated with (i) the identification of market opportunities, (ii) technological product development and scaling challenges, (iii) commercialization challenges, and (iv) lack of track record.

---

[9]     Throughout this report, I use the term "early stage" to refer to companies that have not yet successfully commercialized their products and have not yet demonstrated proven traction of their products with customers. I note that venture capital authors and commentators often refer to "early stage" companies as startups in the pre-seed to Series A stages of venture financing. However, my usage is consistent with industry usage in that a hallmark of "early stage" companies in industry is a lack of substantial revenue. While Zymergen's fundraising history as of its IPO was more substantial than other "early stage" companies as the term is commonly used by industry participants, its lack of proven products and associated revenue was consistent with typical definitions of "early stage" companies. *See, e.g.*, "NVCA 2024 Yearbook," *National Venture Capital Association,* March 2024, available at https://nvca.org/wp-content/uploads/2024/05/2024-NVCA-Yearbook.pdf, at p. 53 ("Early stage - the state of a company after the seed (formation) stage but before middle stage (generating revenues). Typically, a company in the early stage will have a core management team and a proven concept or product, but no positive cash flow.").

- Zymergen was a syn-bio platform company that was still in an early stage of development at the time of its IPO given its lack of product sales and established track record of commercialization.

- Equity analysts that followed Zymergen viewed the Company's biofacturing platform and its ability to produce products for a wide range of industries as a key driver of the Company's value. At the same time, however, analysts highlighted the risks associated with an emerging platform company such as Zymergen. These risks are consistent with the types of platform-related risks that investors typically evaluate in early-stage platform companies.

- The Offering Documents for Zymergen's IPO disclosed a wide range of risk factors, including many related to risks associated with the Company's biofacturing platform. These disclosures are consistent with not just the types of platform-related risks that I would expect investors to evaluate, but also the risks that equity analysts highlighted related to Zymergen.

- Zymergen's August 3, 2021 disclosures had implications not only for the expected profitability and viability of Hyaline, but also for analysts' expectations regarding the value of the Company's other platform pipeline. The disclosed issues relate closely to the risks that investors in emerging platform-based companies typically evaluate, that analysts highlighted in their post-IPO assessments of Zymergen, and that the Offering Documents previously disclosed.

## IV. PLATFORM-BASED VERSUS PRODUCT-BASED COMPANIES

21.    In my opinion, Zymergen's status as an early-stage platform company had important implications for how investors generally would have evaluated the risks associated with the Company. In this section, I describe a framework for how investors typically evaluate early-stage platform companies, with a focus on the particular risks that these companies face.

### D.     Lack of Track Record

99.     As I discussed in **Section IV.C**, when investing in an early-stage start-up with a lack of track record, investors pay close attention to the perceived competence and credibility of the start-up's management. For an early-stage platform company, the failure of a single product may result in investors revising their views of the competence and credibility of management (and the organization more generally) in a negative direction. Both Zymergen and equity analysts commented on management credibility issues on Zymergen's August 3, 2021 earnings call, and in analyst reports issued shortly afterward.

- "We are focused on reestablishing the credibility of the leadership team and the company. We recognize that this will not happen over weeks or months, but will require consistent quarter-after-quarter execution against a credible plan."[165]

- "I mean, just sort of listening to this today and sort of going on with this is like, how can we have any confidence whatsoever in anything that's been put out there in terms of numbers or putting the market opportunity?"[166]

- "And then just on the overall credibility. Obviously, there will be general questions going forward."[167]

- "No visibility and a large credibility chasm to fill"[168]

_____

Yael Hochberg

March 14, 2025

---

[165]     Zymergen August 3, 2021 Earnings Call, at p. 27.

[166]     Zymergen August 3, 2021 Earnings Call, at p. 30 (question by Derik De Bruin, BofA).

[167]     Zymergen August 3, 2021 Earnings Call, at p. 31 (question by Matthew Carlisle Sykes, Goldman Sachs).

[168]     BofA, August 4, 2021, at p. 1.