# EXHIBIT 23

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

|  |  |
| --- | --- |
| BIAO WANG, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZYMERGEN INC., et al.,<br><br>Defendants. | Case No. 5:21-cv-06028-PCP |

**EXPERT REBUTTAL REPORT OF DAVID J. DENIS**
**APRIL 25, 2025**

# TABLE OF CONTENTS

I.    **Introduction and Assignment** ........................................................................1

II.   **Summary of Opinions** ...............................................................................2

III.  **Professor Feinstein's Assessment of Economic Materiality is Fundamentally Flawed** ..........................................................................4

IV.  **Professor Feinstein's Event Study Does Not "Empirically Confirm" the "Economic Materiality" of the Alleged Misstatements and Omissions as He Claims or Meaningfully Affect My Conclusions Regarding Recoverable Damages** ..........................................................................6

     A.   Professor Feinstein's Event Study Does Not Empirically Confirm the "Economic Materiality" of the Alleged Misstatements and Omissions as He Claims ...........................................................................6

     B.   Differences Between Professor Feinstein's and My Event Study Analyses ...........................................................................9

     C.   My Conclusions Regarding Recoverable Damages Attributable to Investors' Changed Expectations About The Prospects of Hyaline Do Not Meaningfully Change Even If I Adopt The Results of The Feinstein Event Study Instead of My Own ...........................................14

V.   **Professor Feinstein's Claim That Hyaline's Success Was "Central" to Analysts' "Valuations and Ratings of Zymergen Stock" Is Unsupported, Speculative, and Incorrect** .......................................................17

## I.     Introduction and Assignment

1.     My name is David J. Denis.  I previously submitted an expert report in the above captioned matter on March 14, 2025 (my "Initial Report") in which I provided opinions regarding certain aspects of this case.[1]  In my Initial Report, I set forth my qualifications and my compensation.[2]  On March 14, 2025, Professor Steven P. Feinstein submitted an expert report on behalf of Plaintiffs ("Feinstein Report").[3]

2.     In the Feinstein Report, Professor Feinstein first defines a term he labels "economic materiality,"[4] which he admits does not refer to the legal concept of "materiality."[5] In Section VII of his report, Professor Feinstein analyzes the "economic materiality" of the "alleged misstatements, misrepresentations, and omissions, including those regarding the Company's lead product Hyaline, the Company's biofacturing platform and addressable markets, and as a result Zymergen's entire business model,"[6] based (among other things) on his review of "analysts' commentary, estimates, and valuation models."[7]  He concludes that "Hyaline's success" was "central to [analysts'] valuations and ratings of Zymergen stock,"[8] which he states establishes the purported "economic materiality of the alleged misstatements, misrepresentations,

---

[1] Expert Report of David J. Denis, *Biao Wang, Individually and on Behalf of All Others Similarly Situated vs. Zymergen Inc., et al.*, No. 5:21-cv-06028-PCP, March 14, 2025 ("Initial Report").

[2] In this "Rebuttal Report," I adopt the same defined terms and acronyms used in my Initial Report.

[3] Expert Report of Professor Steven P. Feinstein, Ph.D., CFA, *Biao Wang, Individually and on Behalf of All Others Similarly Situated vs. Zymergen Inc., et al.*, No. 5:21-cv-06028-PCP, March 14, 2025 ("Feinstein Report").

[4] The Feinstein Report defines "economic materiality" to mean the "economic importance of information, announcements, and/or events, such that these items would affect the valuation of a company's stock."  *See* Feinstein Report, ¶ 2.

[5] Feinstein Report, ¶¶ 2, 20.

[6] Feinstein Report, Section VII.

[7] Feinstein Report, ¶ 64.

[8] Feinstein Report, ¶ 77.

and omissions."[9]  In Section VIII of his report, Professor Feinstein proffers "empirical confirmation of economic materiality" of the alleged misstatements and omissions based on the results of an event study analysis ("Feinstein Event Study").[10]

3.      I have been asked by Counsel to: (1) comment on Professor Feinstein's analysis of "economic materiality;" (2) evaluate the Feinstein Event Study, comment on differences between that analysis and the event study analysis I presented in my Initial Report, and determine the extent to which my conclusions are affected if I adopt the results of the Feinstein Event Study instead of my own; and (3) evaluate Professor Feinstein's claim that Hyaline was "central to [analysts'] valuations and ratings of Zymergen stock."[11]

4.      Appendix C of my Initial Report lists the materials I considered in preparing that report.  **Appendix A** of this report lists the additional materials I have considered in forming the opinions contained in this report.

## II.      Summary of Opinions

5.      Based on my expertise and review of the materials in this case, my principal opinions regarding the Feinstein Report are as follows:

     a.  Professor Feinstein's assessment of the "economic materiality" of the alleged misstatements and omissions in the Registration Statement is fundamentally flawed.  Professor Feinstein's stated approach would require him to assess the impact of the alleged misstatements and omissions as distinct from other "information, announcements, and/or events" affecting the value of Zymergen's stock.[12]  But Professor Feinstein fails to analyze the "economic materiality" of the alleged misstatements and omissions under his own definition, because he fails to

---

[9] Feinstein Report, ¶ 82.

[10] Feinstein Report, Section VIII.

[11] Feinstein Report, ¶ 77.

[12] Feinstein Report, ¶ 2.

isolate the impact of the allegedly misstated and omitted facts on the stock's value from the impact of other disclosures in the Registration Statement that are also economically material under his definition.

b. Professor Feinstein's event study analysis does not provide "empirical confirmation" of the "economic materiality" of the alleged misstatements and omissions in the Registration Statement as he claims.[13] According to the Feinstein Event Study, Zymergen's Residual Price Decline following the Company's August 3, 2021 Disclosures was statistically significant. However, Professor Feinstein has failed to quantify the impact of allegation-related information as opposed to the impact of other company-specific information disclosed that day, and makes no attempt to disentangle them. Therefore, the Feinstein Event Study's statistical result does not provide "empirical confirmation" of the "economic materiality" of "allegation-related information" as Professor Feinstein claims.

c. The difference in results of the Feinstein Event Study and the one I conducted in my Initial Report stems from methodological differences, including 1) the use of different sector (or industry) indices to control for daily changes in Zymergen's stock returns attributable to changes in the sector index, and 2) the selection of "atypical" dates excluded from the event study estimation period. Specifically, in comparison to Professor Feinstein's event study, my event study uses an index comprised of 16 peer companies that more closely reflects the narrow niche business that Zymergen operates in, as opposed to the broad sector index used by Professor Feinstein. In addition, although Professor Feinstein states that an event study should "exclude potentially atypical days in the regression analysis" in order "to measure and establish the typical stock return behavior on typical days,"[14] he fails to exclude many "atypical" days from his analysis. In addition to the dates that the Feinstein Event Study excludes as atypical, in my event study I also excluded seven dates the SAC itself highlights as atypical and two additional dates (May 27, 2021 and March 30, 2022) when the Company filed a Form 10-K or 10-Q.

d. Given differences in our event study methodologies, the August 4, 2021 Residual Price Decline that the Feinstein Event Study yields ($26.67) is $0.43 greater than the August 4, 2021 Residual Price Decline I calculated ($26.24). However, this difference does not meaningfully affect my conclusions regarding Plaintiffs' recoverable damages attributable to investors' changed expectations about the prospects of Hyaline.

   i. As explained in my Initial Report, my disaggregation analysis indicates that at most 14.3 percent of the Residual Price Decline is attributable to investors' changed expectations about the prospects of Hyaline. If Professor Feinstein's figure for the Residual Price Decline is used rather than mine, then the proportion of that decline attributable to investors'

---

[13] Feinstein Report, ¶ 21.

[14] Feinstein Report, ¶ 99.

changed expectations about the prospects of Hyaline changes by only seven cents (increasing from $3.74 to $3.81 per share). This *de minimis* difference does not meaningfully affect my conclusions regarding recoverable damages as described in my Initial Report.

ii. Specifically, as also discussed in my Initial Report, damages are not recoverable under Section 11 until Zymergen's stock price fell below the $31 IPO price, but Zymergen's stock price closed at $34.83 on August 3, 2021, a $3.83 difference that is above the Recoverable Damages Threshold. Under Scenario 1 in my Initial Report, the first $3.83 of the decline in Zymergen's stock price on August 4, 2021 is therefore not recoverable as damages, and my conclusion that recoverable damages attributable to investors' changed expectations about the prospects of Hyaline are $0 remains unchanged, even if I use the results of the Feinstein Event Study instead of my own. Under either the Feinstein Event Study or my event study, the stock price decline related to investors' changed expectations about the prospects of Hyaline (either $3.81 or $3.74, respectively) is less than $3.83.

iii. Under Scenario 2, which sets aside the Recoverable Damages Threshold, my conclusion regarding the recoverable damages attributable to investors' changed expectations about the prospects of Hyaline increases by $0.06 (from $3.20 to $3.26) if I use the results of the Feinstein Event Study instead of my own.

e. Contrary to Professor Feinstein's claims, analyst commentary does not indicate that Hyaline's success was "central" to analysts' valuations of Zymergen, nor did analysts consider the "revenue expected to be generated from Hyaline … of paramount importance to the valuation of Zymergen stock."[15]

## III. Professor Feinstein's Assessment of Economic Materiality is Fundamentally Flawed

6. Professor Feinstein claims to analyze the "economic materiality" of the "alleged misstatements, misrepresentations, and omissions, including those regarding the Company's lead product Hyaline, the Company's biofacturing platform and addressable markets, and as a result Zymergen's entire business model."[16] Professor Feinstein's approach thus requires him to assess the impact of the alleged misstatements and omissions as distinct from other "information,

---

[15] Feinstein Report, ¶ 78.

[16] Feinstein Report, Section VII.

39.     J.P. Morgan's May 24, 2021 report discusses Zymergen's product pipeline expectations, noting only that Zymergen was "beginning with Hyaline," not that Hyaline was of particular importance.[81]  While UBS's May 17, 2021 report mentions "strong demand for Hyaline" and models $360 million in Hyaline revenue by 2025, the report also says:

> Beyond Hyaline, 2 other electronics film products make up another $344M in revenue by 2025.  Beyond Electronics, our model reflects ~20% of revs from Consumer and yet to be defined products, and we see material revenue opportunity beyond these lead products.[82]

40.     This commentary demonstrates that, contrary to Professor Feinstein's assertions, analysts did not see Hyaline as "central to their valuations and ratings of Zymergen stock"[83] or "of paramount importance to the valuation of Zymergen stock."[84]

Submitted on: April 25, 2025

David Denis, Ph.D.

---

[81] J.P. Morgan, "Zymergen Inc.; 1Q21 Model Update: Clean Out of the Gate... Beat on R&D Service Revenues & 2H21 Hyaline Launch Reaffirmed: Maintain OW," May 24, 2021, at p. 1.

[82] UBS, "Zymergen Inc; This Synthetic Biology Leader is the 'Real' Deal: Initiate at Buy, $56 PT," May 17, 2021, at p. 1.

[83] Feinstein Report, ¶ 77.

[84] Feinstein Report, ¶ 78.