ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
DANIEL J. PFEFFERBAUM (248631)
ALEX N. JILIZIAN (362307)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com
ajilizian@rgrdlaw.com
      – and –
JUAN CARLOS SANCHEZ (301834)
PATTON L. JOHNSON (320631)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
jsanchez@rgrdlaw.com
pjohnson@rgrdlaw.com

Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BIAO WANG, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:21-cv-06028-PCP |
| Plaintiff, | NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 21, 2025 ORDER RE ZYMERGEN DEFENDANTS' PRIVILEGE ISSUES |
| vs. | |
| ZYMERGEN INC., et al., | |
| Defendants. | DATE: TBD |
| | TIME: 10:00 a.m. |
| | PLACE: Courtroom 6, 4th Floor |
| | JUDGE: The Honorable Susan van Keulen |

4938-3475-3627.v1

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

I.    INTRODUCTION ............................................................................................1

II.   RELEVANT BACKGROUND ........................................................................3

      A.    Zymergen and the Individual Defendants Retain the Same Counsel .....................3

      B.    Defendants Withhold Thousands of Relevant and Responsive Documents
            on the Basis of Privilege ................................................................................4

      C.    Plaintiff Challenges the Adequacy of the Zymergen Defendants' Privilege
            Logs...............................................................................................................4

      D.    The Magistrate Judge Orders Additional Briefing on Whether Zymergen
            Can Properly Assert Any Privilege................................................................5

      E.    The Privilege Order: The Court Holds that Zymergen Can Continue to
            Assert Privilege .............................................................................................7

      F.    Zymergen and the Director Defendants Review Privileged Documents ...............8

      G.    Zymergen Files a State Court Action Against the Individual Defendants
            Alleging Massive and Systemic Fraud ..........................................................8

      H.    WilmerHale Moves to Withdraw as Counsel for Zymergen Due to
            Adversity Between Zymergen and Individual Defendants ...........................9

      I.    In Opposing Plaintiff's Request to Modify the Case Schedule, the
            Individual Defendants Claim Adversity Was Known ................................11

      J.    The Trustee Moves to Intervene on Behalf of the Trust............................11

      K.    The Court Grants Leave to File Motion for Reconsideration .....................12

III.  LEGAL STANDARD......................................................................................12

IV.   ARGUMENT ..................................................................................................13

      A.    Plaintiff Has Been Diligent in Bringing This Motion Based on the
            Emergence of New Material Facts Warranting Reconsideration ...............13

      B.    Zymergen's State Court Action Confirms Adversity with the Individual
            Defendants ...................................................................................................14

      C.    Zymergen's Privileges Have Been Waived Through Selective Disclosure
            to an Adversary ............................................................................................15

**Page**

     D.     Zymergen's Privileges Asserted by the Trustee Fall Under the Crime-Fraud Exception ..................................................................................................19

     E.     The State Court Complaint Puts at Issue the Documents Withheld and Constitutes an Implied Waiver ..........................................................................21

     F.     Zymergen's Privileges Have No Purpose and Are Extinguished .........................23

V.     CONCLUSION.........................................................................................................24

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Abdo v. Fitzsimmons*,
5
   2019 WL 10910805 (N.D. Cal. Oct. 2, 2019)....................................................................23, 24

6

*Anbang Grp. Holdings Co. Ltd. v. Zhou*,
   2024 WL 199563 (N.D. Cal. Jan. 18, 2024)................................................................................20

7

*Bittaker v. Woodford*,
8
   331 F.3d 715 (9th Cir. 2003) ..............................................................................................19, 21

9

*Commodity Futures Trading Comm'n v. Weintraub*,
   471 U.S. 343 (1985)......................................................................................................................24
10

11

*Day v. GEICO Cas. Co.*,
   2023 WL 6120668 (N.D. Cal. Sept. 18, 2023) .....................................................................13, 14

12

*Fox v. Cal. Sierra Fin. Servs.*,
13
   120 F.R.D. 520 (N.D. Cal. 1988)..................................................................................................22

14

*Gilliland v. Geramita*,
   2006 WL 2642525 (W.D. Pa. Sept. 14, 2006)............................................................................23
15

16

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) .......................................................................................................15

17

*Home Indem. Co. v. Lane Powell Moss & Miller*,
18
   43 F.3d 1322 (9th Cir. 1995) .......................................................................................................21

19

*Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*,
   2018 WL 1116738 (N.D. Cal. Mar. 1, 2018)..............................................................................13
20

21

*In re Broadcom Corp. Sec. Litig.*,
   2005 WL 1403516 (C.D. Cal. Feb. 10, 2005)............................................................................22

22

*In re Fundamental Long Term Care, Inc.*,
23
   2012 WL 4815321 (Bankr. M.D. Fla. Oct. 9, 2012)..................................................................24

24

*In re Grand Jury Investigation*,
   810 F.3d 1110 (9th Cir. 2016) .....................................................................................................21
25

26

*In re Teleglobe Commc'ns Corp.*,
   493 F.3d 345 (3d Cir. 2007)........................................................................................................21

27

*In re Twitter Inc. Sec. Litig.*,
28
   2019 WL 2127820 (N.D. Cal. May 10, 2019)......................................................................17, 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page**

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   2025 WL 860505 (N.D. Cal. Mar. 19, 2025) ..........................................................................21

*Lawson v. DoorDash, Inc.*,
   2023 WL 2782314 (N.D. Cal. Jan. 31, 2023) .........................................................................18

*Link v. Wabash R. Co.*,
   370 U.S. 626 (1962) ................................................................................................................19

*Matter of Fischel*,
   557 F.2d 209 (9th Cir. 1977) ...................................................................................................23

*McDowell v. Calderon*,
   197 F.3d 1253 (9th Cir. 1999) .................................................................................................12

*Moskowitz v. Lopp*,
   128 F.R.D. 624 (E.D. Pa. 1989) ..............................................................................................23

*Neilson v. Union Bank of Cal., N.A.*,
   2003 WL 27374179 (C.D. Cal. Dec. 23, 2003) .......................................................................16

*NICKY LAATZ v. ZAZZLE, INC.*,
   2025 WL 2210009 (N.D. Cal. Aug. 4, 2025) ..........................................................................12

*Palantir Techs. Inc. v. Abramowitz*,
   2020 WL 5500418 (N.D. Cal. Sept. 11, 2020) ........................................................................21

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
   2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) .........................................................................22

*Ronduen v. GEO Grp. Inc.*,
   2025 WL 571400 (C.D. Cal. Feb. 7, 2025) .............................................................................16

*S. Union Co. v. Sw. Gas Corp.*,
   205 F.R.D. 542 (D. Ariz. 2002) ..............................................................................................17

*SEC v. Aequitas Mgmt., LLC*,
   2017 WL 6329716 (D. Or. July 7, 2017) .................................................................................17

*SEC v. Mazzo*,
   2013 WL 12172628 (C.D. Cal. Oct. 24, 2013) .......................................................................16

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
   2024 WL 74928 (N.D. Cal. Jan. 5, 2024) ...............................................................................22

1

2                                                                                        **Page**

3

*Shenwick v. Twitter, Inc.*,
4      2019 WL 3815717 (N.D. Cal. Apr. 1, 2019) ...........................................................17

5
*Skillz Platform Inc. v. AviaGames Inc.*,
6      2023 WL 8040871 (N.D. Cal. Nov. 20, 2023) .................................................19, 20

7
*Swearingen v. Yucatan Foods, L.P.*,
8      59 F. Supp. 3d 961 (N.D. Cal. 2014) .....................................................................13

*Swidler & Berlin v. U.S.*,
9      524 U.S. 399 (1998).................................................................................................23

10
*U.S. v. Christensen*,
11      828 F.3d 763 (9th Cir. 2015) ..................................................................................20

12
*U.S. v. Gonzalez*,
        669 F.3d 974 (9th Cir. 2012) ..................................................................................17

13
*U.S. v. Martin*,
14      278 F.3d 988 (9th Cir. 2002) ..................................................................................19

15
*U.S. v. Osborn*,
16      561 F.2d 1334 (9th Cir. 1977) ................................................................................24

17
*U.S. v. Sanmina Corp.*,
        968 F.3d 1107 (9th Cir. 2020) .......................................................................15, 16, 18

18
*Waymo LLC v. Uber Techs., Inc.*,
19      2017 WL 11917907 (N.D. Cal. Aug. 14, 2017) .....................................................14

20  *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*,
        647 F.2d 18 (9th Cir. 1981) .............................................................................15, 19
21

**STATUTES, RULES, AND REGULATIONS**
22

23  Federal Rules of Civil Procedure
        Rule 54(b) .........................................................................................................1, 12

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on a date to be determined by this Court, before United States Magistrate Judge Susan van Keulen, Lead Plaintiff and Class Representative Biao Wang ("Plaintiff"), pursuant to the Court's Order of August 4, 2025, Fed. R. Civ. P. 54(b), Civil Local Rule 7-9 and the Court's inherent authority, hereby brings this Motion for Reconsideration of the Court's February 21, 2025 Order re Zymergen Defendants' Privilege Issues (ECF 524) ("Privilege Order"). This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, documents and other court filings referenced therein, the Declaration of Daniel J. Pfefferbaum and attached exhibits filed concurrently herewith ("Pfefferbaum Decl."), the pleadings and papers on file in this action, and such other matters as may be presented to the Court at the hearing or otherwise.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Material factual developments warrant reconsideration of the Privilege Order and a finding that Zymergen cannot meet its burden to withhold thousands of relevant and responsive documents, which now must be produced to Plaintiff. First, on June 16, 2025, Plaintiff learned that defendant Zymergen, Inc. ("Zymergen"), through its bankruptcy trustee ("Trustee"), sued the Individual Defendants in California State Court accusing them of perpetrating a "massive and systemic fraud" in connection with the Company's IPO Registration Statement. The Privilege Order was premised on a lack of adversity between these Defendants; this has now indisputably changed. Indeed, Wilmer Cutler Hale Pickering and Dorr LLP ("WilmerHale"), who represented both Zymergen and the Director Defendants, has since withdrawn from its representation of Zymergen because of this adversity. Recent filings make clear that this adversity has existed since February 24, 2024 when the Trustee assumed control of Zymergen in this litigation. The Individual Defendants themselves now contend that the adversity between Zymergen and its former officers and directors has been apparent since at least July 2024, just as Plaintiff previously

argued to the Court.  Even more explicitly, WilmerHale disclosed that it advised Zymergen in September 2024 – three months prior to when Plaintiff initially brought this privilege dispute to the Court – that Zymergen should retain new counsel out of concerns over its adversity with the Director Defendants.  Their sharing and regular discussions of privileged documents which were not otherwise available to the Director Defendants *after* Zymergen and the Director Defendants became adverse, including reviewing privileged documents and preparing privilege logs, constitutes selective waiver by the Trustee.  Setting aside whether these Defendants were forthright with the Court in their February 2025 briefing, one thing is clear: Zymergen's privileges have been waived by the Trustee's selective disclosure to an adversary.  Furthermore, by accusing the Individual Defendants of engaging in fraud in State Court, the Trustee has implicitly waived the privilege by putting at issue the very same documents it seeks to withhold in this action, and also brought those documents within the crime-fraud exception.

Second, on July 8, 2025, the Trustee wrote to Plaintiff informing him that all the insurance available to Zymergen has been exhausted, and as a result, Zymergen (and the ZYM Liquidation Trust ("Trust")) are immunized from liability pursuant to the bankruptcy court's order "prohibiting *any party* from commencing or continuing any lawsuit" against Zymergen.  The Director Defendants, WilmerHale, and the Trustee all apparently agree that Zymergen has no obligation to continue litigating this (or any) case.  While the Privilege Order previously found that the Trustee still held privileges to assert, in light of these new developments, there is no need for Zymergen to have "full and frank" exchanges with an attorney, and in its absence, Zymergen's privileges should be extinguished.

The Court has already found that Plaintiff has shown good cause to reopen discovery for the purpose of pursuing this motion and any discovery that may result.  ECF 590 at 4.  As set forth herein, the new material facts discussed require reconsideration of the Court's Privilege Order and a finding that the privilege no longer supports Zymergen's withholding of thousands of relevant and responsive documents.  The Court should order these withheld documents produced without delay.

## II.     RELEVANT BACKGROUND

### A.     Zymergen and the Individual Defendants Retain the Same Counsel

This action was initially filed on August 4, 2021.  ECF 1.  From the outset, WilmerHale represented Zymergen and all the Individual Defendants, who are comprised of the "Officer Defendants": CEO Josh Hoffman, CFO Ena Singh; and the "Director Defendants": Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma (the Officer Defendants and Director Defendants together are referred to as "Individual Defendants," and together with Zymergen, are referred to as the "Zymergen Defendants"). On August 15, 2023, Defendants Singh and Hoffman retained new separate counsel. ECF 195-196.  On October 19, 2022, Zymergen was sold to Ginkgo Bioworks, and upon completion of the merger these officers and directors were no longer associated with Zymergen and lost access to its internal privileged and confidential documents.[1]  ECF 321, ¶55 n.2.[2]

On October 3, 2023, Zymergen filed for bankruptcy, staying all litigation against the Company.  ECF 218.  That stay was lifted on February 24, 2024, when Zymergen's Plan of Liquidation (the "Bankruptcy Plan") was confirmed by the bankruptcy court.  As relevant here, upon the confirmation of the Bankruptcy Plan, Ginkgo's ownership interest in Zymergen was extinguished, all Zymergen's Board seats were eliminated, substantially all assets were sold, and any remaining assets and interest was transferred to the Trust who was tasked with winding down the corporate entity.  *See* ECF 500 at 1-2.  The Trustee, Neal Goldman, was the only person authorized to direct any corporate action of Zymergen, including directing WilmerHale in litigating Zymergen's defense in this action.  ECF 561 at 2.  As the Court has already recognized, any privileges that Zymergen had were also transferred to the Trust, and only the Trustee has the authority to assert or waive any claimed Zymergen privilege.  Privilege Order at 2-4.

---

[1]     Hoffman was terminated on August 2, 2021, and would have lost access to all of Zymergen's internal documents at that time.

[2]     On January 29, 2025, Gibson Dunn, who represents the DCVC Defendants, informed the Court that they are also representing former Defendant Ocko.  ECF 493.

**B.    Defendants Withhold Thousands of Relevant and Responsive Documents on the Basis of Privilege**

Since the commencement of discovery in this case on December 15, 2022, Plaintiff has sent numerous document requests to all of the parties, including both Zymergen and the Individual Defendants.    These requests targeted documents and communications related to the alleged misrepresentations and omissions in Zymergen's IPO Registration Statement including, among other things, its "biofacturing" platform, product pipeline, addressable markets, potential customers, technical problems, drafting process, board meetings, and financial outlook.    *See e.g.,* ECF 277-17.    While Zymergen produced approximately 120,000 documents in discovery, it refused to turn over thousands of additional relevant and responsive documents on the basis of purported privilege claims.    On November 21, 2024, WilmerHale produced the fourth installment of the "Zymergen Defendants'" privilege log, which brought the total number of entries at that time to 3,949 documents withheld on the basis of attorney-client and work product privileges.[3] Pfefferbaum Decl., ¶2.    On January 2, 2024, WilmerHale produced Zymergen's redaction log containing over 3,646 entries of redacted documents.    Pfefferbaum Decl., ¶3.

**C.    Plaintiff Challenges the Adequacy of the Zymergen Defendants' Privilege Logs**

The dispute now in front of the Court was initially raised to the Court on December 12, 2024.    ECF 452.    After WilmerHale completed the rolling productions of the "Zymergen Defendants" privilege logs in November 2024, Plaintiff began meeting and conferring with counsel for Zymergen and the Director Defendants about inadequacies in their privilege logs which did not comply with the Court's standing order or provide the necessary detail to allow Plaintiff to assess the privilege.[4]    Ex. 1.    Following unsuccessful meet and confer efforts, the parties submitted a joint discovery letter on December 12, 2024 addressing six categories of privilege log entries

---

[3]    The four initial logs were produced to Plaintiff by WilmerHale on August 10, 2023 (475 entries); September 13, 2023 (843 entries); August 27, 2024 (2,485 entries); and November 21, 2024 (146 entries).    Pfefferbaum Decl., ¶2.

[4]    Plaintiff also moved to compel these Defendants to produce a redaction log, which as noted below, was ultimately produced.    *See* ECF 397, 412.

1  ("Joint Letter").  ECF 452 at 1.  When the Joint Letter was filed, and like their prior correspondence

2  with Plaintiff's counsel, WilmerHale stated that the privileges being raised were owned by both

3  Zymergen and the Individual Defendants they represented.  *See e.g., id.* at 6 ("Over the course of

4  discovery, the ***Zymergen Defendants*** have produced four installments of ***their*** privilege log.");

5  Ex. 1.[5]  One of the specific issues raised in the initial joint discovery letter was that Zymergen and

6  the Director Defendants were improperly using their privileges as a sword and a shield.  *Id.* at 1.

7  Specifically, Plaintiff argued, that Defendants' good faith and due diligence defenses both involve

8  reliance on attorney communications, and thus it is unfair to Plaintiff to face these defenses and at

9  the same time these Defendants refuse to produce documents Plaintiff needs to refute them.  *Id.* at

10  1-2.

   **D.      The Magistrate Judge Orders Additional Briefing on Whether
            Zymergen Can Properly Assert Any Privilege**

12          On December 17, 2024, the Court held a hearing and provided the parties its preliminary

13  views on the six disputed categories of documents, and ordered supplemental briefing.  *See* ECF

14  458.  Hidden in a footnote in its supplemental opening brief, WilmerHale argued that the Individual

15  Defendants could not actually waive Zymergen's privileges with their affirmative defenses,

16  suggesting that none of the privileges asserted were owned by the Individual Defendants but in

17  fact belonged solely to Zymergen.  ECF 475 at 1 referring to ECF 467 at 3 n.3.  In response to this

18  shifting position, Plaintiff responded that if only Zymergen could assert the privileges, those

19  privileges were waived because a defunct corporation has no privileges to assert.  ECF 475 at 1-2.

20          On January 21, 2025, the Court held another hearing.  ECF 489.  After months of

21  obfuscation, Zymergen and the Director Defendants finally clarified to Plaintiff and the Court that

22  only Zymergen was the holder of the privileges.  ECF 462 at 17:2-8.  The same day, the Court

23  issued an order which instructed the parties to file simultaneously supplemental opening and reply

24  briefs on the foundational issues of: "(1) whether Zymergen still holds an attorney-client privilege

---

[5]      Emphasis is added and citations are omitted throughout unless otherwise indicated.

1  in light of the liquidation plan currently in place and, if so, (2) whether the Director Defendants

2  can waive Zymergen's attorney-client privilege."  ECF 483.

3         On February 4, 2025, the parties filed their opening briefs.  ECF 500, 501.  Plaintiff argued,

4  among other things, that Zymergen had waived its privilege because: (i) it was a defunct corporate

5  entity with no ongoing business function; and (ii) Zymergen was adverse to the Individual

6  Defendants and waived the privilege by selectively sharing privileged information.  ECF 500.

7  Plaintiff noted that the Bankruptcy Plan stated the Trust held causes of action against the Director

8  Defendants, and Plaintiff pointed to a July 26, 2024 filing by the Trustee in the U.S. Bankruptcy

9  Court for the District of Delaware, in which the Trustee threatened that "[t]he Liquidating Trust

10 will be ready to file a complaint with these Potential Claims [against the former Zymergen

11 directors and officers] in the absence of a successful mediation."  ECF 500 at 5.  In their own

12 simultaneous filing on February 4, 2025, the Zymergen and the Director Defendants revealed for

13 the first time yet another new position, that Zymergen was not actually asserting the privilege, it

14 was the Trustee, and only he could assert or waive the privilege.  ECF 501 at 4-6.

15        In its February 11, 2025 response, Plaintiff called out the Zymergen and the Director

16 Defendants for this "shell game" in which they repeatedly shifted responsibility for asserting the

17 privilege and pointed out that – despite Zymergen bearing the burden to establish the privilege –

18 there was no evidence in the record that the Trustee had ever sought to assert the privilege.  ECF

19 521.

20        The same day, the Zymergen Defendants slammed as "ludicrous" the argument that they

21 were somehow adverse or had waived the privilege:

22        Equally *ludicrous* is Plaintiffs' suggestion that there is something nefarious
         about Zymergen and the Director Defendants purportedly "working together in
23       tandem" in this action to defend Zymergen's privileges.  [ECF 500 at 3-4].  Even
         post-bankruptcy, Zymergen and the Director Defendants remain as co-defendants
24       in this litigation. . . .  Nor do Plaintiffs explain why the Liquidating Trustee's effort
         to try to bring all relevant parties together for a global mediation of all potential
25       matters [ECF 500 at 6] somehow renders Zymergen and the Director Defendants
         adversaries in this litigation - in which Plaintiffs are seeking to establish liability
26       against, and obtain recovery from, both Zymergen and the Director Defendants.
         Plaintiffs offer no authority for this remarkable proposition . . . .
27
   ECF 520 at 4.
28

On February 20, 2025, in response to the questions raised by Plaintiff's brief, the Court instructed the Zymergen Defendants to address: "'[W]hether the Trustee has authorized WilmerHale to act on its behalf.'" ECF 522, quoting ECF 521 at 2. The next day, the Trustee submitted a declaration stating that he authorized WilmerHale to continue to assert Zymergen's attorney-client and work product privileges. ECF 523 at 1; ECF 523-1.

### E. The Privilege Order: The Court Holds that Zymergen Can Continue to Assert Privilege

On February 21, 2025, this Court issued the Privilege Order denying Plaintiff's challenges to Zymergen's ability to assert any privilege. ECF 524 (Privilege Order). The Privilege Order held that the Trustee was authorized to assert privileges on Zymergen's behalf based on the terms of the Bankruptcy Plan and the Trustee's declaration. *Id.* at 4-5. The Privilege Order found that Zymergen had not "waived the attorney-client privilege by working with the Director Defendants." *Id.* In addressing Plaintiff's argument that Zymergen's disclosure to Director Defendants constituted selective waiver to an adversary, the Court chose to accept the Zymergen Defendants' and Trustee's arguments and declaration, finding that Plaintiff's arguments concerning the claims the Trustee was prepared to bring in July 2024 was far beyond the current dispute:

> Plaintiffs suggest that WilmerHale asserting the privilege on behalf of the Trustee gives rise to a conflict of interest. Dkt. 521 at 2. The suggestion, presented without legal support, unnecessarily reaches far beyond the bounds of the present discovery dispute. The record before the Court is that the Trustee has directed WilmerHale to assert the attorney-client privilege in this instance. Dkt. 523, 523-1. That is all the Court needs to give effect to the Bankruptcy Court's directive memorialized in the Liquidating Trust Agreement.

Privilege Order at 3. The Court accepted Zymergen and the Individual Defendants' assertions that they were not adverse and noted that the threatened claims in bankruptcy court by the Trustee were no more than possibilities that had yet to come to fruition:

> The second argument is that Zymergen's disclosure of documents to the Director Defendants "is a selective waiver to an adversary that destroyed any privileges." Dkt. 500 at 4. First, ***while it is conceivable that an action may arise from the bankruptcy proceedings that puts Zymergen and the Director Defendants in an adversarial posture, there is no such action at this time***, and these Parties are co-defendants in this present litigation.

*Id.* at 5.

1   With respect to the arguments that Zymergen was a defunct entity that no longer could

2   assert the privilege as it no longer served its intended purpose, the Court agreed with Plaintiff that

3   "a truly defunct corporation has no privilege to assert" but found that "a bankruptcy trustee may

4   have a privilege to waive." *Id.* at 3.

5   **F.    Zymergen and the Director Defendants Review Privileged Documents**

6   While the Court upheld Zymergen's ability to assert privileges, it did make findings in

7   Plaintiff's favor regarding certain types of documents, or particular recipients, that were not

8   properly subject to privilege.    WilmerHale subsequently reviewed Zymergen's withheld

9   documents, which resulted in the production to Plaintiff of 917 withheld documents (3,796 pages)

10  and 242 redacted documents (1,958 pages).  Pfefferbaum Decl., ¶4.  Then on April 4, 2025, having

11  reviewed Zymergen's privileges again, with certain duplicate entries removed and other withheld

12  documents produced now with redactions, WilmerHale produced to Plaintiff a revised

13  consolidated privilege log containing 3,144 entries and a revised redaction log containing 3,517

14  entries, which remain withheld from Plaintiff today.[6]  Pfefferbaum Decl., ¶4; Exs. 2-3.

15  **G.    Zymergen Files a State Court Action Against the Individual
        Defendants Alleging Massive and Systemic Fraud**

16
17  On June 6, 2025, the Trust, on behalf of and as successor-in-interest to Zymergen, brought

18  suit against the Individual Defendants in Superior Court of the State of California, County of San

19  Francisco ("Zymergen Complaint") which widely mirrors the factual allegations which support

20  the operative Complaint in this action.[7]  Zymergen alleges that:

21          This case arises from a ***massive and systemic fraud*** at Zymergen in which
            the Defendants made - and/or allowed Zymergen to make – material
22          misrepresentations in connection with its initial public offering on April 22, 2021
            (the "IPO").  ***Zymergen misled IPO investors*** about, among other things, its overall
            market potential, revenue prospects, and customer pipeline for its only

---

[6]   The logs reflect an untold number of senders and recipients, including more than 400
25  individuals, as well as group email addresses, such as electronics@zymergen.com, zed-
26  leadership@zymergen.com, or zymergen-jf@joelefrank.com, for which recipients were never
    identified and could have included hundreds more.  Pfefferbaum Decl., ¶4; *see* Exs. 2-3.

27  [7]   The State Court Action is brought against all of the Individual Defendants with the exception
28  of defendant Sandra E. Peterson.

commercially available product, an electronics film named Hyaline, ***in what proved to be unsupported hype unmoored from objective facts.***

ECF 557-2, ¶1.  The Zymergen Complaint identifies many of the same misrepresentations in the Registration Statement that are also identified as false and misleading in this action.  For example:

> ***The untrue statements of material facts and omissions*** concerned the Company's biofacturing platform; the Company's ability to create commercially viable products and, to the extent it could, to make such products faster, cheaper and more sustainably using the biofacturing platform; the product development process; the development status of 11 products in the Company's product pipeline; the market opportunity for those products, in particular for Hyaline; and when those products would generate revenue.

*Id.*, ¶6 (compare to ECF 321, ¶12).  Zymergen identifies information known to the Individual Defendants that was improperly omitted from the Registration Statement:

> Specifically, the Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, inter alia, that: (i) key customers encountered technical issues in implementing Hyaline into their manufacturing processes; (ii) the Company's commercial teams lacked insight into the qualification process, causing the Company to overestimate demand for Hyaline; (iii) the market opportunity for Hyaline was smaller than the Company had previously represented . . . .

*Id.*, ¶37.  The Zymergen Complaint alleges that the Individual Defendants' misconduct constitutes breach of fiduciary duty, unjust enrichment, and waste of corporate assets.  *Id.*, ¶¶163-185.  Zymergen seeks to hold the Individual Defendants jointly and severally liable for the damages sustained by Zymergen, as well pre- and post-judgment interest.  *Id.* at 60.

## H.    WilmerHale Moves to Withdraw as Counsel for Zymergen Due to Adversity Between Zymergen and Individual Defendants

On June 26, 2025, Plaintiff alerted the Court to the filing of the Zymergen Complaint, asking for limited discovery to ascertain the impact of it on Defendants' positions and expert testimony proffered before the Zymergen Complaint was filed.  ECF 557.  The next week, on July 3, 2025, WilmerHale filed a Motion to Withdraw as Counsel for Zymergen ("Withdraw Motion").  ECF 561.  WilmerHale states, "[s]ince February 2024, the Trust (as Zymergen's successor-in-interest) has directed the defense of the Company in this litigation," and is familiar "with the relevant facts and issues" in this case.  ECF 561 at 2, 14.  As it related to adversity between Zymergen and the Director Defendants, WilmerHale explained in their motion:

1  
2  
3  

> Last month, the Trust (represented by Glenn Agre) filed suit in California state court against certain former officers and directors of Zymergen – including those represented by WilmerHale – and asserted claims related to the Zymergen IPO and registration statement. . . .  Plaintiffs in this case quickly tried to use the Trust's filing to their advantage and assert that it creates a conflict between the Company and WilmerHale's individual clients.

4  
5  

> ***Under these circumstances, it is no longer tenable for WilmerHale to remain as counsel for Zymergen***.

6  ECF 561 at 2.  The Withdraw Motion was further supported by the Declaration of WilmerHale

7  attorney, Susan S. Muck, which revealed that she had raised concerns about the conflicting

8  interests of representing both the Individual Defendants and Zymergen to the Trustee in ***September***

9  ***2024*** –prior to the privileged dispute being brought to the Court.  ECF 561-1, ¶13.

10  
11  
12  
13  

> ***In September 2024,*** as part of our ongoing dialog with Glenn Agre and the Trustee regarding this litigation, ***WilmerHale raised concerns regarding our continued joint representation of Zymergen and the individual directors*** and suggested that Glenn Agre replace WilmerHale as the Company's counsel in this action, ***particularly given the possibility that the interests of the Company and the individual directors might no longer be aligned***.  That suggestion was rebuffed by the Trust's counsel.

14  *Id.*  Despite these concerns, and WilmerHale's suggestion that ***Zymergen*** obtain other counsel,

15  Zymergen continued to engage WilmerHale to represent it and conduct the privilege re-review.

16  The Muck Declaration explains:

17  
18  
19  
20  

> Over the succeeding months [*i.e.,* since September 2024], WilmerHale focused its efforts on defending the claims against the Company and the individual directors, which included (among other things) completing document discovery, ***completing privilege logs***, addressing discovery disputes, preparing for and participating in depositions, addressing mediation issues, working with experts, working on summary judgment motions, and preparing for trial.

21  *Id.*  In fact, the Muck Declaration explains that while it represented simultaneously Zymergen and

22  the Director Defendants who were adverse, WilmerHale discussed consistently and regularly

23  Zymergen's privileges with the Trustee:

24  
25  
26  

> Following approval of the Liquidation Plan, I and other lawyers at WilmerHale . . . have consistently provided the Trustee and Trust (through their counsel, Glenn Agre) with status reports and updates on developments in this action . . . and have regularly consulted with and taken direction from Glenn Agre and the Trustee on matters involving Zymergen in this case – including, for example, ***the assertion of attorney-client privilege*** . . . .

27  *Id.*, ¶12.

28  

---

On July 31, 2025, the Court orally granted WilmerHale's motion to withdraw. ECF 591 at 8:24-25.

**I.    In Opposing Plaintiff's Request to Modify the Case Schedule, the Individual Defendants Claim Adversity Was Known**

On June 26, 2025, Plaintiff moved to reopen discovery after learning that Zymergen had sued the Individual Defendants. *See* ECF 557. In opposing Plaintiff's motion the Individual Defendants argued that Plaintiff knew that Zymergen and the Individual Defendants were adverse since "***July 2024***." ECF 567 at 6. Despite claiming to Plaintiff and the Court that attempts to compel a mediation did not "somehow render[] Zymergen and the Director Defendants adversaries" (ECF 520 at 4), the Individual Defendants switched course now saying that the Trustee's motion somehow made Plaintiff aware that Zymergen would bring fraud claims against the Individual Defendants:

> [T]he Trust advised the Bankruptcy Court and Lead Plaintiff nearly a year ago—***in July 2024***—that the Trust intended to pursue such claims. (Ex. C.) In its motion to compel mediation, the Trust represented that it "will be ready to file a complaint with [its] Potential Claims [against the Individual Defendants] in the absence of a successful mediation." (Id. at 8.) The Trust provided notice of that motion to Lead Plaintiff, who then filed an objection. (Ex. D at 2, 7.) Accordingly, Lead Plaintiff learned of the Trust's potential claims nearly a year ago.

ECF 567 at 6. In fact, despite Zymergen and the Individual Defendants' claims that their adversity was "ludicrous" when briefing the privilege issue, they now claimed that the Court also knew that they were adverse all along saying:

> In her order, Judge Van Keulen rejected the very argument that Lead Plaintiff now suggests the Court should reconsider based on the filing of the Trust Complaint: that adversity between Zymergen and the Director Defendants gives rise to a waiver of Zymergen's pre-existing privileges.

*Id.* at 9.

**J.    The Trustee Moves to Intervene on Behalf of the Trust**

On July 8, 2025, the Trustee wrote to Plaintiff representing that Zymergen had exhausted its available insurance and "the claims asserted in the Class Action are now subject to the Plan Injunction and must be dismissed immediately." ECF 564-4; *see* ECF 564-3 (July 7, 2025 letter from AXIS Insurance Company). The Trustee's position is that Zymergen and the Trust are immune from suit because the Bankruptcy Plan injunction is now in place, "prohibiting any party

1   from commencing or continuing any lawsuit, claim or other action against Zymergen or its

2   successor in interest, the Trust."  ECF 564-4 at 1.

3          On July 10, 2025, the Trustee, through its counsel at Glenn Agre, filed a motion to intervene

4   in this case on behalf of the Trust (but not on behalf of Zymergen), and admits that "[w]ith respect

5   to Zymergen's attorney client privilege, the Individual Defendants' interests and incentives in this

6   action are potentially adverse to those of the Trust."  ECF 564 at 4.  The Trustee also prematurely

7   attached an opposition to this Motion, but in doing so, the Trustee admitted that Zymergen and the

8   Director Defendants have been *adverse* all along, claiming that their adversity is not a new material

9   fact.  ECF 564-2.  On July 31, 2025, the Court orally granted the Trustee's motion to intervene.

10  ECF 591 at 7:2.

11         **K.     The Court Grants Leave to File Motion for Reconsideration**

12         On July 30, 2025, Plaintiff sought leave to file a motion for reconsideration of the Privilege

13  Order based on the occurrence of new material facts.  ECF 582.  On August 4, 2025, the Court

14  granted that motion, and Plaintiff brings the instant one.  ECF 592.

15  **III.    LEGAL STANDARD**

16         "Trial courts have inherent power to reconsider, set aside, or amend interlocutory orders at

17  any time prior to entry of a final judgment.  Fed. R. Civ. P. 54(b)."  *NICKY LAATZ v. ZAZZLE,*

18  *INC.*, 2025 WL 2210009, at *2 (N.D. Cal. Aug. 4, 2025).  Reconsideration is appropriate when

19  "'the district court is presented with newly discovered evidence, committed clear error, or if there

20  is an intervening change in the controlling law.'"  *Id*. (quoting *McDowell v. Calderon*, 197 F.3d

21  1253, 1254 (9th Cir. 1999)).  Similarly, Courts in this District have found that Civil Local Rule 7-

22  9 is applicable, where "reconsideration may be made on three grounds: (1) a material difference

23  in fact or law exists from that which was presented to the court, which, in the exercise of reasonable

24  diligence, the moving party did not know at the time of the order for which reconsideration is

25  sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the

26  court to consider material facts or dispositive legal arguments.  Civ. L.R. 7-9(b)."  *Id*.

27

28

1    **IV.    ARGUMENT**

2        **A.    Plaintiff Has Been Diligent in Bringing This Motion Based on the
            Emergence of New Material Facts Warranting Reconsideration**

3            Plaintiff has been diligent in bringing this motion in light of the emergence of new material

4    facts and related developments: Zymergen's filing of the State Court action and Zymergen's

5    purported exhaustion of its insurance.  *See* Civ. L.R. 7-9(b).  Plaintiff first learned of the Zymergen

6    Complaint on June 16, 2025, and immediately requested updates from Defendants as to its

7    implications.  ECF 557 at 5-6.  When Plaintiff was rebuffed and ignored, on June 26, 2025, Plaintiff

8    moved the Court to reopen discovery and alerted the District Court of the need to reconsider the

9    Privilege Order.  *Id*.  Throughout July 2025, additional new facts were revealed.  On July 3, 2025,

10   WilmerHale moved to withdraw from the case and disclosed information about communications

11   with the Trustee not previously known.  *See* §II.H..  On July 8, 2025, the Trustee informed Plaintiff

12   of his position that Zymergen's insurance was depleted, making Zymergen and the Trust immune

13   from any lawsuit, claim, or other action.  *See* §II.I.  At the same time that it was briefing five other

14   motions (and one joinder) before Judge Pitts, Plaintiff sought leave of this Court to file the instant

15   motion on July 30, 2025.  ECF 553, 555, 556, 557, 561, 564, 582.  Courts in this District find that

16   this timing is within the required reasonably diligent time frame.  *See, e.g., Day v. GEICO Cas.

17   Co.*, 2023 WL 6120668, at *1 (N.D. Cal. Sept. 18, 2023) (Seven months since emergence of a new

18   material fact); *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, 2018 WL 1116738, at *2

19   (N.D. Cal. Mar. 1, 2018) (given complexity four months was justified).

20           The filing of the State Court action, and the Defendants' subsequent filings addressing it,

21   are "new material facts" occurring after the Privilege Order which support reconsideration.  Civ.

22   L.R. 7-9(b)(2).  *See, e.g.*, *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 963 (N.D. Cal.

23   2014) (granting reconsideration of prior order because of government notice issued after District

24   Court's order).  Indeed, the exact scenario that the Court found was merely hypothetical has now

25   occurred.  Privilege Order at 5 ("[W]hile it is conceivable that an action may arise from the

26   bankruptcy proceedings that puts Zymergen and the Director Defendants in an adversarial posture,

27   ***there is no such action at this time*** . . . .").  Because of this new material fact, the Court already

28

1  found that "there is good cause to reopen discovery and modify the case schedule to the extent

2  necessary to resolve [this motion]."  ECF 590 at 4.[8]

3          Zymergen's July 8, 2025 claim that it has exhausted its insurance coverage and no longer

4  must engage in this action is the other new material development which provides a separate basis

5  for reconsideration.   Civ. L.R. 7-9(b)(2); *see*, *e.g.*, *Day*, 2023 WL 6120668, at *1 ("written

6  document issued by the California Department of Insurance ('CDI') after the entry of the Prior

7  Order constitutes the emergence of a new material fact").  The Court's Privilege Order found that

8  "a truly defunct corporation has no privilege to assert," and the new facts including that Zymergen

9  has completely exhausted its insurance, WilmerHale's withdrawal as their counsel, the Trustee

10  refuses to substitute them, the Trustee's arguments that "Zymergen has no further obligation to

11  participate in the litigation," and that it is immune from suit, all support that there truly is no viable

12  purpose for Zymergen's privileges.  Privilege Order at 3; ECF 569-2 at 2.

13      **B.      Zymergen's State Court Action Confirms Adversity with the
                Individual Defendants**

14

15          There is no question that Zymergen and the Director Defendants are adverse – the Director

16  Defendants, WilmerHale who represented Zymergen, and the Trustee all agree.  Contrary to their

17  February 11, 2025 position that Plaintiff's adversity arguments were "***ludicrous***" (ECF 520 at 4),

18  the Director Defendants now admit that their adversity with Zymergen was supposedly apparent

19  to Plaintiff since at least "***July 2024***."  ECF 567 at 6.  WilmerHale admits to raising concerns of a

20  conflict necessitating withdrawal with the Trustee in ***September 2024*** and advising Zymergen to

21  obtain new counsel.  ECF 561 at 1, 9; ECF 561-1, ¶13.  The Trustee does not dispute that they

22  were ***ever*** not adverse, but instead argues (albeit falsely) that the State Court action somehow

23  presents no new material development.  ECF 564-2 at 4; *see* ECF 590 at 4.  Notably, no Defendant

24

25  ─────────────────────
26  [8]    Director Defendants have made arguments that the Court has already ruled that privileges are
   not waived when shared between adversaries, but this would be a clear error of law and an
   alternative basis for reconsideration pursuant to Civ. L.R. 7-9(b)(3).  *See* ECF 567 at 9-10;  *Waymo*
27  *LLC v. Uber Techs., Inc.*, 2017 WL 11917907, at *4 (N.D. Cal. Aug. 14, 2017) ("'principal
   purpose'" of waiver doctrine "'is to protect against the unfairness that would result from a privilege
28  holder selectively disclosing privileged communications to an adversary'").

1    points to any intervening event between February 2024 and the filing of the State Court action as

2    the source of new-found adversity, indicating that these parties have always been adverse.

3         In fact, the disclosures and admissions now available to Plaintiff and the Court indisputably

4    confirm that the existence of adversity between Zymergen and the Individual Defendants since

5    February 2024 when the Bankruptcy Plan went into effect. In the Zymergen Complaint, the

6    Trustee accuses the Individual Defendants of perpetrating a massive and systemic fraud and

7    specifically discloses that the causes of action "brought in this Complaint" are the same ones

8    referenced in the Bankruptcy Plan. ECF 557-2, ¶93. When the Bankruptcy Plan was confirmed

9    the Trustee reserved "Causes of Action against directors and officers of the Debtors who served

10   prior to October 19, 2022 [*i.e.* the Individual Defendants]." ECF 567-2 at 7. And as is confirmed

11   by law, any causes of action the Trustee could bring must be included in Bankruptcy Plan.

12   *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("a party is judicially

13   estopped from asserting a cause of action not raised in a reorganization plan"). While Plaintiff and

14   the Court did not have the benefit of the Zymergen Complaint setting out the causes of action,

15   those causes of action have existed since the Bankruptcy Plan was confirmed, which now makes

16   clear that Zymergen and the Individual Defendants should have been considered adverse since

17   February 24, 2024.[9] ECF 557-2, ¶93.

18       **C.    Zymergen's Privileges Have Been Waived Through Selective
          Disclosure to an Adversary**

19

20        Zymergen and the Individual Defendants' adversarial posture demonstrates that the Trustee

21   has expressly waived the privileges over documents being withheld. As "[o]ne of the elements

22   that the asserting party must prove," Zymergen bears the burden of showing that it did not provide

23   its privileged information to the adverse Individual Defendants, who are also represented by

24   WilmerHale. *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981)). This

25   is because for the attorney-client privilege, "'voluntarily disclosing privileged documents to third

26   parties will generally destroy the privilege.'" *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th

27   _____

   [9]    WilmerHale also acknowledges that the causes of action against the Director Defendants is

28   "pursuant to the Liquidation Plan." ECF 561 at 8.

1    Cir. 2020).    And work product is waived when a party "'has substantially increased the

2    opportunities for potential adversaries to obtain the information.'"  *Id.* at 1121.

3        Zymergen cannot meet this burden because **after** the Trustee reserved its right to bring its

4    claims against the Individual Defendants in February 2024; and **after** the Trustee threatened those

5    same Individual Defendants with litigation in July 2024; and **after** WilmerHale told the Trustee

6    that it should retain new counsel for Zymergen in September 2024, the Trustee permitted

7    WilmerHale to conduct a review of Zymergen's purportedly privileged documents that were not

8    otherwise available to the Individual Defendants, produce certain previously-withheld documents,

9    and discuss and create privilege and redaction logs.  *See* §§II.F, H.  Indeed, this sequence of events

10   is not in dispute: WilmerHale has admitted that since February 24, 2024, it "regularly consulted

11   with and taken direction from Glenn Agre and the Trustee on matters involving Zymergen in this

12   case – including, for example, **the assertion of attorney-client privilege**."  ECF 561 at 7; ECF 561-

13   1, ¶12.  Indeed, the revised logs, and further productions were made to Plaintiff by WilmerHale in

14   **April 2025**.  Pfefferbaum Decl., ¶4.  This sequence of events mandates reconsideration of the

15   Court's Privilege Order.

16       Providing privileged documents to an adverse party and its counsel to perform a review for

17   privilege constitutes waiver.[10]  *SEC v. Mazzo*, 2013 WL 12172628, at *17 (C.D. Cal. Oct. 24,

18   2013) (corporation waived privilege when it gave privileged documents to counsel who

19   represented both the corporation and director/CEO, where director/CEO "had adversarial,

20   conflicting interests rather than common interests" with corporation); *Ronduen v. GEO Grp. Inc.*,

21   2025 WL 571400, at *10 (C.D. Cal. Feb. 7, 2025) (despite joint defense agreement, "GEO and

22   Spartan waived both the attorney-client and work product privileges when they exchanged

23   documents" because they were potentially adverse).  While, at some point sharing documents

24

25   _____

[10]    Whether Zymergen and the Director Defendants were adverse or potentially adverse is
26   irrelevant.  "The court need not make such a finding, however, because the disclosure of [attorney-
     client and] work product-protected information to a potential adversary is sufficient to support a
27   finding of waiver."  *Neilson v. Union Bank of Cal., N.A.*, 2003 WL 27374179, at *4-*5 (C.D. Cal.
     Dec. 23, 2003) (Waiver where "'disclosure enable[s] an adversary to gain access to the
28   information.'").

might have been excusable under a common interest privilege, that ended when Zymergen and the Individual Defendants became adverse. *See U.S. v. Gonzalez*, 669 F.3d 974, 981 (9th Cir. 2012) ("[Joint defense agreement] had ended at least by the time Gonzalez decided to pursue his own defense and blame Paiz for the crime (thus ending their common legal interests)."). The Court cannot defer to Defendants' formalities or self-serving representations either. For example, this Court has found in a similar securities case, that despite entering into an oral joint-defense agreement, a corporation and its former director's conversations (which included sharing and discussing company documents) were not privileged, when that former director later testified that he was indifferent to the outcome of that action – here the parties' interests are much farther apart, they are adverse. *In re Twitter Inc. Sec. Litig.*, 2019 WL 2127820, at *2 (N.D. Cal. May 10, 2019).[11]

        If Zymergen claims there is to be a "joint-client" exception to waiver "there must be a community of interests between the joint clients," which was not the case here. *S. Union Co. v. Sw. Gas Corp.*, 205 F.R.D. 542, 548 (D. Ariz. 2002); *see SEC v. Aequitas Mgmt., LLC*, 2017 WL 6329716, at *3 (D. Or. July 7, 2017) ("In particular, because co-clients agree to share all information related to the matter of common interest with each other and to employ the same attorney, their legal interests must be identical (or nearly so) in order that an attorney can represent them all with the candor, vigor, and loyalty that our ethics require."). And as the Ninth Circuit has held, joint defense agreements may be ended by "by conduct," such as blaming a co-defendant as is the case here. *U.S. v. Gonzalez*, 669 F.3d 974, 981 (9th Cir. 2012). That the Trustee did not replace Zymergen's counsel, WilmerHale, when the Trust knew it possessed fraud-based claims against the Individual Defendants does not excuse the Trustee's voluntary disclosure to its adversaries. Rather, this is standard waiver, where a party "'engaged in self-interested selective

---

[11]    *See* underlying Magistrate Judge's order *Shenwick v. Twitter, Inc.*, 2019 WL 3815717, at *1 (N.D. Cal. Apr. 1, 2019) ("[Former director] relied on Twitter for access to documents to prepare for his deposition . . . he wished to review documents in Twitter's possession, and it is understandable that he might have questions about the documents.").

1  disclosure by revealing its [privileges] to some adversaries but not to others.'" *Sanmina Corp.*,

2  968 F.3d at 1121.

3      The Court's Privilege Order stating that the Director Defendants "were a party and/or had

4  access *at the time of the communication* as members of Zymergen's board" does not defeat waiver.

5  Privilege Order at 5.  First, Zymergen's updated April 2025 privilege and redaction logs readily

6  refute the notion that **each** withheld document was contemporaneously sent to or received by **each**

7  of the ten Individual Defendants.  Exs. 2-3.  Indeed, the vast majority of the privilege log entries

8  do not include **all** ten Individual Defendants (or any relevant group email address suggesting they

9  were recipients).  This is unsurprising as certain of the Individual Defendants' affiliations with

10  Zymergen did not exist during the applicable time period.  For example, Gorjanc did not join the

11  Board until March 2021, Hoffman was terminated in August 2021, and Singh (an officer who

12  signed the Registration Statement) was never a member of the Board.  Likewise, many of the

13  withheld communications do not directly implicate the functions of the Board of Directors.  Thus

14  the notion that **each** of the ten Individual Defendants were contemporaneous recipients of **every**

15  withheld document – as opposed to receiving them in the course of this litigation – is

16  unsupported.[12]

17      Second, the former officers and directors were terminated (at the latest) when the Company

18  was sold and lost the ability to access to the documents that Zymergen now seeks to withhold, thus

19  Zymergen's subsequent sharing and discussion of these documents with them (or their counsel)

20  when they were adverse waived the privilege.  *Sanmina Corp.*, 968 F.3d at 1116 ("'voluntarily

21  disclosing privileged documents to third parties will generally destroy the privilege'"); *see In re*

22  *Twitter Inc. Sec. Litig.*, 2019 WL 2127820, at *2 (N.D. Cal. May 10, 2019) (finding waiver when

23  company discussed documents with former director in preparation for his deposition, *see* n.11,

24  *supra*).  It is settled law that "'[e]ach party is deemed bound by the acts of his lawyer-agent and is

25  considered to have notice of all facts, notice of which can be charged upon the attorney.'" *Lawson*

---

26

27  [12]  Whether the Individual Directors could have contemporaneously accessed the withheld
documents as a Board Member does not provide them with the actual knowledge of the contents
28  of those documents that the Defendants now try to claim.

1    *v. DoorDash, Inc.*, 2023 WL 2782314, at *3 (N.D. Cal. Jan. 31, 2023) (quoting *Link v. Wabash R.*

2    *Co.*, 370 U.S. 626, 634 (1962)).  And "once documents have been turned over to another party

3    voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery

4    of the information and related communications by his adversaries." *Bittaker v. Woodford*, 331

5    F.3d 715, 720 (9th Cir. 2003).

6            Lastly, Defendants have it backwards: Zymergen, not Plaintiff, has the obligation to show

7    that the privileged documents were not shared with the Individual Defendants. *Weil*, 647 F.2d at

8    25.  Plaintiff has already shown that far from being "speculative" as the Individual Defendants

9    argued, there is no doubt that all privileged documents were shared and discussed with the

10   Individual Defendants by way of their counsel.  ECF 591 at 21:19.  WilmerHale, Zymergen, and

11   the Individual Defendants all admit that this occurred, and the privilege logs provided are evidence

12   that the review occurred.  *See* §II.F, H; ECF 591 at 21:23-24 (Individual Defendants'

13   representative stating in Court "Zymergen has provided to its counsel, documents which have been

14   reviewed for privilege.").  The Court must place the proper burden on the Trustee to show that it

15   has not waived Zymergen's privileges.[13]

16   **D.    Zymergen's Privileges Asserted by the Trustee Fall Under the Crime-
            Fraud Exception**

17           Because the Trustee alleges a "massive and systemic fraud" perpetrated by the Individual

18   Defendants, the Court must reconsider its prior holding and determine whether the withheld

19   documents fall under the crime-fraud exception.  First, in order for the crime-fraud exception to

20   apply Plaintiff must show that "'the client was engaged in or planning a criminal or fraudulent

21   scheme when it sought the advice of counsel to further the scheme.'" *Skillz Platform Inc. v.*

22   *AviaGames Inc.*, 2023 WL 8040871, at *2 (N.D. Cal. Nov. 20, 2023).  Here, the "client,"

23   Zymergen, alleges that a fraudulent scheme was operated through its own former officers and

24   directors.  *See U.S. v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002), *as amended on denial of reh'g*

25

26   _____

     [13]  To the extent the Court needs additional facts from Zymergen and the Individual Defendants
27   that they have yet to disclose, the Court can permit discovery into those facts.  ECF 590 at 4
     (finding good cause to reopen discovery "to resolve plaintiffs' pending motion for
28   reconsideration").

1    (Mar. 13, 2002) ("It does not matter that [corporation's counsel] was unaware of [corporation]'s

2    criminal purpose or that he took no affirmative step to further that purpose; the *client's* knowledge

3    and intentions control.") (emphasis in original).  The Trustee represents that a "massive and

4    systemic fraud at Zymergen . . . in connection with its initial public offering" was perpetrated by

5    the Officer Defendants, who "knowingly made or caused to be made the false and misleading

6    statements," and the other Director Defendants, who "knowingly or recklessly participated in

7    causing the Company to make the materially false and misleading statements."  ECF 557-2, ¶¶1,

8    169-170; *see also id.*, ¶176 ("Defendants had actual or constructive knowledge that they had

9    caused the Company to improperly engage in the fraudulent schemes . . . .").  *See, e.g., Anbang*

10   *Grp. Holdings Co. Ltd. v. Zhou*, 2024 WL 199563, at *3 (N.D. Cal. Jan. 18, 2024) (finding crime-

11   fraud exception applies based on allegations of fraud in complaint).[14]  At minimum, these facts

12   satisfy the "minimal showing" to necessitate an in camera review.  *U.S. v. Christensen*, 828 F.3d

13   763, 800 (9th Cir. 2015).

14        Second, Plaintiff must show "that the attorney-client communications for which production

15   is sought are 'sufficiently related to' and were made 'in furtherance of [the] intended, or present,

16   continuing illegality.'"  *AviaGames*, 2023 WL 8040871, at *2.  Here, the attorney-client

17   communications being withheld relate to, and were made in furtherance, what Zymergen describes

18   as "Defendants' scheme to issue materially false and misleading statements to the public."  ECF

19   557-2, ¶¶118, 173.  The Court has also agreed that "many of the allegations in the new state court

20   lawsuit mirror those in plaintiffs' own complaint."  ECF 590 at 4.  And the Director Defendants

21   acknowledge that the Zymergen Complaint's "assertions fundamentally stand on the same footing

22   as Plaintiffs' claims in this case" (ECF 567 at 9), with counsel for Zymergen at the time,

23

---

24   [14]   The Court can further rely on the cease and desist order which found that Zymergen made
     "misrepresentations and omissions during and after its initial public offering" resulting in a
25   securities law violation "in any transaction, practice, or course of business which operates or would
     operate as a fraud or deceit."  ECF 475-22, ¶¶1, 31.  And Zymergen's own admissions that their
26   attorneys were involved in the IPO.  *See* ECF 573 at 10 n.7; ECF 452 at 6 (Zymergen admitted
     that "Freshfields LLP, the law firm that advised the Company during its initial public offering.");
27   ECF 489 at 40:16-18 (Zymergen admitting that "where Freshfields is advising on the drafts of the
     registration statement, those have been withheld as privileged."); *see also* §IV.E. n.15, *Infra*
28   (discussing proffered expert testimony).

WilmerHale, agreeing that the Zymergen Complaint concerns "the same underlying legal and factual issues as this case." ECF 561 at 14. Under the second prong, the Court will be required to conduct an *in camera* review to determine the scope of the waiver. *In re Grand Jury Investigation*, 810 F.3d 1110, 1114 (9th Cir. 2016).

### E.    The State Court Complaint Puts at Issue the Documents Withheld and Constitutes an Implied Waiver

The filing of the Zymergen Complaint against the Director Defendants constitutes an implied waiver of the attorney client privilege. An "implied waiver occurs when '(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense.'" *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2025 WL 860505, at *2 (N.D. Cal. Mar. 19, 2025) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker*, 331 F.3d at 719. If waiver occurs, it applies to both attorney-client privilege and work product immunity. *Id.* at 733 n.6.

There is no real dispute that the documents being withheld in this case have been put at issue by the Trustee in the State Court action because both actions are premised on Zymergen's issuance of a false and misleading Registration Statement. *See, e.g., Palantir Techs. Inc. v. Abramowitz*, 2020 WL 5500418, at *2 (N.D. Cal. Sept. 11, 2020) (party waived privileges by disclosures in separate court). Indeed, as just discussed, the Court, Zymergen and the Individual Defendants agree that the Zymergen Complaint mirrors Plaintiff's Complaint. To the extent they do not already possess them (which they must disclose to the Court), the Individual Defendants will be able to obtain the withheld documents in discovery and utilize them in the State Court action – *i.e.*, with their new counsel, witnesses, and the court – in any defense they choose to mount. *See, e.g., In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007) ("When former co-clients sue one another, the default rule is that all communications made in the course

of the joint representation are discoverable.").  Whether analyzed as Zymergen's reliance on its counsel for its claims or the Director Defendants reliance on Zymergen's counsel for their defenses, either way, the Director Defendants have a right to the privileged documents.  *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2024 WL 74928, at *3 (N.D. Cal. Jan. 5, 2024) (Plaintiff must be able to know "what Defendants saw and what Defendants thought . . . at the time Defendants were conducting due diligence and made the allegedly false representations."); *see, e.g., Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 2017 WL 4642324, at *6 (N.D. Cal. Oct. 17, 2017) (Defendants' defenses waived privilege because "the 'reasonableness' of taking an incorrect legal position would heavily turn on the underlying legal analysis.").

Accordingly, as the Trustee waived Zymergen's privileges by bringing the State Court action, and the Director Defendants also now having a right to all the privileged documents, the Director Defendants cannot continue their unfair sword and shield defenses and must either produce the documents or rescind those defenses.  *See* ECF 475 at 2-5 and ECF 500 at 6-7 (Plaintiff's discussions of the Director Defendants' affirmative defenses).  Since the Privilege Order, the Individual Defendants have proffered expert testimony and, unlike what they previously represented to this Court, it is crystal clear that they intend to rely on the advice of their counsel.[15] *In re Broadcom Corp. Sec. Litig.*, 2005 WL 1403516, at *2 (C.D. Cal. Feb. 10, 2005) ("This proposed testimony unequivocally puts in issue reliance upon counsel as a defense-reliance on the fact counsel came to the conclusion everything was legal and didn't warn defendants of a problem. . . . Plaintiffs are now entitled to review the attorneys' communications on the subject topics to see if defendants are telling the truth."); *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 530 (N.D. Cal. 1988) ("Defendants cannot conceal such information from discovery and expect to spring it upon plaintiffs in the midst of trial for the sake of obtaining a tactical advantage in litigation."); *see also*,

---

[15]  *See, e.g.,* Ex. 4, ¶162; Ex. 4, Appendix A, ¶¶9, 11, 14, 17, 37-38, 40, 42, 44, 51, 54; Ex. 4, Appendix B, ¶¶17, 18, 35, 49; Ex. 4, Appendix C, ¶¶12, 41, 45 (Expert Report of Professor Charles K. Whitehead discussing reliance on IPO counsel Freshfields); *see* ECF 568-19 (Publicly filed excerpts of Whitehead's report); Ex. 5, ¶¶212-215 (Expert Report of Gary M. Lawrence discussing reliance on Freshfields' legal opinion).

1  *Moskowitz v. Lopp*, 128 F.R.D. 624, 638 (E.D. Pa. 1989) ("Although in theory the privilege

2  belongs to the corporation, fairness dictates that it be waived where a corporate officer asserts the

3  reliance on counsel defense.").

4  **F.    Zymergen's Privileges Have No Purpose and Are Extinguished**

5  The Trustee's assertion that Zymergen has extinguished its insurance proceeds, must be

6  dismissed from this case, and is immune from all other suits, supports reconsideration of whether

7  Zymergen's privilege still applies.  Privilege Order at 2-3.  It is a foundational principle that since

8  the attorney-client "privilege has the effect of withholding relevant information from the fact-

9  finder, ***it applies only where necessary to achieve its purpose***."  *Matter of Fischel*, 557 F.2d 209,

10  212 n.4 (9th Cir. 1977).  As the Ninth Circuit has said, "[t]he purpose of the privilege is to protect

11  and foster the client's freedom of expression.  It is not to permit an attorney to conduct his client's

12  business affairs in secret."  *Id.* at 211.  Thus, "'[w]hen the corporation is gone, so too is its interest

13  in protecting its communications; the need to promote full and frank exchanges between an

14  attorney and agents of his corporate clients disappears when the corporation employing those

15  clients has departed.'"  *Abdo v. Fitzsimmons*, 2019 WL 10910805, at *1 (N.D. Cal. Oct. 2, 2019);

16  *see Gilliland v. Geramita*, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006) ("The possibility

17  that a corporation's management will hesitate to confide in legal counsel out of concern that such

18  communication may become unprivileged after the corporation's demise is too remote and

19  hypothetical to outweigh the countervailing policy considerations supporting discoverability.").[16]

20  While the Court previously found that "a truly defunct corporation has no privilege to

21  assert," it avoided finding Zymergen's privileges extinguished saying it "may have a privilege to

22  waive."  Privilege Order at 3.  However, now the Trustee asserts that Zymergen is immune from

23  ***any person***, including Plaintiff, from "commencing or continuing any lawsuit, claim or other

24

---

25  [16]  This is notably different from individuals, because a natural person "may be concerned about

26  reputation, civil liability, or possible harm to friends or family" the posthumous disclosure of his
communications with counsel "may be as feared as disclosure during the client's lifetime," and
"[k]nowing that [such] communications will remain confidential even after death encourages the

27  client to communicate fully and frankly with counsel."  *Swidler & Berlin v. U.S.*, 524 U.S. 399,
407 (1998).

28

1     action," and demands that Zymergen be dismissed from the case.  ECF 564-4 at 1.  The Director

2     Defendants' also agree, with their position now being that "Zymergen has no further obligation to

3     participate in the litigation."  ECF 557 at 6; ECF 561 at 7.  And WilmerHale agrees, saying "the

4     Company itself has no liability here."  ECF 561 at 3.  The Trust has also acted indifferently to

5     litigation, thus far failing to substitute WilmerHale, even refusing to state to Zymergen's counsel

6     whether it even opposes their withdrawal.  *Id.* at 2.  Under these circumstances, the Trustee is

7     unlikely to meet his burden of demonstrating Zymergen's "'need to promote full and frank

8     exchanges'" with an attorney. *Abdo*, 2019 WL 10910805, at *1. [17]

9         As the Ninth Circuit instructs, "the privilege is to be applied only when necessary to

10    achieve its purpose of encouraging clients to make full disclosure to their attorneys," but for

11    Zymergen's privileges, there is no more client in the attorney-client relationship. *U.S. v. Osborn*,

12    561 F.2d 1334, 1339 (9th Cir. 1977).  Especially here where the privileges cover the events related

13    to the IPO, the Court should recognize that "the privilege protects the corporation - not the

14    individual employees" and Zymergen has no need for protection. *In re Fundamental Long Term*

15    *Care, Inc.*, 2012 WL 4815321, at *9 (Bankr. M.D. Fla. Oct. 9, 2012).  Zymergen's exhaustion of

16    its insurance proceeds and subsequent developments confirm that its privileges are waived.

17    **V.**     **CONCLUSION**

18         For the foregoing reasons, Plaintiff requests that the Court grant the motion for

19    reconsideration of the Privilege Order, find that Zymergen's attorney-client and work product

20    privileges no longer apply in this action, and direct it to produce all relevant and responsive

21    documents currently being withheld.

22

23

24

25

---

26   [17]  *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) ("As an inanimate entity, a corporation must act through agents.  A corporation cannot speak directly to its

27   lawyers.  Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf

28   of the corporation.").

1   DATED:  August 6, 2025                    Respectfully submitted,

2                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
3                                             SHAWN A. WILLIAMS
                                              DANIEL J. PFEFFERBAUM
4                                             ALEX N. JILIZIAN

5

6                                                  s/ Daniel J. Pfefferbaum
                                              DANIEL J. PFEFFERBAUM
7
                                              Post Montgomery Center
8                                             One Montgomery Street, Suite 1800
                                              San Francisco, CA  94104
9                                             Telephone:  415/288-4545
                                              415/288-4534 (fax)
10                                            shawnw@rgrdlaw.com
                                              dpfefferbaum@rgrdlaw.com
11                                            ajilizian@rgrdlaw.com

12                                            ROBBINS GELLER RUDMAN
                                                & DOWD LLP
13                                            JUAN CARLOS SANCHEZ
                                              PATTON L. JOHNSON
14                                            655 West Broadway, Suite 1900
                                              San Diego, CA  92101
15                                            Telephone:  619/231-1058
                                              619/231-7423 (fax)
16                                            jsanchez@rgrdlaw.com
                                              pjohnson@rgrdlaw.com
17
                                              Counsel for Plaintiffs
18

19                                            BERMAN TABACCO
                                              NICOLE LAVALLEE (SBN 165755)
20                                            KRISTIN J. MOODY (SBN 206326)
                                              CHRISTINA M. SARRAF (SBN 328028)
21                                            425 California Street, Suite 2300
                                              San Francisco, CA  94104
22                                            Telephone:  415/433-3200
                                              415/433-6382 (fax)
23                                            nlavallee@bermantabacco.com
                                              kmoody@bermantabacco.com
24                                            csarraf@bermantabacco.com

25

26

27

28

MOTION FOR RECONSIDERATION - 5:21-cv-06028-PCP                                    - 25 -
4938-3475-3627.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERMAN TABACCO
LESLIE R. STERN
PATRICK T. EGAN
One Liberty Square
Boston, MA  02109
Telephone:  617/542-8300
617/542-1194 (fax)
lstern@bermantabacco.com
pegan@bermantabacco.com

Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund

KLAUSNER, KAUFMAN, JENSEN
   & LEVINSON
ROBERT D. KLAUSNER
BONNI S. JENSEN
7080 NW 4th Street
Plantation, FL  33317
Telephone:  954/916-1202
954/916-1232 (fax)
bob@robertdklausner.com
bonni@robertdklausner.com

Board Counsel for Plaintiff West Palm Beach
Firefighters' Pension Fund