1  SUSAN S. MUCK (SBN 126930)
   susan.muck@wilmerhale.com
2  KEVIN P. MUCK (SBN 120918)
   kevin.muck@wilmerhale.com
3  WILMER CUTLER PICKERING
      HALE AND DORR LLP
4  50 California Street, 36th Floor
   San Francisco, CA 94111
5  Telephone: (628) 235-1000

6  PETER J. KOLOVOS (admitted pro hac vice)
   peter.kolovos@wilmerhale.com
7  WILMER CUTLER PICKERING
      HALE AND DORR LLP
8  60 State Street
   Boston, MA 02109
9  Telephone: (617) 526-6000

10 CHRISTOPHER W. JOHNSTONE (SBN 242152)
   chris.johnstone@wilmerhale.com
11 WILMER CUTLER PICKERING
      HALE AND DORR LLP
12 2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
13 Telephone: (650) 858-6100

14 *Attorneys for Defendants Steven Chu, Jay T. Flatley,
   Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko,
15 Sandra E. Peterson, Zach Serber, and Rohit Sharma*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIAO WANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZYMERGEN INC., et al.,<br><br>Defendants. | Case No. 5:21-cv-06028-PCP<br><br>**DIRECTOR DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 21, 2025 ORDER RE ZYMERGEN DEFENDANTS' PRIVILEGE ISSUES**<br><br>Date:  TBD<br>Time:  10:00 a.m.<br>Place: Courtroom 6, 4th Floor<br>Judge: The Honorable Susan van Keulen |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. RELEVANT BACKGROUND ...................................................................................... 2

    A. The Court's Prior Rulings on Privilege and Affirmative Defenses. ....................... 2

III. ARGUMENT .................................................................................................................. 3

    A. The Filing of the Trust Complaint Does Not Undermine the Court's Prior Rulings Regarding the Director Defendants' Affirmative Defenses. ........................................................................................................... 3

    B. Nothing in Defense Expert Reports Undermines the Court's Prior Rulings Regarding the Director Defendants' Affirmative Defenses. ..................... 6

IV. CONCLUSION ............................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bittaker v. Woodford*,
    331 F.3d 715 (9th Cir. 2003) .................................................................................................. 5

*Griffith v. Davis*,
    161 F.R.D. 687 (C.D. Cal. 1995) ............................................................................................ 4

*In re: Taproot Systems, Inc.*,
    No. 11-05255-8-JRL, 2013 WL 3505621 (Bankr. E.D.N.C. July 11, 2013) ....................... 4

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007) ................................................................................................... 5

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
    No. 20-MD-02966-RS, 2025 WL 860505 (N.D. Cal. Mar. 19, 2025) ................................. 5

*Kalisman v. Friedman*,
    No. CIV.A. 8447-VCL, 2013 WL 1668205 (Del. Ch. Apr. 17, 2013) ................................ 4

*Palantir Techs. Inc. v. Abramowitz*,
    No. 18-MC-80132-JSC, 2020 WL 5500418 (N.D. Cal. Sept. 11, 2020) ............................ 5

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
    No. 20-CV-04737-RS (SK), 2024 WL 74928 (N.D. Cal. Jan. 5, 2024) ............................. 3

*Sprengel v. Mohr*,
    No. CV-11-8742-MWF (SPX), 2013 WL 12128688 (C.D. Cal. Feb. 22,
    2013) ....................................................................................................................................... 4

*United Food and Com. Workers Union v. Chesapeake Energy Corp.*,
    No. CIV-09-1114-D, 2012 WL 2370637 (W.D. Okla. June 22, 2012) ............................. 2

Pursuant to the Court's Order dated August 4, 2025 (Dkt. 592), Defendants Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber and Rohit Sharma (the "Director Defendants") respectfully submit this Opposition to Lead Plaintiff's Motion for Reconsideration of the Court's February 21, 2025 Order Re Zymergen Defendants' Privilege Issues (Dkt. 595) ("Motion").

I.   **INTRODUCTION**

As the Director Defendants previously articulated in the Individual Defendants' Opposition to Lead Plaintiff's Motion for Leave to Modify the Case Schedule (Dkt. 567), nothing in the complaint recently filed by ZYM Liquidating Trust (the "Trust") in California state court ("Trust Complaint") warrants revisiting the Court's February 21, 2025 Order regarding the assertion of attorney-client privilege and work product protection by Zymergen Inc. ("Zymergen") and/or the Director Defendants. As the Director Defendants previously explained (Dkt. 567 at 9-11), the Court has already rejected the primary argument that Lead Plaintiff offers for reconsideration: the Court's February 21 Order recognized that even current *actual* adversity between Zymergen and the Director Defendants would not waive Zymergen's pre-existing privileges. (Dkt. 524 at 5). Nothing in Lead Plaintiff's Motion calls into question the Court's prior ruling on this or any other privilege issue.[1]

The Director Defendants submit this Opposition to respond to Lead Plaintiff's new argument that, because of the filing of the Trust Complaint and Lead Plaintiff's mischaracterization of certain positions purportedly taken by defense experts, the Director Defendants must now either produce privileged documents or "rescind" certain affirmative defenses. *See* Motion at 21-23. As set forth below, Lead Plaintiff fails to provide any reason to upset the Court's prior rulings regarding the interplay of privilege and the assertion of due diligence and good faith defenses.

---

[1] The Director Defendants incorporate without repeating here the arguments made previously at Dkt. 567 at 9-11. The Court also has granted the Trust's motion to intervene for the purpose of opposing Lead Plaintiff's Motion. (Dkt. 583).

## II. RELEVANT BACKGROUND

### A. The Court's Prior Rulings on Privilege and Affirmative Defenses.

As the Court is aware, the parties – including the Underwriter Defendants – engaged in extensive briefing and argument on the question of whether the assertion of due diligence and/or good faith defenses requires a waiver of the attorney-client privilege. Relying on the same "sword and shield" arguments that he repeats in his Motion, Lead Plaintiff asserted that the mere invocation of due diligence and good faith defenses automatically waives privilege, or that, in the alternative, the Court should strike those defenses absent production of the privileged documents. (Dkt. 452 at 1-2; Dkt. 500 at 3-4, 6-7). In response, the Director Defendants (and Zymergen) noted that Lead Plaintiff's argument relied on the erroneous premise that establishing these defenses necessarily requires relying on the advice of counsel, and argued that because they were relying at that time upon their counsel's non-privileged involvement in the due diligence process (and not their counsel's legal advice) to support their defenses, the assertion of these defenses did not waive privilege. *See* Dkt. 467 at 1-3; Dkt. 520 at 2-3; *United Food and Com. Workers Union v. Chesapeake Energy Corp.,* No. CIV-09-1114-D, 2012 WL 2370637, at *9 (W.D. Okla. June 22, 2012) (assertion of due diligence defense did not waive privilege where there was "no indication that [defendants] intend to introduce evidence reflecting otherwise privileged attorney-client communications to support their contention that they acted with due diligence"). The Underwriter Defendants advanced similar arguments. (Dkt. 466 at 6-10).

This Court agreed with the Defendants' reasoning. In its Order dated February 6, 2025 (Dkt. 506), the Court rejected Lead Plaintiff's argument that the Underwriter Defendants' assertion of a due diligence defense necessarily waives privilege: "if the [due diligence] defense is supported by counsel's *participation* in the investigation, then documents reflecting that participation, including communications with Defendants as to what they were learning in the investigation, are discoverable. However, this role does not necessarily give rise to a wider waiver of all attorney-client communications arising out of the investigation." *Id.* at 4 (emphasis added). Although the February 6 Order concerned the Underwriter Defendants' privilege assertions, the Court noted that its reasoning was intended to provide guidance to Zymergen and

the Director Defendants for purposes of their privilege assertions (*id.* at 1 n.1). These defendants thereafter advised the Court that they were applying this guidance to de-designate as privileged and produce non-privileged documents "'reflecting [counsel's] participation' in the due diligence process." Dkt. 520 at 4-5.[2]

Similarly, in its February 21 Order (Dkt. 524), the Court rejected Lead Plaintiff's claim that the assertion of a good faith defense automatically waived the attorney-client privilege. The Court reasoned that "[k]ey to waiver of the good faith defense is that the defendant has put 'the lawyer's performance at issue during the course of the litigation,'" and held that because Lead Plaintiff had "made no showing that in asserting the defense, Zymergen is relying upon its lawyers' performance or communications," the privilege was not waived. *Id.* at 4 (quoting *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, No. 20-CV-04737-RS (SK), 2024 WL 74928, at *2 (N.D. Cal. Jan. 5, 2024)). The Court also rejected Lead Plaintiff's alternative argument that the waiver should be implied: "Still missing from this argument is evidence that these Defendants are relying on communications with counsel in support of this defense. On different facts, a good faith defense may well lead to waiver, but not on this record." *Id.* at 4.

### III. ARGUMENT

#### A. The Filing of the Trust Complaint Does Not Undermine the Court's Prior Rulings Regarding the Director Defendants' Affirmative Defenses.

In his Motion, Lead Plaintiff contends that the Trust's assertion of claims against the Director Defendants *in another case* somehow requires the Director Defendants to produce privileged documents or "rescind" certain affirmative defenses *in this case*. Motion at 21-23. This argument rests on a fundamental misunderstanding of how the privilege operates in the event of disputes between joint clients. Indeed, during a recent motion hearing in this action, when Lead Plaintiff previewed his understanding of the privilege implications of the filing of the Trust Complaint, District Judge Pitts expressed initial skepticism of Lead Plaintiff's view: "the

---

[2] As Lead Plaintiff acknowledges (Motion at 8), upon the conclusion of this and other reviews stemming from, *inter alia*, the Court's rulings, Zymergen and the Director Defendants produced revised privilege and redaction logs identifying those documents over which Zymergen asserted privilege. Lead Plaintiff has not challenged (in his Motion or otherwise) those revised logs.

argument[] that conversations that at the time parties weren't adverse are protected by the attorney-client privilege, become unprotected if they subsequently become adverse parties, I don't think is how the privilege works, at least as to the party that possesses the privilege. They can assert the privilege in subsequent litigation. . . ." (Dkt. 591 at 18 (July 31, 2025 Transcript)).[3]

The Court's skepticism was justified. In Lead Plaintiff's view, because the Director Defendants have the right to use Zymergen privileged documents to defend against the Trust's claims, there has been an implied waiver of privilege that requires the production of those same privileged documents by the Director Defendants in this case or, absent that production, the withdrawal of the Director Defendants' due diligence and good faith defenses. Motion at 21-23. But that is not the law. To the contrary, "communications among joint clients and their counsel are not privileged in disputes between the joint clients, *but are protected from disclosures to others*." *See Griffith v. Davis*, 161 F.R.D. 687, 693 (C.D. Cal. 1995) (emphasis added); *see also Sprengel v. Mohr*, No. CV-11-8742-MWF (SPX), 2013 WL 12128688, at *2 (C.D. Cal. Feb. 22, 2013) ("production of communications to one who shares the privilege does not constitute waiver"); *In re: Taproot Systems, Inc.*, No. 11-05255-8-JRL, 2013 WL 3505621, at *3-4 (Bankr. E.D.N.C. July 11, 2013) (applying California common interest doctrine, where parties "whose interests were originally joined" have become adverse, those parties may use those privileged communications adversely to one another but may not "disclose the communications to a third party").[4]

---

[3] The excerpted transcript of the July 31, 2025 hearing is attached as Exhibit A to the Declaration of Peter J. Kolovos in Support of the Director Defendants' Opposition to Lead Plaintiff's Motion for Reconsideration, filed herewith. As is clear from the prior briefing (Dkt. 520), it is this misunderstanding by Lead Plaintiff of how the privilege operates in the event of new adversity between former joint clients that the Director Defendants found to be "ludicrous" – not whether there was current actual or potential adversity after Zymergen's bankruptcy between the Director Defendants and the Trust. *See id.* at 3-4.

[4] Lead Plaintiff finds it significant that the Director Defendants were not contemporaneous recipients of *every* document listed on Zymergen's privilege and redaction logs. *See* Motion at 18 & n.12. But actual receipt of a document is not the relevant inquiry when assessing whether the Director Defendants were a party to the privilege and had access to privileged documents at the time of the communications at issue. As is apparent from the privilege logs (*id.* at Exs. 2-3), the logged documents all are from the period *prior* to the October 2022 acquisition of Zymergen by Ginkgo Bioworks (Dkt. 321, ¶ 55), and thus all date from the period when the Director Defendants served on the board of Zymergen. As directors, they were entitled to access the corporation's privileged communications – including all of those on the privilege logs – and thus

1    Lead Plaintiff's cases do not require a different result.  For example, his citation to *In re Teleglobe* omits language that defeats his position.  While Lead Plaintiff quotes language from *In re Teleglobe* to suggest that litigation between former joint clients means that privileged communications between those clients "are discoverable" (Motion at 21-22), he omits the immediately preceding sentence, which makes clear that the court there is addressing only whether those privileged communications are "discoverable" in litigation between the former joint clients.  The relevant passage from *In re Teleglobe*, including the first sentence which Lead Plaintiff omits, is as follows:  "The great caveat of the joint-client privilege is that it only protects communications from compelled disclosure to parties outside the joint representation.  When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007).

Lead Plaintiff's other cases concern the production of privileged materials or preclusion of related evidence (absent such production) *in the litigation in which a party has put the privilege at issue* – not the production of those privileged materials in other litigation.  *See, e.g., Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) ("court imposing the [implied] waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them."); *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-MD-02966-RS, 2025 WL 860505, at *2 (N.D. Cal. Mar. 19, 2025) (addressing potential preclusion of testimony on topics over which party previously asserted privilege in same litigation).[5]  In short, Lead Plaintiff offers

---

they had access to the logged documents at the time of those communications.  *See Kalisman v. Friedman*, No. CIV.A. 8447-VCL, 2013 WL 1668205, at *3-4 (Del. Ch. Apr. 17, 2013) ("A director's right to information is essentially unfettered" and this "right to information extends to privileged material.") (internal quotations omitted).

[5] *Palantir Technologies* is further distinguishable because there, in addition to a party putting the privilege at issue in a dispute with the opposing party, the party waived privilege by disclosing privileged communications in a court filing.  *Palantir Techs. Inc. v. Abramowitz*, No. 18-MC-80132-JSC, 2020 WL 5500418, at *2 (N.D. Cal. Sept. 11, 2020).  Because Lead Plaintiff does not argue that anything in the Trust Complaint is itself privileged information (the disclosure of which in a public filing could waive Zymergen's privileges), *Palantir* is inapposite.

no authority for his claim that the Director Defendants' ability to use privileged documents to defend themselves in a different case brought by an entity that (according to Lead Plaintiff) has put Zymergen's privilege at issue *in that case* somehow restricts the Director Defendants' ability to assert defenses here, where no party has put Zymergen's privilege at issue. Accordingly, the filing of the Trust Complaint provides no reason to revisit the Court's prior privilege rulings.

### B. Nothing in Defense Expert Reports Undermines the Court's Prior Rulings Regarding the Director Defendants' Affirmative Defenses.

Nor is there merit to Lead Plaintiff's claim that testimony offered by defense experts warrants revisiting the Court's prior privilege rulings. Motion at 22-23. Although Lead Plaintiff suggests that the reports of two experts make "crystal clear" that the individual defendants "intend to rely on the advice of their counsel" (*id.* at 22), even a cursory review of the reports in question confirms that this is not the case.

Lead Plaintiff cites to the expert report of Professor Charles Whitehead – a Cornell law professor, former investment banker, and one of the nation's foremost authorities on corporate governance and disclosure issues. *See* Motion, Ex. 4 (Whitehead Expert Report).[6] The Director Defendants (and other defendants) retained Professor Whitehead as an expert regarding, *inter alia*, industry custom and practice for drafting, verifying, and revising disclosures in an IPO registration statement. In his report, Professor Whitehead comments on the participation of Zymergen's counsel (among other outside advisors) in the due diligence process – not the legal advice that counsel provided. For example, Professor Whitehead describes the involvement of internal and external experts – including internal subject matter experts, Zymergen's in-house counsel, the underwriters, Zymergen's independent auditor, Zymergen's investor relations firm, outside counsel to Zymergen, and outside counsel to the underwriters – in the preparation of the disclosures in Zymergen's IPO registration statement. *See id.* ¶¶ 99-105. He then offers

---

[6] Lead Plaintiff also cites four paragraphs in the expert report of Gary Lawrence, an expert retained by the Underwriter Defendants. *See* Motion at 22 n.15. Lead Plaintiff fails to explain how Mr. Lawrence's statements about *the underwriters'* potential reliance on the (disclosed) legal opinion of Zymergen's counsel (*id.*, Ex. 5 ¶¶ 212-15) somehow demonstrate that *the Director Defendants* intend to rely on counsel's legal advice.

opinions, *inter alia*, that "the parties involved in the processes of preparing the IPO Registration Statement were consistent with custom and practice" (¶ 105), that "it was custom and practice to include in the IPO Registration Statement disclosures relating to Zymergen's market opportunity, future product pipeline, and expected product revenue generation" (¶ 133), and that "Zymergen's processes of drafting, verifying, and revising the IPO Registration Statement disclosures . . . were consistent with custom and practice for early-stage technology companies." (¶ 163).

Professor Whitehead's report confirms – as the Director Defendants previously informed the Court (Dkt. 467 at 1-3; Dkt. 520 at 2-3) – that the Director Defendants are relying upon their counsel's *participation* in the due diligence process (not counsel's legal advice) to support their affirmative defenses. Indeed, the fact that Professor Whitehead's report is supported by citations to documents produced in this case that reflect counsel's involvement in the drafting and diligence process further demonstrates that the Director Defendants are supporting their defense with evidence of counsel's non-privileged participation in the process. Because nothing in Professor Whitehead's report suggests that the Director Defendants "intend to rely on the advice of their counsel" to establish their defenses, Lead Plaintiff has offered no basis to reconsider the Court's prior privilege rulings.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Lead Plaintiff's Motion for Reconsideration.

Dated: August 20, 2025

Respectfully submitted,

WILMER CUTLER PICKERING HALE
    AND DORR LLP

By: /s/ Peter J. Kolovos
      Peter J. Kolovos

*Attorneys for Defendants Steven Chu, Jay T. Flatley, Christine M. Gorjanc, Travis Murdoch, Matthew A. Ocko, Sandra E. Peterson, Zach Serber, and Rohit Sharma*