1

2

3

4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    BIAO WANG, et al.,                        Case No.  21-cv-06028-PCP   (SVK)

8                    Plaintiffs,               **ORDER ON PLAINTIFFS' MOTION
                                               FOR RECONSIDERATION OF**
9            v.                                **FEBRUARY 21, 2025 ORDER RE
                                               ZYMERGEN DEFENDANTS'**
10   ZYMERGEN INC., et al.,                     **PRIVILEGE ISSUES**

11                   Defendants.                Re: Dkt. No. 595

12          Before the Court is the latest in a long series of Plaintiffs' challenges to the assertion of the

13   attorney-client privilege by Defendant Zymergen, Inc., now the ZYM Liquidating Trust

14   ("Zymergen" or "Trust").  *See* Dkt. 442, 483, 500, 501.  In light of recent events, Plaintiffs seek

15   reconsideration of this Court's February 21, 2025 order (Dkt. 524 – the "February Order")

16   overruling various challenges and upholding the privilege.  Dkt. 595 ("Motion").  The Trust and

17   the Individual Defendants[1] oppose the motion.  Dkt. 599, 600.  On October 7, 2025 the Court held

18   a lengthy hearing on the Motion and took the matter under submission.

19          Plaintiffs' numerous arguments in support of reconsideration are based upon a handful of

20   new facts:

21

22

23   ───────────────────
[1] The Individual Defendants comprise former officers and directors of Zymergen.  In
24   November 2021, the Individual Defendants included:  Steven Chu, Jay Flatley, Christine Gorjanc,
     Josh Hoffman, Travis Murdoch, Matthew Ocko, Sandra Peterson, Zach Serber, Rohit Sharma and
25   Enakshi Singh.  Dkt. 561-2.  Defendants Singh and Hoffman retained separate counsel in 2023,
     and counsel appeared at the October 7 hearing.  In the Motion, at times Plaintiffs refer to the
26   Individual Defendants and Director Defendants interchangeably.  In the context of the Motion, it is
     a distinction without a difference, and for consistency the Court uses the all-inclusive Individual
27   Defendants.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1. A WilmerHale partner recently submitted a declaration stating that in September 2024, prior to the privilege issues being brought to this Court, WilmerHale informed the Trust that there was a potential conflict in its dual representation of Zymergen and the Individual Defendants.  S. Muck Declaration in Support of Wilmer-Hale Motion to Withdraw, Dkt. 561, 561-1.

2. On June 6, 2025, the Trust sued the Director Defendants, a subset of the Individual Defendants in this action, in state court (the "State Court Action"), alleging breach of fiduciary duties arising out of the same core facts as Plaintiffs have asserted in this action. Dkt. 557-2.

3. The Individual Defendants served expert reports after the February Order that, according to Plaintiffs, reflect privileged attorney-client communications such that either the documents must be produced or affirmative defenses stricken.  Dkt. 596-5; 596-6.

4. At least by July 2025, Zymergen's insurance coverage for this litigation had been exhausted, and, in accordance with the terms of its bankruptcy plan, Zymergen is now immune from further litigation, which Plaintiffs argue extinguishes any privilege.  Trust's Motion to Intervene, Exhibit C, Dkt. 564-4.

The Court addresses the first, second and third of these developments in sections I and II below; the fourth development is addressed in section III.

**I.    THE TERMINATION OF THE COMMON-INTEREST PRIVILEGE BETWEEN ZYMERGEN (AKA THE TRUST) AND THE INDIVIDUAL DEFENDANTS AND THE IMPACT ON THE FEBRUARY ORDER**

**A.    Relevant Background**

The Motion contains a detailed and largely uncontested history of the privilege issues, including proceedings before this Court, which will not be repeated here.  Dkt. 595 at 3-12.  The salient facts for this discussion are:

- In August 2021 Plaintiffs sued Zymergen, the Individual Defendants and others in this action for violations of §§11, 15 of the Securities Act.  Dkt. 1.

- In November 2021 WilmerHale undertook dual representation of Zymergen and the Individual Defendants.  Dkt. 561-2 (WilmerHale engagement letter).
- In October 2023 Zymergen filed for Chapter 11 Bankruptcy (S. Muck Declaration in Support of WilmerHale Motion to Withdraw, Ex. B;  Dkt. 561-3) with the following effects:
    - WilmerHale was directed to continue its representation of Zymergen (and the Individual Defendants) in this action.  Muck Decl. Ex. D, Dkt. 561-5.
    - Zymergen's privileges were expressly transferred to the Trustee. [2]  Trust Opposition (Dkt. 599 at 4), citing Dkt. 501-6 (Liquidating Trust Agreement).
- The challenged privileged documents are all from the time frame December 2020 to May  2022, predating Zymergen's filing for bankruptcy.  Individ. Defs. Oppo. to Motion, fn. 4, Dkt. 600;  10/5/25 Hrg. Transcript, pp. 11-16.
- Throughout the present litigation, WilmerHale has asserted a common-interest privilege on behalf of Zymergen and the Individual Defendants.[3]
- WilmerHale recently moved to withdraw as counsel for the Trust in this action (Dkt. 561), stating in support of that motion that in September 2024, WilmerHale informed the Trust that there was a potential conflict in its dual representation of Zymergen and the Individual Defendants.  S. Muck Decl. in Support of WilmerHale Motion to Withdraw, Dkt. 561-1.
- As noted above, on June 6, 2025, the Trust sued the Individual Defendants in state court, alleging breach of fiduciary duty, unjust enrichment and waste of corporate assets, arising out of the same core facts as alleged in this action.  Dkt. 557-2.

From these facts, Plaintiffs argue that any common-interest privilege as between the Trust and the Individual Defendants terminated no later than September 2024, and the continued sharing

---

[2] In past proceedings before this Court, WilmerHale affirmed that it was acting at the direction of the Trustee, in addition to the Individual Defendants.  Dkt. 523, 523-1.

[3] Though there is no written joint defense agreement in the record before the Court, such an agreement may be implied (*U.S. v. Gonzalez*, 669 F.3d 974, 979 (9th Circuit 2012)), and the existence of a joint defense agreement between Zymergen and the Individual Defendants is not disputed.

United States District Court
Northern District of California

of privileged documents between the Trust and Individual Defendants after termination of the common-interest privilege, as demonstrated by WilmerHale's continuing production of privilege logs on behalf of Zymergen, effected a waiver of privilege.  Motion, Dkt. 595, pp. 15-19.

**B.      Relevant Law**

A brief review of the common-interest privilege is helpful at this juncture.  A joint defense privilege, also referred to as a common-interest privilege, allows persons who share a common interest in litigation to communicate with their attorneys and with each other to effectively defend their claims.  *U.S. v. Gonzalez,* 669 F.3d 974, 978-79 (9th Cir. 2012).  The common-interest privilege is an extension of the attorney-client privilege, protecting the confidentiality of communications where parties pursue a joint defense effort or strategy.  *United States v. Austin,* 416 F.3d 1016, 1021 (9th Cir. 2005) (citing *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989)).  The extent or duration of the common interest, and thus of the privilege, may be important, as it was in *Gonzalez.*  The Ninth Circuit remanded that case to the trial court for determination as to whether the common interest terminated at some point, and if so, whether the communication in dispute occurred during the existence of the privilege.  *Gonzalez,* 669 F.3d at 981.  This brings us to the critical question in this case:  Do any of the recent developments which provide the basis for this Court's reconsideration of the February Order indicate that the common-interest privilege as between Zymergen and the Individual Defendants has terminated and, if so, what is the impact on the Court's February Order?   The Court examines three of the recent developments in chronological order below.

**C.      Discussion**

**1.      There is no termination of the common-interest privilege prior to September 2024**

Plaintiffs cannot resist re-arguing that any common-interest privilege as between Zymergen and the Individual Defendants came to end in early 2024 – in either February or July. Motion at 14.  In support of revisiting this argument, Plaintiffs cite additional, recent statements by Individual Defendants and the Trust's recent allegations in the State Court Action, which, Plaintiffs point out, were reserved in the Bankruptcy Plan approved in February 2024.  Motion at

United States District Court
Northern District of California

4

11, 15.  The Court entertained, and rejected, this time frame previously and does so again.  First, as previously ruled by this Court, the fact that the Trustee indicates that at some point in the future it may pursue claims against the Individual Defendants does not necessarily eradicate a common interest in the present.  February Order at 5.  Further, Plaintiffs' argument is premised on the erroneous foundation that any adverse interest necessarily abrogates a common-interest privilege.  To the contrary, the existence of a joint defense agreement, and the attendant joint defense privilege, "is not necessarily an all-or-nothing proposition."  *Gonzalez*, 669 F.3d at 981.  Indeed, it is possible for parties to share a common defense strategy as to one issue but not as to others.  *Id*. at 980-81.  Importantly, the Trust and the Individual Defendants continued to share counsel and to pursue to a common defense strategy against Plaintiffs' claims until, as reasoned below, June 2025.

### 2.    There is no termination of the common-interest privilege in September 2024

Plaintiffs point to a new fact brought to light in WilmerHale's motion to withdraw its representation of Zymergen:  In September 2024, WilmerHale expressed concern regarding its joint representation of the Trust and the Individual Defendants.  Specifically, WilmerHale stated:

> In September 2024, as part of our ongoing dialog with Glenn Agre and the Trustee regarding this litigation, WilmerHale raised concerns regarding our continued joint representation of Zymergen and the individual directors and suggested that Glenn Agre replace WilmerHale as the Company's counsel in this action, particularly given the possibility that the interests of the Company and the individual directors might no longer be aligned. That suggestion was rebuffed by the Trust's counsel.

Motion at 10, citing Dkt. 561-1, Declaration of S. Muck, ¶ 13.

The Court initially shared Plaintiffs' concern regarding the import of this statement on the common-interest privilege after September 2024.  Taking direction from *Gonzalez* wherein the Ninth Circuit remanded for an *in-camera* proceeding to determine the duration of the privilege, the Court noticed a hearing for October 7, 2025.  Dkt. 614.  In the *in-camera* portion of that proceeding, the Court inquired of counsel for the Trust and WilmerHale as to the factual premises for the September 2024 statements in the WilmerHale declaration.  Dkt. 624, 625.  As a result of the factual proffers made *in camera*, the Court determines that the common-interest privilege as

between the Trust and the Individual Defendants remained intact and did not terminate in September 2024. Though not a factor in the Court's determination, shortly after September 2024, Plaintiffs launched a multi-faceted attack against assertions of privilege, and all defendants, including Zymergen and the Individual Defendants both represented by WilmerHale, argued against abrogation of any privilege.[4]

### 3. The common-interest privilege terminates as of the filing of the State Court Action.

The Court agrees with Plaintiffs that the State Court Action, filed in June 2025 by the Trust against the Individual Defendants, unequivocally announced the divergence of Zymergen's and the Individual Defendants' common interests.[5] Instead of being joined in defending against Plaintiffs' claims, Zymergen now alleges breach of fiduciary duties by the Individual Defendants based upon the same core facts as Plaintiffs allege in this case.[6]

## II. PLAINTIFFS' CHALLENGES TO ZYMERGEN'S ATTORNEY-CLIENT PRIVILEGE ARISING OUT OF THE STATE COURT ACTION

Plaintiffs argue that the filing of the State Court Action gives rise to a crime-fraud exception to privileged communications and that the filing of the suit constitutes an implied waiver of the attorney-client privilege. Motion at 19, 21.

### A. Crime-Fraud Exception

The attorney-client privilege, which is a common law privilege recognized under Federal Rule of Evidence 501, promotes open attorney-client communications, which are "central to the legal system and the adversary process," and protects fundamental liberty interests by allowing individuals to seek the legal advice they need "to guide them through [the] thickets" of complex

---

[4] Because the Court does not find that the common-interest privilege terminated in 2024, it does not reach Plaintiffs' implied waiver argument arising out of the sharing of privileged documents as between Zymergen and the Individual Defendants prior to the filing of the State Court Action in June 2025. Motion 15-19. In any event, this argument was largely a restatement of Plaintiffs' earlier challenges to privilege which this Court considered and overruled. Dkt. 500 at 4; February Order at 5; *see* section I.C. above. The Court addresses Plaintiffs' implied waiver argument following the filing of the State Court Action in section II.B. below.

[5] The State Court Action is brought against all of the Individual Defendants with the exception of defendant Sandra E. Peterson. *See* Dkt. 557 at 2 n.2.

[6] WilmerHale does not represent the Individual Defendants in the State Court Action.

United States District Court
Northern District of California

laws. *In re Napster, Inc. Copyright Litig.,* 479 F.3d 1078, 1090 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) (quoting *United States v. Hodge & Zweig*, 548 F.2d 1347, 1355 (9th Cir. 1977) and *United States v. Chen*, 99 F.3d 1495, 1499 (9th Cir. 1996)).

Although important, the attorney-client privilege is not absolute. The "crime-fraud exception" to the privilege protects against abuse of the attorney-client relationship. *Napster*, 479 F.3d at 1090 (citing *Hodge & Zweig*, 548 F.2d at 1355); *see also Clark v. United States*, 289 U.S. 1, 15 (1933) ("The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told."). A party seeking to vitiate the attorney-client privilege under the crime-fraud exception must satisfy a two-part test. First, the party must show that "the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme." *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1996) (internal quotation marks omitted). Second, it must demonstrate that the attorney-client communications for which production is sought are "sufficiently related to" and were made "in furtherance of [the] intended, or present, continuing illegality." *Id*. at 382–83 (internal quotation marks omitted); *see also Napster,* 417 F.3d at 1090.

In *Napster*, the Ninth Circuit distinguished between cases in which a party asserts that it is entitled to "outright disclosure" of privileged materials under the crime-fraud exception and cases in which a party requests that a court review privileged documents *in camera* to determine if the crime-fraud exception applies. *See Napster*, 417 F.3d at 1091-92. As the Ninth Circuit explained, "the procedural posture and consequences of an *in camera* inspection of the disputed communications are fundamentally different from those of an order requiring their outright disclosure," and "the threshold for *in camera* review is 'considerably lower' than that 'for fully disclosing documents.'" *Id.* at 1092 (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1073 (9th Cir. 1992)); *see also United States v. Zolin*, 491 U.S. 554, 572 (1989) ("a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege"). Here, Plaintiffs ask the Court to perform an *in camera* review. *See, e.g.,* Motion

1   at 21 (arguing that "the Court will be required to conduct an *in camera* review to determine the

2   scope of the waiver" pursuant to the crime-fraud exception); Dkt. 602-3 (noting that "an *in camera*

3   review may be voluminous").  The Court therefore evaluates Plaintiffs' request under the lower

4   evidentiary threshold applicable in cases seeking *in camera* review.

5          The Supreme Court confirmed the availability of *in camera* review to evaluate the

6   applicability of the crime-fraud exception to the attorney-client privilege in *Zolin*.  *Zolin* sets forth

7   the standard required to show that an *in camera* review is appropriate.  First, the party seeking *in*

8   *camera* review must make an initial showing of "a factual basis adequate to support

9   a good faith belief by a reasonable person [] that *in camera* review of the materials may reveal

10  evidence to establish the claim that the crime-fraud exception applies."  *Zolin*, 491 U.S. at 572.

11  Although this "evidentiary threshold" is "relatively minimal," it "must first be met by the party

12  requesting review before the court may exercise its discretion."  *In re Grand Jury Investigation*,

13  974 F.2d at 1075.  The threshold showing "may be met by using any relevant evidence, lawfully

14  obtained, that has not been adjudicated to be privileged." *Zolin*, 491 U.S. at 575.[7]

15         Once that threshold showing is made, "the decision whether to engage in *in camera* review

16  rests in the sound discretion of the district court."  *Id.* at 572.  "The court should make that

17  decision in light of the facts and circumstances of the particular case, including, among other

18  things, the volume of materials the district court has been asked to review, the relative importance

19  to the case of the alleged privileged information, and the likelihood that the evidence produced

20  through *in camera* review, together with other available evidence then before the court, will

21  establish that the crime-fraud exception does apply."  *Id.*

22         As a preliminary matter, Plaintiffs do not precisely identify the documents they want the

23  Court to review *in camera*.  Plaintiffs appear to seek production of thousands of documents

24  withheld or redacted by Zymergen.  *See, e.g.,* Motion at 8 (referring to revised consolidated

25  privilege log containing 3,144 entries and a revised redaction log containing 3,517 entries);

26

27  ─────────────────────
    [7] The quoted language undercuts Plaintiffs' argument at the hearing that "*Zolin* specifically holds
28  that an in-camera review can be used to show that minimal threshold."  Dkt. 624 (Hrg. Tr.) at
    51:9-11.

1    *see also* Dkt. 624 (Hrg. Tr.) at 7:16-18 ("There are approximately 6,500 entries in these logs, with

2    3,000 on the withheld document log and approximately 3,500 on the redaction log").  Plaintiffs

3    acknowledged at the hearing that this set of documents covers a time span extending past

4    April 2021, when Zymergen issued the Registration Statement that is the focus of this case.

5    *See* Dkt. 624 (Hrg. Tr.) at 7:20-10:2.  However, even if the crime-fraud exception applied, it

6    would reach only those communications "in furtherance of intended, or present, continuing

7    illegality"; the exception "does not sweep so broadly that it discourages clients from making full

8    disclosure to their attorneys of *past* wrongdoings, in order that the client may obtain the aid of

9    persons having knowledge of the law and skilled in its practice."  *In re Grand Jury Proceedings*,

10    87 F.3d at 381 (emphasis in original) (quotations omitted).  Plaintiffs paint with a broad brush that

11    ignores important distinctions between attorney-client communications that occurred before and

12    after preparation of the Registration Statement.

13        In any event, Plaintiffs' effort to obtain *in camera* review of documents withheld as

14    privileged falters at the first step under *Zolin* because Plaintiffs have not met their burden of

15    demonstrating a "factual basis adequate to support a good faith belief by a reasonable person []

16    that *in camera* review of the materials may reveal evidence to establish the claim that the crime-

17    fraud exception applies."  *Zolin,* 491 U.S. at 572.  As discussed above, for the crime-fraud

18    exception to apply, the client must have been engaged in or planning a criminal or fraudulent

19    scheme "when it sought the advice of counsel to further the scheme."  *In re Grand Jury*, 87 F.3d at

20    381.  Here, Plaintiffs have offered evidence to support their allegations that Zymergen and/or the

21    Individual Defendants were involved in a fraudulent scheme, such as Zymergen's complaint in the

22    State Court Action accusing the Individual Defendants of a "massive and systemic fraud" (Motion

23    at 8-9 (citing Dkt. 557-2 ¶ 1)) and an SEC finding that Zymergen made "misrepresentations and

24    omissions during and after its initial public offering" (Motion at 20 n.14 (citing Dkt. 474-22 ¶¶ 1,

25    31)).  What is missing from Plaintiffs' showing, however, is any evidence that Zymergen "sought

26    the advice of counsel **to further the scheme**," as required for the crime-fraud exception to apply.

27    *See In re Grand Jury*, 87 F.3d at 381 (emphasis added).

28        The absence of evidence that Zymergen sought the advice of its attorneys to further the

alleged fraudulent scheme regarding the Registration Statement distinguishes this case from those upon which Plaintiffs rely as examples where the crime-fraud exception has been found to apply. *See* Dkt. 195 at 19-21.  In *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-cv-2436-BLF, 2023 WL 8040871, at *3 (N.D. Cal. Nov. 20, 2023), the court found that the party invoking the crime-fraud exception had shown "it is *more likely than not* that [the client] consulted [a law firm] for advice that would serve [the client] in the commission of a fraud" (emphasis in original).  In *U.S. v. Martin*, 278 F.3d 988, 1001 (9th Cir. 2002), the Ninth Circuit upheld the district court's finding that the government had established a prima facie case for application of the crime-fraud exception where the evidence was that the client created a company solely to defraud legitimate businesses and hired the attorney as the company's general counsel "to assist [the client] in continuing the [] fraud." In other words, the client was using the attorney to perpetuate the fraud.  278 F.3d at 1001.  In so holding, the Ninth Circuit cautioned that *"*[i]t is not enough for the [party invoking the crime-fraud exception] to have 'a sneaking suspicion the client was engaging in or intending to engage in a crime or fraud when it consulted the attorney'" and emphasized that the exception applies only when there is "reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme." *Id.* (quoting *In re Grand Jury Proceedings,* 87 F.3d at 381).  In *Anbang Grp. Holdings Co. Ltd. v. Zhou*, No. 23-cv-00998-VC (TSH), 2024 WL 199563, at *3 (N.D. Cal. Jan. 18, 2024), the court granted a motion to compel the production of documents and testimony from a non-party attorney pursuant to the crime-fraud exception where the plaintiff alleged in the complaint and presented other evidence that the attorney (who did not deny the allegations) had "extensive involvement" in drafting and signing six false arbitration awards that purported to award tens of billions of dollars to the client's shell companies, drafting and filing a false arbitration petition and default judgment, and coordinating the filing and prosecution of multiple sham lawsuits predicated on the arbitration awards he created.

Here, by contrast, Plaintiffs essentially argue that because Zymergen issued a Registration Statement that allegedly contained misrepresentations, and because Zymergen consulted attorneys in connection with preparation of the Registration Statement, the Court should infer that Zymergen sought the attorneys' advice to further a fraudulent scheme.  Plaintiffs have pointed to

1    no evidence to support such an inference.  Companies routinely seek legal advice in the

2    preparation of SEC filings.  Under Plaintiffs' argument, communications between companies and

3    their counsel would be commonly discoverable in securities cases under the crime-fraud exception

4    (at least in any case with evidence of securities fraud beyond the plaintiffs' own allegations).

5    Accordingly, Plaintiffs have failed to carry their burden of showing that an *in camera*

6    review of documents withheld or redacted on the basis of attorney-client privilege to evaluate the

7    applicability of the crime-fraud exception is warranted.

8    **B.    Implied Waiver as of June 2025**

9    Plaintiffs argue on several grounds that the filing of the State Court Action leads to an

10    implied waiver of the attorney-client privilege.  Motion at 21.  First, Plaintiffs rely upon well-

11    established precedent that as between two parties, if one puts privileged information at issue in

12    litigation, the privilege is waived as to the opposing party.  *In re Xyrem (Sodium Oxybate)*

13    *Antitrust Litig*., No. 20-md-02966-RS, 2025 WL 860505 (N.D. Cal. Mar. 19, 2025), *citing Home*

14    *Indem. Co. v. Lane Powell Moss & Miller* (9th Cir. 1995) 43 F.3d 1322, 1326.  Plaintiffs' analysis,

15    however, is incomplete.  As countered by the Director Defendants in their opposition:

> "communications among joint clients and their counsel are not privileged in disputes
> between the joint clients, *but are protected from disclosures to others*." *See Griffith v.*
> *Davis*, 161 F.R.D. 687, 693 (C.D. Cal. 1995) (emphasis added); *see also Sprengel v. Mohr*,
> No. CV-11-8742-MWF (SPX), 2013 WL 12128688, at *2 (C.D. Cal. Feb. 22, 2013)
> ("production of communications to one who shares the privilege does not constitute
> waiver"); *In re: Taproot Systems, Inc.*, No. 11-05255-8-JRL, 2013 WL 3505621, at *3-4
> (Bankr. E.D.N.C. July 11, 2013) (applying California common interest doctrine, where
> parties "whose interests were originally joined" have become adverse, those parties may
> use those privileged communications adversely to one another but may not "disclose the
> communications to a third party").

Director Defendants' Oppo., Dkt. 600 at 4 (emphasis added).  The Court is in accord with the

authorities cited by Director Defendants.  Any implied waiver arising from the Trustee's filing of

the State Court Action is a waiver only as to the defendants in that action, not as to third parties

such as Plaintiffs in this action.

Second, Plaintiffs argue that the Individual Defendants are improperly wielding the

attorney-client privilege as a sword and shield.  Motion at 22, Reply at 13.  The substance of this

United States District Court
Northern District of California

11

1  argument appears to be that the Individual Defendants' expert reports, served since the February

2  Order, refer to advice of counsel in support of the Defendants' good faith and due diligence

3  defenses.  *Id.*  As a result, Plaintiffs argue, either the privileged documents must be produced or

4  the defenses rescinded.  Motion at 22.

5        Surprising to the Court, Plaintiffs' argument is without reference to this Court's prior

6  orders addressing these defenses and the attendant privilege issues.  *See* Order re Due Diligence

7  Defense and Attorney-Client Privilege as to the Underwriter Defendants ("Due Diligence Order"),

8  Dkt. 506; February Order, at 5, incorporating the Due Diligence Order by reference.  In the Due

9  Diligence Order, which followed supplemental briefing and an in-camera review of privileged

10  documents and is not the subject of reconsideration, the Court navigated "counsel's dual role as

11  confidential advisor on matters related to the IPO and as a key actor in the due diligence

12  investigation."  Due Diligence Order at 3.  Accordingly, in the case of the Underwriter

13  Defendants, documents reflecting the attorneys' role in the due diligence investigation were

14  produced.  *Id.*  Similarly, in the February Order, the Court ordered the completion of the

15  production of attorney-client communications with Zymergen and the Individual Defendants (at

16  the time, the "Zymergen Defendants") reflecting the due diligence investigation.  February Order

17  at 5.

18        Here, although Plaintiffs point to statements in expert reports that purport to reflect

19  involvement of or statements by counsel, Plaintiffs do not address the dual role of counsel and its

20  implications for waiver of any privilege.  Motion, fn. 15; Reply, p. 14; *see also Escott v. BarChris*

21  *Const. Corp.*, 283 F. Supp. 643, 697 (S.D.N.Y. 1968).  Nor do Plaintiffs identify any documents

22  relied upon by the experts that have not been produced.  As a result, Plaintiffs' reliance on expert

23  reports to support an implied waiver falls short.

24        Third, Plaintiffs double-down on the "access" argument raised in the Motion regarding the

25  2024 disclosures.  In sum, Plaintiffs urge that, because Individual Defendants had positions with

26  Zymergen at different times, not all of the withheld documents were sent to or received by each of

27  the Individual Defendants.  Motion at 18; Reply at 5-8.  Although not clear from Plaintiffs' briefs,

28  the argument appears to be that the privilege did not attach as to each Individual Defendant and

United States District Court
Northern District of California

12

that subsequent sharing of the documents in the State Court Action waives the privilege. *Id.* It is the same argument that Plaintiffs raised in its prior motion (Dkt. 500) and the instant Motion in the context of Zymergen and the Individual Defendants sharing documents in 2024. Motion at 15-19. Whatever the context, there are no new material facts or law warranting reconsideration. The dates as to when certain Individual Defendants were associated with Zymergen and the implications for the attorney-client privilege are not new. This issue was raised and addressed in prior briefing and the February Order. Dkt. 500; Dkt. 524. To the extent Plaintiffs considered the Court's prior ruling to be in error, the proper recourse was to move for reconsideration at that time, not five months later, or to appeal the ruling to the presiding District Judge. *See* Civ. L.R. 72-2. The Court will not now take up an argument based on facts that could have been raised in Plaintiffs' earlier challenges to the privilege.

Finally, Plaintiffs argue that having sued the Individual Defendants, the Trustee should have taken immediate steps to "claw back" the Zymergen privileged documents and that failure to do so constitutes a waiver. Reply at 5. This argument ignores the role of the common-interest privilege that Zymergen and the Individual Defendants shared. As examined above, where parties who shared a common interest in litigation become adverse, "those parties may use privileged communications adversely to one another . . . ." *In re: Taproot Systems, Inc.*, 2013 WL 3505621, at *3-4.

### III.  PLAINTIFFS' CHALLENGE TO ZYMERGEN'S ATTORNEY-CLIENT PRIVILEGE ARISING OUT OF ZYMERGEN'S IMMUNITY FROM SUIT

In July 2025, the Trustee notified Plaintiffs that Zymergen's insurance coverage had been exhausted such that, in accordance with the 2024 Bankruptcy Plan, Zymergen must now be dismissed from this lawsuit. Dkt. 564-4. Plaintiffs argue that this new, material fact warrants reconsideration of this Court's prior ruling that, despite Zymergen's filing for bankruptcy, the Trustee could continue to assert the attorney-client privilege that originated with Zymergen. February Order at 2. In support of the position that the privilege is now extinguished, Plaintiffs cite law as to the narrow purpose of a corporation's privilege and argue that any such purpose is no longer viable. Motion at 23; Reply at 5.

United States District Court
Northern District of California

1    Plaintiffs' argument in support of reconsideration suffers from the same fault as when it

2  asserted this argument in its prior motions.  *See* Dkt. 500.   This case presents a unique fact not

3  present in the cases relied upon by Plaintiffs:  Zymergen's attorney-client privilege was expressly

4  transferred to the Trust and vested in the Trustee pursuant to the Liquidating Trust Agreement in

5  February 2024.  Trust Opposition (Dkt. 599 at 4), citing Dkt. 501-6 (Liquidating Trust

6  Agreement.)   As noted in the February Order, the Trustee's work remains underway, and

7  Plaintiffs cite no facts to the contrary.  Indeed, as evidenced by the State Court Action, the Trust,

8  which holds the former Zymergen privileges, continues to vigorously pursue its rights and

9  obligations under the bankruptcy plan.  As a result, the privileges are not extinguished.

10  **IV.    CONCLUSION**

11    For the foregoing reasons, Plaintiffs' motion for reconsideration of the February Order is

12  **DENIED.**

13    **SO ORDERED.**

14  Dated: October 22, 2025

15

16

17  SUSAN VAN KEULEN
    United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

14